**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, | |
| Plaintiff, | |
| v. | Case No. 2:24-cv-00236-Z |
| CBS BROADCASTING INC. & CBS INTERACTIVE INC., | |
| Defendants. | |

### DEFENDANTS CBS BROADCASTING INC. AND CBS INTERACTIVE INC.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE OR, IN THE ALTERNATIVE, TO TRANSFER

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ..................................................................................... 1

BACKGROUND .......................................................................................................... 2

    I.    The Parties ...................................................................................................... 2

    II.    The Interview ................................................................................................... 2

    III.  The Complaint ................................................................................................. 3

ARGUMENT ............................................................................................................... 4

    I.    The Complaint Fails To Plead Personal Jurisdiction. ........................................ 4

    II.    This Case Should Be Dismissed On Grounds Of Improper Venue .................. 11

    III.  In The Alternative, This Case Should Be Transferred To The Southern District Of New York Under 28 U.S.C. § 1404(a) ......................................................... 14

CONCLUSION .......................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*,
   571 U.S. 49 (2013)..................................................................................................................14

*Blake Marine Grp., LLC v. Frenkel & Co.*,
   439 F. Supp. 3d 249 (S.D.N.Y. 2020)..................................................................................18

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,
   582 U.S. 255 (2017)..............................................................................................................6, 9

*Bulkley & Assocs. v. Dep't of Indus. Rels., Div. of Occupational Safety &*
   *Health of the State of Calif.*,
   1 F.4th 346 (5th Cir. 2021) ....................................................................................................6

*Casas v. Northrop Grumman Ship Sys., Inc.*,
   533 F. Supp. 2d 707 (S.D. Tex. Jan. 7, 2008).......................................................................10

*Children's Health Def. v. WP Co.*,
   2023 WL 3940446 (N.D. Tex. May 12, 2023) ..........................................................15, 16, 17

*Clemens v. McNamee*,
   615 F.3d 374 (5th Cir. 2010) .................................................................................................8

*Coleman v. Brozen*,
   2020 WL 2200220 (E.D. Tex. May 6, 2020).........................................................................17

*Cunningham v. CBC Conglomerate, LLC*,
   359 F. Supp. 3d 471 (E.D. Tex. 2019)....................................................................................5

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)................................................................................................................5

*DTEX, LLC v. BBVA Bancomer, S.A.*,
   508 F.3d 785 (5th Cir. 2007) ..........................................................................................15, 17

*English v. Danone N. Am. Pub. Benefit Corp.*,
   678 F. Supp. 3d 529 (S.D.N.Y. 2023)..................................................................................18

*ExpressJet Airlines, Inc. v. RBC Cap. Markets Corp.*,
   2009 WL 2244468 (S.D. Tex. July 27, 2009)......................................................................17

*Fiduciary Network, LLC v. Buehler*,
   2015 WL 2165953 (N.D. Tex. May 8, 2015) .......................................................................10

iii

*Francesca's Collections, Inc. v. Medina*,
    2011 WL 3925062 (S.D. Tex. Sept. 7, 2011) ........................................................13

*Herman v. Cataphora, Inc.*,
    730 F.3d 460 (5th Cir. 2013) .............................................................................8

*Immanuel v. Cable News Network, Inc.*,
    2022 WL 1748252 (E.D. Tex. May 31, 2022)......................................................13

*In re Gen. Motors LLC Ignition Switch Litig.*,
    257 F. Supp. 3d 372 (S.D.N.Y. 2017).................................................................18

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) ............................................................................15

*In re Volkswagen of Am, Inc.*,
    545 F.3d 304 (5th Cir. 2008) (en banc) ........................................................15, 16

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945).........................................................................................4

*Jerger v. D&M Leasing Dallas*,
    2020 WL 4335733 (E.D. Tex. July 28, 2020) ....................................................12

*Johnson v. TheHuffingtonPost.com, Inc.*,
    21 F.4th 314 (5th Cir. 2021) ...................................................................... *passim*

*Kinsey v. N.Y. Times Co.*,
    991 F.3d 171 (2d Cir. 2021)..............................................................................17

*Lalla v. G&H Towing Co.*,
    2019 WL 11626516 (W.D. Tex. July 26, 2019) ..................................................12

*Miller v. Kevin Gros Marine, Inc.*,
    2006 WL 1061919 (S.D. Tex. Apr. 20, 2006) ....................................................14

*Moki Mac River Expeditions v. Drugg*,
    221 S.W.3d 569 (Tex. 2007)...............................................................................5

*Munro v. Lucy Activewear, Inc.*,
    2016 WL 4257750 (W.D. Tex. Jan. 14, 2016) ...................................................13

*Nunes v. NBCUniversal Media, LLC*,
    582 F. Supp. 3d 387 (E.D. Tex. 2022)........................................................ *passim*

*Nutall v. Juarez*,
    984 F. Supp. 2d 637 (N.D. Tex. 2013) ..............................................................13

*Pace v. Cirrus Design Corp.*,
   93 F.4th 879 (5th Cir. 2024) ...................................................................9

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981)...............................................................................14

*PPG Indus. v. JMB/Houston Ctrs. Ltd. P'ship*,
   146 S.W.3d 79 (Tex. 2004)......................................................................9

