**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

|  |  |
|---|---|
| PRESIDENT DONALD J. TRUMP, an individual, and REPRESENTATIVE RONNY JACKSON, an individual, <br><br> *Plaintiffs*, <br><br> v. <br><br> PARAMOUNT GLOBAL d/b/a PARAMOUNT, a Delaware corporation, CBS BROADCASTING INC., a New York corporation, and CBS INTERACTIVE INC., a Delaware corporation, <br><br> *Defendants*. | Case No. 2:24-cv-00236-Z |

## JOINT PROPOSED SCHEDULING ORDER

Pursuant to the Court's Order regarding a joint proposed scheduling order, *see* ECF No. 31, and Orders extending the time to file a joint proposed scheduling order, *see* ECF Nos. 31, 33 & 35, the parties to this action jointly submit this Joint Proposed Scheduling Order.

This report was compiled by Defendants based on the Rule 26(f) conference that took place telephonically on February 11, 2025, with Plaintiffs and Defendants discussing their positions. Lead counsel for Plaintiffs Edward Andrew Paltzik and lead counsel for Defendants Elizabeth A. McNamara participated in the 26(f) conference. (Plaintiffs' other counsel—Daniel Z. Epstein and Chris D. Parker—and Defendants' other counsel—Thomas C. Riney, Christopher Jason Fenton, Marc Fuller, Jeremy Chase, and Alexandra Perloff-Giles—did not participate.)

### I.    Nature of the Case

***Plaintiffs' Statement:*** Under the guise of news, Defendants broadcast, posted online, and streamed their heavily tampered interview (the "Interview") with then-presidential candidate Kamala Harris during their October 7, 2024 *60 Minutes* Election Special show. The Interview was commercial speech calculated to drive profits and viewership for Defendants. Plaintiffs and their constituents were subject to deception about candidate Harris and deprived of the accurate media services that they paid for. Defendants heavily advertised and promoted the Interview, including a preview segment the day before on *Face the Nation*. But the Interview that consumers saw on *60 Minutes*, online, and on Defendants' streaming services, was a manipulated

1

version of the actual Interview, with numerous answers altered or deleted to present an altogether different version of Harris to consumers than what she really was. This manipulation of the Interview was an act of unlawful competition against President Trump, actionable under the Lanham Act, as he competes directly against Defendants in the digital media content creation space through *Truth Social* and other media enterprises. Defendants' manipulation was also an act of consumer fraud against President Trump and Representative Jackson, actionable under the Texas Deceptive Trade Practices Act, as they both acquired Defendants' broadcast and digital services, and like tens of millions of Americans, were confused and deceived by the manipulated Interview. This is exactly the type of deceptive conduct that the Lanham Act and the Texas Deceptive Trade Practices Act exist to protect against—the use of deceptive services targeting consumers for profit. Plaintiffs, as two elected officials who were personally deceived by Defendants, not only have standing, but are in the unique position of representing tens of millions of constituents who were also deceived. Representative Jackson has standing personally, and as the literal representative for his constituents within the 13th Congressional District, which covers much of the Northern District of Texas. President Trump's standing is also clear both individually as a consumer and competitor, as Harris's opponent in the 2024 Presidential Election, and now as 47th President of the United States.

***Defendants' Statement***: Plaintiffs bring claims under the Lanham Act and the Texas Deceptive Trade Practices Act—both of which exclusively regulate commercial speech—but they challenge editorial decisions made by two CBS news programs, *Face the Nation* and *60 Minutes*, concerning (in the words of the Amended Complaint) a "matter of particularly urgent public interest." The law is clear that consumers cannot exercise control over editing decisions by news organizations. And the entire foundation for the action—that Defendants somehow "deceived" or "doctored" the 60 Minutes interview of the Vice President—is belied by the complete transcripts included in the Amended Complaint. In other words, as the Supreme Court has made clear, the action violates the First Amendment by interfering with Defendants' constitutionally protected freedom to make such editorial judgments. Nor have Plaintiffs pled the basic elements of either claim. As to the Lanham Act claim, they fail to plausibly allege that Defendants' news programming is "commercial advertising or promotion," that Defendants made any specific and material misrepresentation of fact, or that Plaintiffs suffered an injury to a commercial interest in reputation or sales. As to the DTPA claim, they fail to allege that they purchased goods or services from Defendants, that Defendants performed any false, misleading, or deceptive act within the meaning of the statute, or that Plaintiffs detrimentally relied on any alleged misrepresentation by Defendants. Finally, Plaintiffs lack standing because they have not suffered any concrete and particularized injury caused by Defendants and redressable by this Court. Even if there were particularized harm, it would be to Trump Media & Technology Group in the case of the Lanham Act claim and to President Trump's campaign apparatuses in the case of the DTPA claim—not to President Trump individually. Plaintiffs do not allege any injury whatsoever to Representative Ronny Jackson, who has plainly been added in a vain attempt to create a nexus to the forum (and who in any event agreed to arbitrate this claim).