*Primoris T&D Servs., LLC v. MasTec, Inc.*,
   2023 WL 3400525 (N.D. Tex. May 11, 2023) .......................................11

*Qualls v. Prewett Enters., Inc.*,
   594 F. Supp. 3d 813 (S.D. Tex. 2022) .............................................16, 17

*Revell v. Lidov*,
   317 F.3d 467 (5th Cir. 2002) ..............................................................7, 8

*Russo v. Barnard*,
   2021 WL 5567380 (S.D. Tex. Nov. 29, 2021) .......................................11

*Sanders v. Polaris Indus., Inc.*,
   2021 WL 7448731 (W.D. Tex. July 6, 2021) .........................................12

*Shambaugh & Son, L.P. v. Steadfast Ins. Co.*,
   91 F.4th 364 (5th Cir. 2024) ...................................................................9

*Trump v. Simon & Schuster, Inc.*,
   2023 WL 5000572 (N.D. Fla. Aug. 4, 2023)....................................13, 14

*Utah v. Walsh*,
   2023 WL 2663256 (N.D. Tex. Mar. 28, 2023) .......................................16

*Walden v. Fiore*,
   571 U.S. 277 (2014)..................................................................................7

*Wenche Siemer v. Learjet Acquisition Corp.*,
   966 F.2d 179 (5th Cir. 1992) .................................................................10

*Wilson v. Belin*,
   20 F.3d 644 (5th Cir. 1994) .....................................................................4

*Wyatt v. Kaplan*,
   686 F.2d 276 (5th Cir. 1982) ...............................................................4, 5

**Statutes**

28 U.S.C. § 1391.................................................................................... *passim*

28 U.S.C. § 1404.................................................................................................1, 14, 15

28 U.S.C. § 1406....................................................................................................1, 14

**Rules**

Fed. R. Civ. P. 12.................................................................................................. *passim*

**Other Authorities**

Former President Trump Attends October 7 Remembrance Event, C-SPAN (Oct. 7, 2024),
    https://www.c-span.org/video/?538976-1/fmr-pres-trump-oct-7-remembrance-event ...........12

Median Time From Filing to Disposition of Civil Cases by Action Taken,
    https://www.uscourts.gov/statistics-reports/federal-judicial-caseload-statistics-2023-tables .17

Trump Rally Schedule and 2024 Campaign Events,
    https://www.uspresidentialelectionnews.com/donald-trump-rally-schedule/..........................12

Defendants CBS Broadcasting Inc. and CBS Interactive Inc. (together, "CBS" or "Defendants") respectfully submit this motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and (b)(3) and 28 U.S.C. § 1406 or, in the alternative, to transfer to the Southern District of New York pursuant to 28 U.S.C. § 1404 or § 1406.

## PRELIMINARY STATEMENT

President Donald J. Trump's claim against two New York-based entities does not belong in a Texas court. To begin, this Court lacks jurisdiction over either Defendant. CBS Broadcasting Inc. is incorporated in New York and has its principal place of business there. CBS Interactive Inc. is incorporated in Delaware and has its principal place of business in New York. Neither is at home in Texas, as required for general jurisdiction. Nor would the exercise of specific jurisdiction accord with due process: Defendants did not (i) aim the challenged *60 Minutes* interview (the "Interview") at Texas residents specifically; (ii) film, edit, or produce the Interview at issue in Texas; (iii) mention Texas in the Interview; or (iv) cause injury to President Trump in Texas. In short, the exercise of jurisdiction would both be unfair and infringe on the interests of the sovereign states where Defendants are at home.

For similar reasons, this Court is also not a proper venue. Texas is not the locus of any events relevant to the claim, much less the necessary "substantial part of the events . . . giving rise to the claim." 28 U.S.C. § 1391(b)(2). This action arises out of CBS Correspondent Bill Whitaker's interview with Vice President Kamala Harris. However, the Interview took place on the campaign trail in Wisconsin and at the Vice President's residence in Washington, D.C. *60 Minutes* is produced, edited, prepared for broadcast, and broadcast from New York, where CBS is based. The subject matter of the challenged portions of the Interview concerns Israel and the

1

Middle East—not Texas. And President Trump is a resident of Florida. In short, President Trump cannot establish that a substantial portion of the events at issue occurred in this District.

Finally, even if jurisdiction and venue were not impediments to this Court hearing this case, at a minimum, transfer is warranted. This case indisputably could have been brought in the Southern District of New York, which is the more convenient forum for the parties, where most of the witnesses are present, and which reflects New York's strong policy interest in regulating the conduct of its citizens and media. The Court should reject President Trump's naked forum-shopping and either dismiss or transfer the case.

## BACKGROUND

### I.     The Parties

CBS Broadcasting Inc., a New York corporation with its principal place of business in New York, operates CBS News, a broadcast television network offering "commentary and analysis on politics, finance, business, and other matters of public importance or interest." ECF No. 1 at ¶¶ 18, 22; *see* Declaration of Gayle C. Sproul ("Sproul Decl.") ¶ 6. CBS Interactive Inc., a Delaware corporation with its principal place of business in New York, operates CBS' online services. *See* ECF No. 1 at ¶ 20; Sproul Decl. ¶¶ 4, 7. Neither CBS Broadcasting Inc. nor CBS Interactive Inc. owns any property in the state of Texas.  Sproul Decl. ¶ 8.