## II. Basis for Jurisdiction

***Plaintiffs' Statement:*** This Court clearly has both personal jurisdiction and subject-matter jurisdiction, and venue is also proper. As an initial matter, each of the Defendants transacts

substantial business in Texas and in this District, employs numerous individuals in Texas and in this District, and consistently target Texas consumers not only for their broadcast services, but also online and streaming services including *Paramount+* and on *YouTube.* Defendants also maintain numerous CBS affiliates in Texas and in this District, including by way of example KTVT, KTXA, and KFDA. Defendants even brand KTVT as "CBS News Texas." Moreover, as stated above, Representative Jackson is not only a citizen of Texas, but is the Congressman for the 13th Congressional District, which embraces much of the Northern District of Texas and is situated entirely within this judicial District; President Trump's media holdings also derive a substantial amount of their profit from Texas. There is a clear affiliation between Texas and the underlying controversy, as Defendants targeted their deceptive services toward the State and this District as among the leading media markets and population bases in America.

***Defendants' Statement:*** This Court lacks both personal jurisdiction and subject-matter jurisdiction. As to personal jurisdiction, there is no general jurisdiction. CBS Broadcasting Inc. is incorporated in New York and has its principal place of business there. CBS Interactive Inc. and Paramount Global are both incorporated in Delaware and have their principal place of business in New York. Nor is there specific jurisdiction: Defendants did not specifically and knowingly aim their conduct at Texans more than at residents of other states; there is no affiliation between Texas and the underlying controversy; and Fifth Circuit law makes clear that it would unduly burden media outlets whose content is available nationally to be haled into court in Texas on the mere fact that their content is available in Texas as in everywhere else in the country. (If Texas's sizeable "population" meant any publication distributed nationally was "targeted" at Texas, there would *always* be jurisdiction in states like Texas, New York, and California. That is not the law.) As to subject-matter jurisdiction, as noted above, Plaintiffs lack constitutional standing to bring this case. Even if there were jurisdiction, venue is improper in this District because a substantial part of the events or omissions giving rise to the claim did not occur in the Northern District of Texas; the interview with Vice President Harris was filmed and edited entirely outside Texas, and Plaintiffs do not even allege that they watched the interview in Texas. If the complaint is not dismissed for lack of jurisdiction or improper venue, it should be transferred to the Southern District of New York.

## III. Likelihood of Joinder

The parties do not anticipate joining additional parties at this time, but do not rule out joinder depending on information adduced during discovery.

## IV. Proposed Deadlines

| Joinder of other parties | March 14, 2025 |
|---|---|
| Designation of expert witnesses by parties seeking affirmative relief | September 5, 2025 |
| Expert disclosures by parties seeking affirmative relief | September 19, 2025 |
| Designation of expert witnesses by parties opposing affirmative relief | October 3, 2025 |
| Expert disclosures by parties opposing | October 17, 2025 |

| affirmative relief | |
|---|---|
| Designation of rebuttal expert witnesses | October 31, 2025 |
| Objections to experts (e.g., *Daubert* motions) | November 19, 2025 |
| Amendment of pleadings | September 5, 2025 |
| Mediation (if any) | December 20, 2025 |
| Completion of discovery | December 20, 2025 |
| Filing of dispositive motions, including motions for summary judgment | February 18, 2026 |
| Filing of protective order (if agreed upon) | March 14, 2025 |
| Filing of Rule 26(a)(3) pretrial disclosures | July 2, 2026 |

**V.    Positions on Rule 26(f)(3)(A)-(F) Matters**

A.  The parties agree to serve initial disclosures by March 14, 2025. Those initial disclosures will include the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, as well as a computation of Plaintiffs' damages and a description of the categories of documents that may be used to support the parties' claims or defenses. At an appropriate time after the entry of an appropriate protective order and during discovery, Defendants will provide information regarding any insurance agreements that they reasonably believe may satisfy all or part of a judgment.

B.  Discovery

Defendants offered to stay discovery pending the decision on the motions to dismiss or transfer the action. Plaintiffs declined to stay discovery and recognize that discovery is a reciprocal process, but only to the extent Defendants' discovery requests are relevant to any claims or defenses at issue, and also with the understanding that Defendants' discovery requests may be barred or limited by executive privilege or other privilege. Defendants reserve the right to contest Defendants' assertion of objections on the grounds of relevance, privilege, or otherwise. The parties agree that discovery should be completed by December 20, 2025.

***Plaintiffs' Position***: Plaintiffs believe that discovery is needed to determine the full extent of Defendants' manipulation of the Harris interview and the Election Special program, their knowledge that such manipulation was unlawful and not editorial in nature, their internal biases and prejudices that lead them to distort content intended for consumers, their internal communications about this deceptive programming, their coordination with third parties, their efforts to commercialize and profit from their deception, and their animus against President Trump. Discovery is also needed about the extent of Defendant's business operations in Texas and targeting of Texas consumers with the broadcast and digital services in question, particularly in light of Defendants' assertions that they are not amenable to jurisdiction in Texas. Plaintiffs also believe discovery is needed about the manner in which Defendants treated the Harris interview differently than other interviews, and why they were not transparent about the manipulation of the interview until months after the Presidential Election and only after the

4

Federal Communications Commission compelled them to disclose the unedited transcript of the interview.