President Trump is "a resident of the State of Florida," ECF No. 1 at ¶ 17, and, as President-Elect, will soon become a resident of Washington, D.C.

### II.     The Interview

In the run-up to the 2024 presidential election, CBS News' *60 Minutes* prepared to interview the candidates for both major presidential parties. President Trump ultimately withdrew, but veteran CBS News journalist Bill Whitaker conducted an interview with Vice

2

President Kamala Harris, the Democratic nominee for President. Declaration of Bill Owens ("Owens Decl.") ¶ 6. The Interview took place in two parts: first, on October 3, "on the campaign trail" in Ripon, Wisconsin, and "later," on October 5, "at the Vice President's residence in Washington D.C." *Id.* ¶ 7 & Ex. C (*60 Minutes* Broadcast) at 12:22-12:31. In between, on October 4, Mr. Whitaker interviewed the Democratic nominee for Vice President, Governor Tim Walz, in his home state of Minnesota. *Id.* ¶ 8.

The *60 Minutes* production staff edited the Interview from New York. Owens Decl. ¶¶ 2, 9, 13. *60 Minutes* also made a preview of the Interview available to CBS' Sunday morning news show, *Face the Nation*, which, on October 6, ran a short excerpt focused exclusively on the Biden-Harris administration's Israel policy.[1] *Id.* ¶¶ 11-12. *Face the Nation* is broadcast from CBS News' studio in Washington, D.C. *Id.* ¶ 12. On October 7, 2024, CBS News' *60 Minutes* dedicated approximately 15 minutes of a special election edition of the program to Whitaker's interview with Vice President Harris (interspersed with a few minutes of his interview with Governor Walz). Owens Decl., Ex. C (*60 Minutes* Broadcast) at 12:44-27:09 & 34:25-35:20. *60 Minutes* is produced in and broadcast from New York. Owens Decl. ¶ 9.

III.     **The Complaint**

On October 21, 2024, President Trump, represented by New York-based counsel, wrote CBS, accusing it of engaging in "manipulative editing" of the Interview to make Vice President Harris "appear coherent and decisive." ECF No. 1-1 at 2. Following an exchange of letters between CBS' New York-based counsel and President Trump's New York-based counsel, *see*

-------------------------------------------------------------------------------

[1] The Complaint erroneously alleges that the *Face the Nation* excerpt and the *60 Minutes* Interview aired on October 5 and 6, 2024, when in fact, they aired on October 6 and 7, respectively. *See, e.g.*, ECF No. 1 at ¶¶ 5-6. CBS will use the correct dates throughout this motion.

ECF Nos. 1-2 & 1-3; *see also* Sproul Decl. Ex. A, President Trump filed this lawsuit on October 31, 2024. The crux of President Trump's claim is that CBS caused confusion to "millions of Americans," including but not limited to Texas residents, by "portray[ing] Kamala as intelligent, well-informed, and confident when, in fact, she is none of the above." ECF No. 1 at ¶ 61; *see id.* ¶¶ 9, 58, 63(a). The sole allegation pertaining to the Northern District of Texas specifically is that "CBS, through its CBS Stations Group of Texas LLC, owns television station KTVT in Fort Worth—Dallas, Texas, which has a license with the FCC." *Id.* at ¶ 55. Aside from the case heading, the Complaint does not even mention Amarillo, much less contain any substantive allegations related in any way to this Division.

## ARGUMENT

### I.    The Complaint Fails To Plead Personal Jurisdiction.

President Trump has not alleged facts to support the exercise of jurisdiction over either Defendant. Due process requires that a defendant haled into court have such "contacts" with the forum that "the maintenance of the suit" is "reasonable, in the context of our federal system of government," and "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316-17 (1945) (citation and internal quotation marks omitted).

"When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994) (citation omitted). In resolving jurisdictional issues, "the allegations of the complaint are taken as true [only] to the extent they are not contradicted by affidavits." *Wyatt v. Kaplan*, 686 F.2d 276, 283 n.13 (5th Cir. 1982). Where defendants submit "affidavits to the effect that their contacts with Texas have been

extremely limited and do not relate to the present cause of action," and the plaintiff "introduce[s] no evidence to the contrary," the exercise of personal jurisdiction is not permitted. *Id.*; *see also Cunningham v. CBC Conglomerate, LLC*, 359 F. Supp. 3d 471, 482 n.6 (E.D. Tex. 2019) ("In responding to a motion to dismiss, 'the plaintiff cannot stand on its pleadings, but must, through affidavit or otherwise set forth specific facts demonstrating the Court has jurisdiction.'") (citation omitted). Here, even accepting Plaintiff's pleadings as accurate, jurisdiction is not established as to either Defendant.