***Defendants' Position***: Defendants believe discovery is needed into President Trump's personal financials, as well as the financials of Donald Trump's 2024 campaign organizations and of Trump Media & Technology Group, including with respect to Truth Social and the $TRUMP meme crypto project. Defendants further anticipate that discovery will be needed into President Trump's legal relationship, if any, with the Donald J. Trump for President 2024 campaign and the Trump Media & Technology Group. Discovery is also needed into, *inter alia*, whether Plaintiffs have purchased goods or services from Defendants (and whether Rep. Jackson agreed to arbitrate claims relating to CBS' services); what confusion (if any) was created by the interview and actions taken in connection with such confusion; whether Plaintiffs relied upon any alleged misrepresentation in taking any action or failing to take any action; and the basis for the damages alleged.

C. Electronically Stored Information

Electronically stored information shall be produced to the requesting party with searchable text, e.g., in TIFF format with a companion text file, except that files not easily converted to image format, such as Excel, video, or audio files shall be produced in native format. Documents will be Bates-stamped and may be designated Confidential or Highly Confidential / Attorney's Eyes Only pursuant to the terms of a protective order that will be prepared by the parties based on the Northern District of Texas Model Protective Order, with appropriate modifications as agreed between the parties. The parties will also negotiate an ESI protocol setting forth further details regarding the production of electronically stored information.

D. Privilege

Defendants anticipate that there may be reporters' privilege and attorney client privilege or attorney work product issues. The parties will endeavor to confer and address any privilege issues as they arise.

E. Discovery

The parties do not currently contemplate any changes to the limitations on discovery under Rule 26.

F. Other orders

Pursuant to Rule 26(c), the parties will prepare a draft protective order based on the Northern District of Texas Model Protective Order to be so-ordered by the Court, subject to the Court's approval.

**VI.     Status of Settlement Negotiations**

As required by the federal rules, the parties have been in communication regarding settlement, and will advise the Court if they jointly agree that the case should be referred for a court-ordered alternative dispute resolution or a court-supervised settlement conference. The parties continue to consider alternative dispute resolution options.

**VII.     "Ready-for-Trial" Date**

The case will be ready for trial in August 2026. The parties estimate that trial will last two weeks. Plaintiffs have requested a jury trial.

**VIII.     Local Counsel**

Local counsel for Plaintiffs (Chris D. Parker) appeared on October 31, 2024. Local counsel for Defendants (Thomas C. Riney and Christopher Jason Fenton) appeared on November 19, 2024.

**IX.     Certificate of Interested Persons**

Plaintiffs filed a certificate of interested persons on February 11, 2025.

/s/ *C. Jason Fenton*

**UNDERWOOD LAW FIRM, P.C.**

Thomas C. Riney
State Bar No. 16935100
C. Jason Fenton
State Bar No. 24087505
PO Box 9158 (79105-9158)
500 S. Taylor, Suite 1200
Amarillo, TX 79101
Telephone: (806) 376-5613
Facsimile: (806) 379-0316
tom.riney@uwlaw.com
jason.fenton@uwlaw.com

**JACKSON WALKER LLP**

Marc A. Fuller
State Bar No. 24032210
2323 Ross Ave., Ste. 600
Dallas, TX 75201
Telephone: (214) 953-6000
Facsimile: (214) 953-5822
mfuller@jw.com

**DAVIS WRIGHT TREMAINE LLP**

Elizabeth A. McNamara (admitted *pro hac vice*)
Jeremy A. Chase (admitted *pro hac vice*)
Alexandra Perloff-Giles (admitted *pro hac vice*)
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Telephone: (212) 489-8230
elizabethmcnamara@dwt.com
jeremychase@dwt.com
alexandraperloffgiles@dwt.com

*Attorneys for Paramount Global, CBS Broadcasting
Inc., and CBS Interactive Inc.*

/s/ *Edward Andrew Paltzik*

EDWARD ANDREW PALTZIK
Texas Bar No. 24140402
Bochner PLLC

1040 Avenue of the Americas
15th Floor
New York, NY 10018
(516) 526-0341
edwardb@bochner.law

DANIEL Z. EPSTEIN
Texas Bar No. 24110713
1455 Pennsylvania Avenue NW
Suite 400
Washington, DC 20004
(202) 240-2398
dan@epsteinco.co

CHRIS D. PARKER
Texas Bar No. 15479100
Farris Parker & Hubbard
A Professional Corporation
P. O. Box 9620
Amarillo, TX 79105-9620
(806) 374-5317 (T)
(806) 372-2107 (F)
cparker@pf-lawfirm.com

*Attorneys for Plaintiffs Donald J. Trump and Ronny Jackson*

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2025 a true and correct copy of the foregoing was served via CM/ECF on all counsel of record.

*/s/ C. Jason Fenton*

8