First, neither Defendant is subject to general jurisdiction in Texas. General jurisdiction exists where a defendant's contacts with a state are "so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Ops., S.A. v Brown*, 485 U.S. 915, 919 (2011)). Courts may exercise general jurisdiction over a defendant corporation only where that defendant "is fairly regarded as at home," *i.e.*, in its "place of incorporation" or "principal place of business." *Id.* at 137 (citation omitted). President Trump rightly pleads that "Defendant CBS Broadcasting Inc. is a New York corporation with its principal place of business in New York," while "Defendant CBS Interactive Inc. is a Delaware corporation with its principal place of business in New York." ECF No. 1 at ¶¶ 19, 20. As such, neither Defendant is subject to the Court's exercise of general personal jurisdiction.

Second, Defendants are not subject to specific jurisdiction in Texas. President Trump cites Texas' long-arm statute. *See id.* at ¶ 26. But that statute extends only "as far as the federal constitutional requirements of due process will allow." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007) (citation omitted). Thus, due process controls and the determination whether the exercise of jurisdiction comports with federal due process involves

three questions: (1) whether "the defendant 'purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there'"; (2) whether "the case 'arises out of or results from the defendant's forum-related contacts'"; and (3) whether "the exercise of personal jurisdiction is fair and reasonable." *Bulkley & Assocs. v. Dep't of Indus. Rels., Div. of Occupational Safety & Health of the State of Calif.*, 1 F.4th 346, 351 (5th Cir. 2021) (citations omitted). "[A]ll three questions" must be answered "in the affirmative" to "satisf[y] due process." *Id.*

None of these three requirements is satisfied with respect to either Defendant. As to the first prong, purposeful availment, the challenged Interview must "target Texas specifically and knowingly"—that is, it must be "aimed at Texans . . . more than at residents of other states." *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 318 (5th Cir. 2021); *see also, e.g.*, *Nunes v. NBCUniversal Media, LLC*, 582 F. Supp. 3d 387, 400, 402 (E.D. Tex. 2022) (finding no specific jurisdiction where plaintiff "presented no evidence" that the media defendant's challenged "Report 'was directed at Texas viewers as distinguished from viewers in other states'") (quoting *Revell v. Lidov*, 317 F.3d 467, 473 (5th Cir. 2002)). Like other CBS News programs, *60 Minutes* airs nationwide, and this Interview in particular was, by its very nature, focused on the national presidential election. Further, the challenged portion of the Interview was focused on the Middle East and did not mention Texas. Nothing about the Interview or the program was specifically targeted at Texas.

As to the second prong requiring that the case arise out of the defendant's forum-related contacts, "there must be an affiliation between the forum and the underlying controversy, principally, an activity or occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262

(2017) (internal quotation marks, citation, and alterations omitted); *see Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014) (noting that specific jurisdiction is also referred to as "case-linked jurisdiction"). Here, the Interview that is the subject of the controversy was not alleged to have been filmed, produced in, or broadcast from, Texas. The Complaint arises out of the allegedly "manipulative editing" of the Interview, ECF No. 1 at ¶ 57, which did not occur in Texas. And President Trump never alleges that he was deceived by the Interview in Texas. *See Revell*, 317 F.3d at 474 n.48 (noting that a finding of personal jurisdiction "requires both the harm to be felt in the forum *and* that the forum be the focal point of the publication"). In fact, his Complaint suggests that, were he deceived anywhere, he would have been deceived in Florida, where he is a resident, not in Texas.

Finally, the exercise of personal jurisdiction over both Defendants, who had neither "'fair warning' that their activities could furnish jurisdiction in the forum," nor any "chance to limit or avoid [their] exposure" to Texas courts, would be unfair and contrary to our system of federalism. *Johnson*, 21 F.4th at 320, 322 (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 360 (2021)). As a district court in Texas recently held in another case in which a political figure challenged a New York-based media defendant:

> [Plaintiff Devin] Nunes asks this Court to hale NBCU into Texas because some of his Texas supporters may have viewed the nationally-broadcast Report. But those views—if they exist—reflect only NBCU's universal accessibility, not its purposeful availment of Texas. Accordingly, forcing NBCU, a non-resident of Texas, to defend a lawsuit brought here by another non-resident would impose an unjustified and unconstitutional burden on NBCU.

*Nunes*, 582 F. Supp. 3d at 401 (internal citations and quotation marks omitted). So too, here, President Trump seeks to hale CBS into Court simply because some potential Trump donors or supporters in Texas may have viewed the nationally-broadcast *60 Minutes* election special, thereby imposing "an unjustified and unconstitutional burden" on CBS.

Indeed, in cases involving the media, the Fifth Circuit has repeatedly held that media outlets whose content is available nationally are not subject to specific jurisdiction in Texas when Texas is not "the focal point both of the story and of the harm suffered." *Revell*, 317 F.3d at 472; *see also Clemens v. McNamee*, 615 F.3d 374, 380 (5th Cir. 2010) (no specific jurisdiction over online publication in Texas when "the statements did not concern activity in Texas" and were not "made in Texas or directed to Texas residents any more than residents of any state"); *Herman v. Cataphora, Inc.*, 730 F.3d 460, 465 (5th Cir. 2013) (no specific jurisdiction because online statements did not focus on Texas); *Nunes*, 582 F. Supp. 3d at 400, 402 (no specific jurisdiction where challenged "Report does not focus on Texas, nor rely on Texas sources," "even where the publisher of the statement is aware that some viewers could be forum residents").

*Johnson v. TheHuffingtonPost.com, Inc.* is instructive. In that case, a Texas citizen brought a libel action against an online news publisher. The Fifth Circuit held that it lacked personal jurisdiction because the story "d[id] not mention Texas" and had "no ties to Texas." 21 F.4th at 319. "Making a website that's visible in Texas," the court explained, "does not suffice. If it could, [Texas's] jurisdiction would have no limit; a plaintiff could sue everywhere. That result would not be fair or consistent with defendants' reasonable expectations." *Id.* at 320 (internal citations omitted). Likewise, here, the mere fact that *60 Minutes* is "accessible to the general public in Texas, and has been viewed by individuals in Texas" through CBS Interactive Inc.'s streaming services or, in the case of CBS Broadcasting Inc., over the public airwaves, *see* ECF No. 1 at ¶ 25, does not mean either Defendant has "intentionally create[d] suit-related contacts with the forum" and "does not suffice" to confer jurisdiction. *Johnson*, 21 F.4th at 320, 322. Nor would "display[ing] ads from Texas-based advertisers" or ads directed to Texas residents amount

to "purposeful availment" of the forum for the purposes of this case, which is not about such advertisements in any event. *Id.* at 320-21 ("Johnson's libel claim . . . does not stem from or relate to HuffPost's ads . . . .").

Indeed, the claim here is even *less* related to Texas than the libel claim in *Johnson*. In *Johnson*, the allegedly defamed plaintiff lived in Texas and so the brunt of any harm would be felt in the state. As noted, President Trump resides in Florida, *see* ECF No. 1 at ¶ 17, and he does not allege that he was in Texas when the *60 Minutes* broadcast at issue aired. *See Pace v. Cirrus Design Corp.*, 93 F.4th 879, 902 (5th Cir. 2024) (emphasizing that "there must be a strong relationship among the *defendant*, the *forum*, and the *litigation*," which was lacking when defendant's "alleged conduct occurred in other states" and plaintiff's "injury occurred" outside the forum). If this Court has specific jurisdiction, so too does every district court in the country. The Fifth Circuit has consistently rejected a theory of specific jurisdiction that "would allow for specific personal jurisdiction . . . virtually anywhere" over entities that provide "nationwide coverage." *Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 374 (5th Cir. 2024).

Ignoring these considerations, President Trump offers a smattering of vague allegations about Texas that bear no relationship to the claim at bar. *See Bristol-Myers Squibb*, 582 U.S. at 262. For example, he alleges that CBS "provid[es] newspapers and website access" to Texas residents "in exchange for subscription fees," ECF No. 1 at ¶ 26, but he does not identify what newspapers CBS operates (it operates none), what website access subscribers are paying for, what contract Texas residents have agreed to, or, critically, how any of these alleged contacts relate to President Trump being deceived by the editing of the Interview. *See PPG Indus. v. JMB/Houston Ctrs. Ltd. P'ship*, 146 S.W.3d 79, 89 (Tex. 2004) (emphasizing the "personal" nature of damages to the individual plaintiff under the DTPA). He also alleges that CBS

9

"engages in extensive advertising in Texas and this District." ECF No. 1 at ¶ 22. But, again, CBS' advertising is not the subject of the instant controversy.[2] Finally, President Trump hangs his hat on the existence of KTVT Fort Worth—Dallas but he admits that a different entity, CBS Stations Group of Texas LLC, owns that station. *See id.* ¶ 55. He further apparently alleges that CBS Broadcasting Inc. and CBS Interactive Inc. "own[]" KTVT "through" CBS Stations Group of Texas LLC. *Id.* But even were that so, President Trump never alleges that he viewed—much less was confused or deceived by—a broadcast emanating from KTVT and, moreover, "the Fifth Circuit has established that a parent corporation 'is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there.'" *Casas v. Northrop Grumman Ship Sys., Inc.*, 533 F. Supp. 2d 707, 713 (S.D. Tex. Jan. 7, 2008) (quoting *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 218 (5th Cir. 2000)).[3]

Because the exercise of jurisdiction "would vitiate the sovereign interests of the states where defendants like [CBS Interactive Inc. and CBS Broadcasting Inc.] are 'at home,'" *Johnson*, 21 F.4th at 324, this action should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2).

---

[2] President Trump alleges that CBS Interactive Inc. has a registered agent for service in Texas and that CBS Broadcasting Inc.—though its registered agent for service is in New York, where it was in fact served—may be served through the Texas Secretary of State. *See* ECF No. 1 at ¶¶ 19, 21; ECF Nos. 6 & 7. Those allegations regarding Defendants' ability to be served in Texas also have no bearing on the jurisdiction analysis. *See Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 182 (5th Cir. 1992) (holding that "the appointment of an agent for process and the registration to do business within the state" are insufficient to establish jurisdiction); *Fiduciary Network, LLC v. Buehler*, 2015 WL 2165953, at *7 (N.D. Tex. May 8, 2015) (Lynn, J.) ("Plaintiff's 'registration plus' theory is just a theory, and Plaintiff must establish general jurisdiction under the usual due process analysis.").
[3] In fact, CBS Interactive Inc. has no ownership interest in KTVT and CBS Broadcasting Inc. does not own KTVT, but rather owns an indirect minority stake in KTVT's sole member. *See* Sproul Decl. ¶¶ 9-10.

## II.        This Case Should Be Dismissed On Grounds Of Improper Venue

Separate and apart from jurisdiction, this action is subject to dismissal in full under Federal Rule of Civil Procedure 12(b)(3) because the Northern District of Texas is not a proper venue. When a defendant raises improper venue, "the plaintiff has the burden to prove that venue is proper"; "if a plaintiff cannot defend its choice of venue, the case does not belong there in the first place." *Primoris T&D Servs., LLC v. MasTec, Inc.*, 2023 WL 3400525, at *1-2 (N.D. Tex. May 11, 2023) (Pittman, J.). President Trump contends that venue is proper under 28 U.S.C. § 1391(b)(2) and (b)(3). *See* ECF No. 1 at ¶ 27. Those provisions state that, when subject-matter jurisdiction is based on diversity of citizenship, venue is proper in:

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b)(2)-(3).[4]

President Trump's assertion that venue is proper under Section 1391(b)(3) can be readily disposed of since this action could easily have been brought in the Southern District of New York, where both Defendants have their principal place of business.

Venue under Section 1391(b)(2) also fails. To establish venue under this provision, courts look to "the defendant's conduct and where that conduct took place," rather than focusing on the activities of the plaintiff. *Russo v. Barnard*, 2021 WL 5567380, at *2 (S.D. Tex. Nov. 29, 2021) (citation omitted). The effects of the defendant's actions on the plaintiff or others in Texas are

---

[4] 28 U.S.C. § 1391(b)(1) provides that venue is proper in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located. Because neither defendant is a Texas resident, Section 1391(b)(1) does not confer proper venue.

"irrelevant to venue determination," as "§ 1391(b)(2) requires courts to focus on the defendant's conduct alone." *Id.* (citation omitted); *accord, e.g.*, *Lalla v. G&H Towing Co.*, 2019 WL 11626516, at *3 (W.D. Tex. July 26, 2019).[5] "Only . . . events directly connected" to the alleged wrong are relevant for purposes of the venue inquiry; the court is "prohibit[ed]" from "look[ing] outside" those events and considering "tangentially related events." *Jerger v. D&M Leasing Dallas*, 2020 WL 4335733, at *3 (E.D. Tex. July 28, 2020). The fact that President Trump has asserted a claim under Texas law also has no bearing on the venue analysis. *See, e.g.*, *Sanders v. Polaris Indus., Inc.*, 2021 WL 7448731, at *2 (W.D. Tex. July 6, 2021) (whether "Texas law should apply" is "not relevant to determining whether venue is proper").

President Trump does not, and cannot, allege that "a substantial part of the events or omissions giving rise to the claim" occurred in the Northern District of Texas. The events giving rise to the claim occurred in Wisconsin and Washington D.C., where the Whitaker Interview took place, and in New York, where Defendants have their principal place of business, where the *60 Minutes* election episode featuring the Interview was edited and produced, and from where *60 Minutes* is broadcast. The Complaint does not allege that the Interview was filmed in Texas or that any editing decisions with respect to the Interview that aired on *60 Minutes* were made in Texas.

---

[5] Even if the plaintiff's activities *were* relevant to the venue analysis, which they are not, President Trump does not allege that he watched either the *60 Minutes* broadcast or the *Face the Nation* broadcast while in Texas. Indeed, he was campaigning in Wisconsin on October 6, 2024, when the *Face the Nation* broadcast aired, *see* Trump Rally Schedule and 2024 Campaign Events, https://www.uspresidentialelectionnews.com/donald-trump-rally-schedule/, and on October 7, 2024, when the *60 Minutes* broadcast aired, he was at an event at his golf resort in Miami marking the anniversary of the Hamas attacks, *see* Former President Trump Attends October 7 Remembrance Event, C-SPAN (Oct. 7, 2024), https://www.c-span.org/video/?538976-1/fmr-pres-trump-oct-7-remembrance-event.

Rather, President Trump alleges that the mere fact that the Interview was transmitted to this District—"and elsewhere," as he concedes—is sufficient to confer venue. ECF No. 1 at ¶ 27. Not so. Texas courts have repeatedly held that "nationwide" distribution does not support a finding of proper venue under 28 U.S.C. § 1391. *Munro v. Lucy Activewear, Inc.*, 2016 WL 4257750, at *5 (W.D. Tex. Jan. 14, 2016); *see also, e.g.*, *Nunes*, 582 F. Supp. 3d at 397, 399 (finding venue in Texas improper where challenged statements "were 'accessible to anyone in the world with an Internet connection'") (citation omitted); *Immanuel v. Cable News Network, Inc.*, 2022 WL 1748252, at *5 (E.D. Tex. May 31, 2022) (same); *Nutall v. Juarez*, 984 F. Supp. 2d 637, 646 (N.D. Tex. 2013) (Lynn, J.) ("The existence of Defendants' website, without more, is insufficient to establish venue in the Northern District."). "Were it otherwise, . . . the reach of the internet alone would make venue proper in any district in the United States, or indeed, anywhere in the world, regardless of whether any acts were directed at the forum itself," "stretch[ing] the notion of venue far beyond its accepted bounds." *Francesca's Collections, Inc. v. Medina*, 2011 WL 3925062, at *3 (S.D. Tex. Sept. 7, 2011).

President Trump knows well that he cannot simply select his preferred jurisdiction when that jurisdiction bears little or no relationship to the events giving rise to his claim. Just last year, in *Trump v. Simon & Schuster, Inc.*, the Northern District of Florida held that it was not a proper venue under Section 1391(b)—even though President Trump had asserted a claim under the Florida Deceptive and Trade Practices Act—"because none of the Defendants reside[d]" there, "a substantial part of the events giving rise to Mr. Trump's claims did not occur in [that] district, and other viable districts exist in which Trump could have properly filed his claims, such as the United States District Court for the Southern District of New York where two Defendants reside and many relevant decisions regarding *The Trump Tapes* were made." 2023 WL 5000572, at *5

(N.D. Fla. Aug. 4, 2023). There, like here, President Trump argued that venue existed because there were nationwide marketing and sales of the relevant editorial work. But the court rejected that argument, noting that "only the Defendants' activities '*that directly give rise to a claim are relevant*.'" *Id.* at \*4 (emphasis in original) (quoting *Robey v. JP Morgan Chase Bank N.A.,* 343 F. Supp. 3d 1304, 1314 (S.D. Fla. 2018)). For the same reasons, venue here is improper.

Because venue is improper in this District, dismissal is warranted under Federal Rule of Civil Procedure 12(b)(3). At a minimum, the case should be transferred to the Southern District of New York under 28 U.S.C. § 1406(a).

### III.     In The Alternative, This Case Should Be Transferred To The Southern District Of New York Under 28 U.S.C. § 1404(a)

Even if the Court were to conclude that both the exercise of personal jurisdiction and venue are proper, at a minimum this case should be transferred to the Southern District of New York. 28 U.S.C. § 1404(a), which "codifi[es] . . . the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system," *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 60 (2013), sets forth "relaxed standards for transfer," *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981). It gives district courts the discretion to "transfer any civil action to any other district or division where it might have been brought" "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Although the plaintiff's choice of venue is ordinarily given some weight, when a "lawsuit has absolutely no connection to this Division or even [this] District," as here, "Plaintiff's choice of forum is entitled to little or no deference." *Miller v. Kevin Gros Marine, Inc.*, 2006 WL 1061919, at \*3 (S.D. Tex. Apr. 20, 2006).

In deciding whether to transfer a case, the Court first must determine whether the proposed transferee forum is one where the case could have initially been brought. *See In re*

*Volkswagen AG*, 371 F.3d 201, 202-03 (5th Cir. 2004). Here, that threshold requirement is easily satisfied. The case could have been brought in New York where both Defendants have their principal place of business, and where the editing decisions at issue were made and executed by CBS. *See, e.g.*, *Children's Health Def. v. WP Co.*, 2023 WL 3940446, at *3 (N.D. Tex. May 12, 2023) (Kacsmaryk, J.) (case could have been brought in the Southern District of New York when media defendants "principally operated out of New York City" or performed "a substantial portion of [their] business functions" there); *Nunes*, 582 F. Supp. 3d at 404 (case could have been brought in the Southern District of New York when "individuals involved in the Report's production, including the show's executive producer, work in New York City," network was "headquartered in New York City," and show was "prepared" and "broadcast" there).

Next, the Court must weigh a series of private interest and public interest factors and order that the case be transferred if the transferee forum is "clearly more convenient" than the current forum. *In re Volkswagen of Am, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc). Both the private and public interest factors weigh overwhelmingly in favor of transfer here.

The private interest factors include: "(1) ease of access to evidence; (2) the availability of compulsory process for the attendance of unwilling witnesses; (3) the cost of willing witnesses' attendance; (4) if relevant, the possibility of a view of premises; and (5) all other factors that might make the trial quicker or less expensive." *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 798 (5th Cir. 2007). "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen AG*, 371 F.3d at 204-05.

15

Here, the relevant evidence is in the Southern District of New York,[6] as are virtually all of the CBS producers, journalists, and editors who may be expected to be witnesses in this case. *See* Owens Decl. ¶ 13 (identifying specific individuals most knowledgeable about the *60 Minutes* interview, all but one of whom work in New York); *cf. Utah v. Walsh*, 2023 WL 2663256, at *4 (N.D. Tex. Mar. 28, 2023) (Kacsmaryk, J.) ("Defendants have not identified any witnesses or physical evidence located outside this district . . . or any other practical problems."). Those witnesses would each testify to their roles in the production and editing of the Interview. Forcing all of these witnesses to travel to the Northern District of Texas would impose significant and unnecessary costs and other "practical problems." *In re Volkswagen of Am*, 545 F.3d at 315; *see* Owens Decl. ¶ 14 ("Were these individuals forced to travel to Amarillo, Texas throughout this litigation, it would seriously undermine their ability to gather and report the news in the regular course by pulling them away from shoots, assignments, and other production-related tasks."). President Trump also is not in Texas—and will soon be residing much closer to New York, where he maintains a residence. *See Children's Health Def.*, 2023 WL 3940446, at *3 (that "no Plaintiff lives within Texas" and "most Plaintiffs are located in or are much closer to the districts to which Defendants seek transfer" favor transfer). Accordingly, the private interest factors heavily favor transfer to the Southern District of New York.

The public interest factors equally favor transfer. Those "factors include: (i) the administrative difficulties flowing from court congestion; (ii) the local interest in having

---

[6] The fact that much of the evidence may be electronic "will not preclude a conclusion that the location of the files weighs in favor of transfer," as "the key question is 'relative ease of access, not absolute ease of access'" and "the Fifth Circuit has ruled that technological advancements neither lighten the weight of this factor nor render it 'superfluous.'" *Qualls v. Prewett Enters., Inc.*, 594 F. Supp. 3d 813, 823 (S.D. Tex. 2022) (citations omitted).

localized controversies resolved at home; (iii) the interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action; (iv) the avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and (v) the unfairness of burdening citizens in an unrelated forum with jury duty." *DTEX*, 508 F.3d at 802.

First, to the extent statistics regarding court congestion matter given that "[d]ifferent interpretations of the statistics can produce different conclusions about the relative workloads of each judicial district," *Coleman v. Brozen*, 2020 WL 2200220, at *7 (E.D. Tex. May 6, 2020), the Southern District of New York has a median time of filing to disposition of 5.9 months, while the Northern District of Texas has a median time of filing to disposition of 30.2 months.[7] New York also "has strong policy interests in regulating the conduct of its citizens and its media," *Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 178 (2d Cir. 2021), while "Amarillo has little interest in the resolution of this case – at least compared to New York," *Children's Health Def.*, 2023 WL 3940446, at *3. That President Trump alleges a violation of a Texas statute is of no moment: As many Texas courts have recognized, because "federal courts are experienced in applying the laws of other jurisdictions, transfer is not necessarily favored or disfavored due to the application of another state's law." *Qualls*, 594 F. Supp. 3d at 826; *see also, e.g.*, *ExpressJet Airlines, Inc. v. RBC Cap. Markets Corp.*, 2009 WL 2244468, at *13 (S.D. Tex. July 27, 2009) (observing that "federal district courts, particularly when sitting in diversity, often apply foreign law in resolving . . . controversies," and holding that the Southern District of New York "would have no difficulty applying the Texas law at issue"). Indeed, the Southern District of New York

---

[7] *See* Federal Judicial Caseload Statistics 2023 Tables – Median Time From Filing to Disposition of Civil Cases by Action Taken, https://www.uscourts.gov/statistics-reports/federal-judicial-caseload-statistics-2023-tables. Of course, the District-wide median times, as set forth in the Judicial Caseload Statistics, do not reflect median times by Division or by individual judge.

has ample experience adjudicating Texas DTPA claims. *See, e.g.*, *Blake Marine Grp., LLC v. Frenkel & Co.*, 439 F. Supp. 3d 249, 254 (S.D.N.Y. 2020); *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 449 (S.D.N.Y. 2017); *English v. Danone N. Am. Pub. Benefit Corp.*, 678 F. Supp. 3d 529, 537 (S.D.N.Y. 2023). No conflict of law or foreign law issues are present so that factor is neutral. Finally, given the absence of any nexus between the challenged conduct and the Northern District of Texas, it would be unfair to burden the citizens of Amarillo with jury duty in this case.

For all of these reasons, the public and private factors weigh strongly in favor of transferring this case to the Southern District of New York.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should dismiss Plaintiff's Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(2) or 12(b)(3) or, in the alternative, transfer this case to the Southern District of New York.

Respectfully submitted,

/s/ *Thomas C. Riney*

**UNDERWOOD LAW FIRM, P.C.**

Thomas C. Riney
State Bar No. 16935100
C. Jason Fenton
State Bar No. 24087505
PO Box 9158 (79105-9158)
500 S. Taylor, Suite 1200
Amarillo, TX 79101
Telephone: (806) 376-5613
Facsimile: (806) 379-0316
tom.riney@uwlaw.com
jason.fenton@uwlaw.com

**JACKSON WALKER LLP**

Marc A. Fuller
State Bar No. 24032210
2323 Ross Ave., Ste. 600
Dallas, TX 75201
Telephone: (214) 953-6000
Facsimile: (214) 953-5822
mfuller@jw.com

**DAVIS WRIGHT TREMAINE LLP**

Elizabeth A. McNamara (admitted *pro hac vice*)
Jeremy A. Chase (admitted *pro hac vice*)
Alexandra Perloff-Giles (admitted *pro hac vice*)
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Telephone: (212) 489-8230
elizabethmcnamara@dwt.com
jeremychase@dwt.com
alexandraperloffgiles@dwt.com

*Attorneys for CBS Broadcasting Inc. and CBS
Interactive Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 6, 2024 a true and correct copy of the foregoing was served via CM/ECF on all counsel of record.

*/s/ Thomas C. Riney*

20