**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, an individual, and REPRESENTATIVE RONNY JACKSON, an individual, <br><br> *Plaintiffs*, <br><br> v. <br><br> PARAMOUNT GLOBAL, d/b/a PARAMOUNT, a Delaware corporation, CBS BROADCASTING INC., a New York corporation, and CBS INTERACTIVE INC., a Delaware corporation, <br><br> *Defendants*. | Case No. 2:24-cv-00236-Z |

<u>**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE OR, IN THE ALTERNATIVE, TO TRANSFER**</u>

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ............................................................................................................... 2

    I.   The Parties .......................................................................................................... 2

    II.  The Interview ..................................................................................................... 3

    III. The Amended Complaint ................................................................................... 4

LEGAL STANDARD ........................................................................................................ 6

ARGUMENT ..................................................................................................................... 7

    I.   The Amended Complaint Fails To Plead Personal Jurisdiction. ........................ 7

           a.   CBS Broadcasting Inc. and CBS Interactive Inc. ................................. 9

           b.   Paramount Global ............................................................................... 14

    II.  This Case Should Be Dismissed On Grounds Of Improper Venue ................... 15

    III. In The Alternative, This Case Should Be Transferred To The Southern District Of New York Under 28 U.S.C. § 1404(a) ....................................................... 19

CONCLUSION ................................................................................................................ 24

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ADT, LLC v. Cap. Connect, Inc.*,
    2015 WL 7352199 (N.D. Tex. Nov. 20, 2015)........................................................12

*AllChem Performance Prods, Inc. v. Aqualine Warehouse, LLC*,
    878 F. Supp. 2d 779 (S.D. Tex. 2012) ..................................................................12

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*,
    571 U.S. 49 (2013)..............................................................................................20

*Baird v. Shagdarsuren*,
    426 F. Supp. 3d 284 (N.D. Tex. 2019) ................................................................11

*Bavikatte v. Polar Latitudes, Inc.*,
    2015 WL 8489997 (W.D. Tex. Dec. 8, 2015) ........................................................7

*Blake Marine Grp., LLC v. Frenkel & Co.*,
    439 F. Supp. 3d 249 (S.D.N.Y. 2020)..................................................................23

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,
    582 U.S. 255 (2017)..............................................................................................9

*Bulkley & Assocs., LLC v. Dep't of Indus. Rels., Div. of Occupational Safety & Health of the State of Cal.*,
    1 F.4th 346 (5th Cir. 2021) .............................................................................8, 9

*Butowsky v. Gottlieb*,
    2020 WL 5757223 (E.D. Tex. Sept. 28, 2020).....................................................10

*Child.'s Health Def. v. WP Co.*,
    2023 WL 3940446 (N.D. Tex. May 12, 2023) (Kacsmaryk, J.)..................20, 22, 23

*Clemens v. McNamee*,
    615 F.3d 374 (5th Cir. 2010) .............................................................................13

*Clemons v. WPRJ, LLC*,
    928 F. Supp. 2d 885 (S.D. Tex. 2013) ..................................................................7

*Coleman v. Brozen*,
    2020 WL 2200220 (E.D. Tex. May 6, 2020).........................................................23

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)...........................................................................................7, 8

ii

*Dalton v. R&W Marine Inc.*,
  897 F.2d 1359 (5th Cir. 1990) ..........................................................................15

*Diece-Lisa Indus., Inc. v. Disney Enters., Inc.*,
  943 F.3d 239 (5th Cir. 2019) ...........................................................................15

*DTEX, LLC v. BBVA Bancomer, S.A.*,
  508 F.3d 785 (5th Cir. 2007) (per curiam)...............................................21, 22

*Ecigrusa LLC v. Silver State Trading LLC*,
  2022 WL 1321573 (N.D. Tex. May 3, 2022) ...................................................12

*English v. Danone N. Am. Pub. Benefit Corp.*,
  678 F. Supp. 3d 529 (S.D.N.Y. 2023)...............................................................23

*ExpressJet Airlines, Inc. v. RBC Cap. Mkts. Corp.*,
  2009 WL 2244468 (S.D. Tex. July 27, 2009).....................................................23

*First Metro. Church of Hous. v. Genesis Grp.*,
  616 F. App'x 148 (5th Cir. 2015) (per curiam) .............................................1, 8, 11

*Francesca's Collections, Inc. v. Medina*,
  2011 WL 3925062 (S.D. Tex. Sept. 7, 2011) ...................................................18

*Freudensprung v. Offshore Tech. Servs., Inc.*,
  379 F.3d 327 (5th Cir. 2004) .........................................................................6, 15

*Hargrave v. Fibreboard Corp.*,
  710 F.2d 1154 (5th Cir. 1983) ............................................................................8

*Herman v. Cataphora, Inc.*,
  730 F.3d 460 (5th Cir. 2013) ...........................................................................13

*Immanuel v. Cable News Network, Inc.*,
  2022 WL 1748252 (E.D. Tex. May 31, 2022)..........................................10, 14, 18

*In re Gen. Motors LLC Ignition Switch Litig.*,
  257 F. Supp. 3d 372 (S.D.N.Y. 2017)...............................................................23

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) (per curiam)...............................................11, 20, 21

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) (en banc) .......................................................21, 22

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945)..............................................................................................7

*Iwasaki v. P&G Rare Violins, Inc.*,
    2025 WL 36164 (N.D. Tex. Jan. 6, 2025) ............................................................................12

*Jerger v. D&M Leasing Dall.*,
    2020 WL 4335733 (E.D. Tex. July 28, 2020) ......................................................................17

*Johnson v. TheHuffingtonPost.com, Inc.*,
    21 F.4th 314 (5th Cir. 2021) ...................................................................................... *passim*

*Kinsey v. N.Y. Times Co.*,
    991 F.3d 171 (2d Cir. 2021)....................................................................................................23

*Kuykendall v. Amazon Studios LLC*,
    2022 WL 19337992 (S.D. Tex. Mar. 18, 2022)..............................................................10, 11

*Lalla v. G&H Towing Co.*,
    2019 WL 11626516 (W.D. Tex. July 26, 2019) ...................................................................16

*Miller v. Kevin Gros Marine, Inc.*,
    2006 WL 1061919 (S.D. Tex. Apr. 20, 2006) ......................................................................20

*Mink v. AAAA Dev. L.L.C.*,
    190 F.3d 333 (5th Cir. 1999) .................................................................................................11

*Monkton Ins. Servs., Ltd. v. Ritter*,
    768 F.3d 429 (5th Cir. 2014) ...................................................................................................7

*Munro v. Lucy Activewear, Inc.*,
    2016 WL 4257750 (W.D. Tex. Jan. 14, 2016) .....................................................................18

*Nunes v. NBCUniversal Media, LLC*,
    582 F. Supp. 3d 387 (E.D. Tex. 2022).......................................................................... *passim*

*Nuttall v. Juarez*,
    984 F. Supp. 2d 637 (N.D. Tex. 2013) (Lynn, J.)................................................................18

*Pace v. Cirrus Design Corp.*,
    93 F.4th 879 (5th Cir. 2024) ..................................................................................................12

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
    253 F.3d 865 (5th Cir. 2001) (per curiam)............................................................................6

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981)................................................................................................................20

*Pontchartrain Mortg. Corp. v. Mortg. Asset Rsch. Inst., Inc.*,
    2004 WL 137590 (E.D. La. Jan. 20, 2004)...........................................................................11

iv

*PPG Indus. v. JMB/Hous. Ctrs. Ltd. P'ship*,
    146 S.W.3d 79 (Tex. 2004).................................................................13

*Primoris T&D Servs., LLC v. MasTec, Inc.*,
    2023 WL 3400525 (N.D. Tex. May 11, 2023) (Pittman, J.)....................................16

*Qualls v. Prewett Enters., Inc.*,
    594 F. Supp. 3d 813 (S.D. Tex. 2022) ..............................................21, 23

*Quick Techs., Inc. v. Sage Grp. PLC*,
    313 F.3d 338 (5th Cir. 2002), *cert. denied*, 124 S. Ct. 66 (2003)...........................6

*Revell v. Lidov*,
    317 F.3d 467 (5th Cir. 2002) .......................................................11, 12, 13

*Russo v. Barnard*,
    2021 WL 5567380 (S.D. Tex. Nov. 29, 2021) ........................................16

*Sanders v. Polaris Indus., Inc.*,
    2021 WL 7448731 (W.D. Tex. July 6, 2021) ........................................17

*Seiferth v. Helicopteros Atuneros, Inc.*,
    472 F.3d 266 (5th Cir. 2006) .............................................................7

*Shambaugh & Son, L.P. v. Steadfast Ins. Co.*,
    91 F.4th 364 (5th Cir. 2024) ...........................................................10

*Singletary v. B.R.X., Inc.*,
    828 F.2d 1135 (5th Cir. 1987) .........................................................11

*Trump v. Simon & Schuster, Inc.*,
    2023 WL 5000572 (N.D. Fla. Aug. 4, 2023)......................................19, 20

*Utah v. Walsh*,
    2023 WL 2663256 (N.D. Tex. Mar. 28, 2023) (Kacsmaryk, J.)............................22

*Walden v. Fiore*,
    571 U.S. 277 (2014)................................................................9, 14

*Wenche Siemer v. Learjet Acquisition Corp.*,
    966 F.2d 179 (5th Cir. 1992) .............................................................9

*Wilson v. Belin*,
    20 F.3d 644 (5th Cir. 1994) ..............................................................6

*Wyatt v. Kaplan*,
    686 F.2d 276 (5th Cir. 1982) .........................................................6, 7

**Statutes**

28 U.S.C. § 1391 ................................................................................................2, 16, 17, 18

28 U.S.C. § 1404 ..............................................................................................1, 19, 20, 21

28 U.S.C. § 1406 ......................................................................................................1, 19

Lanham Act .............................................................................................................5, 12, 13

Texas Deceptive Trade Practices Act ...................................................................... *passim*

**Rules**

Federal Rule of Civil Procedure 12 ......................................................................... *passim*

**Other Authorities**

Federal Judicial Caseload Statistics 2023 Tables - Median Time From Filing to Disposition of Civil Cases by Action Taken, https://www.uscourts.gov/statistics-reports/federal-judicial-caseload-statistics-2023-tables .................................................................................................24

Defendants Paramount Global ("Paramount"), CBS Broadcasting Inc. ("CBS"), and CBS Interactive Inc. ("CBS Interactive") (together, "Defendants") respectfully submit this motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and (b)(3) and 28 U.S.C. § 1406 or, in the alternative, to transfer to the Southern District of New York pursuant to 28 U.S.C. § 1404 or § 1406.

## PRELIMINARY STATEMENT

Plaintiff Donald J. Trump, a citizen of Florida, brings this lawsuit against three media companies, all of which are based in New York, over an interview with former Vice President Kamala Harris (the "Interview") that took place in Washington, D.C., was edited in New York, and was later broadcast across the United States from New York. In a vain effort to manufacture a connection to this District, President Trump is now nominally joined by Representative Ronny Jackson, who, according to the Amended Complaint, has spent the majority of the last decade based in Washington, D.C., first as physician to President Barack Obama and President Trump, and more recently, as a Representative of Texas' 13th Congressional District in the U.S. House of Representatives. While Rep. Jackson is a citizen of Texas, the Amended Complaint is devoid of any factual allegations that he watched the *Face the Nation* or *60 Minutes* broadcasts from Texas (or indeed, from anywhere) or suffered any injury in Texas (or indeed, anywhere else).

Several consequences flow from these uncontroverted facts, all of which point in one direction: this case does not belong in this Court. ***First***, Defendants are not subject to general jurisdiction in Texas because none of them are incorporated here or have their principal place of business here. ***Second***, there is no specific jurisdiction over Defendants because Defendants did not aim the challenged *Face the Nation* broadcast ("FTN Broadcast") or *60 Minutes* broadcast ("60 Minutes Broadcast") at Texas residents specifically (and certainly not at Rep. Jackson

1

specifically); film, edit, or produce the Interview at issue in Texas; or cause any cognizable injury to Plaintiffs in Texas. ***Third***, even if this Court had jurisdiction over Defendants, this District is not a proper venue. None of the events relevant to the claims took place in Texas, much less the necessary "*substantial part* of the events . . . giving rise to the claim[s]." 28 U.S.C. § 1391(b)(2) (emphasis added). ***Finally***, even if Defendants were subject to jurisdiction and venue were proper, a transfer to the Southern District of New York would still be warranted. There is no doubt this case could have been brought in the Southern District of New York, and that the private and public interest factors, including the convenience and availability of witnesses, the location of evidence, and the lack of a local interest in having this case decided in this District, weigh in favor of transfer.

The Court should reject Plaintiffs' naked forum-shopping and either dismiss or transfer the case.

## **BACKGROUND**

### I.    **The Parties**

CBS is a New York corporation with its principal place of business in New York. ECF No. 36 ¶ 28. It operates CBS News, which produces and airs news programs such as *60 Minutes* and *Face the Nation*. *Id.* ¶¶ 4 n.1, 34. CBS Interactive, a Delaware corporation with its principal place of business in New York, *id.* ¶ 30, operates CBS News' online services, *see* Declaration of Gayle C. Sproul ("Sproul Decl.") ¶¶ 4, 7. Paramount, also a Delaware corporation with its principal place of business in New York, is a publicly traded company that owns CBS and CBS Interactive. *See* ECF No. 36 ¶ 25.

President Donald Trump is "a citizen of the State of Florida," and, as President of the United States, resides in Washington, D.C. ECF No. 36 ¶ 23. Before that, President Trump was a

businessman who claims to have "achieved his own historic success in New York City's notoriously challenging real estate market." *Id.* ¶ 53. In fact, Plaintiffs allege that President Trump's name is "synonymous with New York real estate." *Id.* ¶ 55.

While Representative Ronny Jackson is a citizen of Texas, he pleads that he has spent much of the last decade in Washington, D.C., where he served as the physician of President Barack Obama and, later, of President Trump. *Id.* ¶ 24. And, for the past four years, he has spent significant time in Washington, D.C. as a member of the House of Representatives. *Id.*

## II.     The Interview

In the run-up to the 2024 presidential election, CBS News' *60 Minutes* prepared to interview the candidates for both major presidential parties. President Trump ultimately declined to sit for an interview, but veteran CBS News journalist Bill Whitaker conducted an interview with Vice President Kamala Harris, the Democratic nominee for President. Declaration of Bill Owens ("Owens Decl.") ¶ 6. The Interview took place in two parts: first, on October 3, 2024, on the campaign trail in Ripon, Wisconsin, and later, on October 5, at the Vice President's residence in Washington D.C. *Id.* ¶ 7 & ECF. No. 25, Ex. C (60 Minutes Broadcast) at 12:22-12:31. In between, on October 4, Mr. Whitaker interviewed the Democratic nominee for Vice President, Governor Tim Walz, in his home state of Minnesota. Owens Decl. ¶ 8.

*60 Minutes* production staff edited the Interview, including the question and answer around which much of Plaintiffs' complaint revolves, from New York. *Id.* ¶¶ 2, 9, 13; ECF No. 36 ¶ 85. Nearly all those staff are based in New York (none are in Texas), and the majority of *60 Minutes* business records are kept in New York. Owens Decl. ¶¶ 9, 13.

*60 Minutes* also made portions of the Interview available to CBS News' Sunday morning program, *Face the Nation*, which, on October 6, ran a short excerpt focused exclusively on the Biden-Harris administration's Israel policy. Owens Decl. ¶¶ 11-12. *Face the Nation* is broadcast

largely from CBS News' studio in Washington, D.C. *Id*. ¶ 12. On October 7, *60 Minutes* dedicated approximately 15 minutes of a special election edition of its news program to Whitaker's interview with Vice President Harris (interspersed with a few minutes of his interview with Governor Walz). ECF No. 25, Ex. C (60 Minutes Broadcast) at 12:44-27:09 & 34:25-35:20. *60 Minutes* broadcast the Interview from New York. Owens Decl. ¶ 9. None of the CBS affiliated stations across the nation, including in Texas, played any role in the creation, editing, or production of the Interview (which did not even air on KTXA). *Id*. ¶¶ 9, 12; Sproul Decl. ¶ 12.

## III.        The Amended Complaint

On October 21, 2024, President Trump wrote CBS News, accusing it of engaging in "manipulative editing" of the Interview to make Vice President Harris "appear coherent and decisive." ECF No. 36 at 36-2. Nowhere in that letter did President Trump raise any issues specific to Texas or this District. *Id*. Instead, the letter referred generically to the alleged deception of the "American People." *Id*. And President Trump identified those responsible for the alleged deception as "executives and producers at CBS, and *60 Minutes* in particular," ECF No. 36 at 36-2—again, employees based almost exclusively in New York, with none in Texas. Owens Decl. ¶ 13.

Following an exchange of letters between CBS News' counsel and President Trump's counsel, both based in New York, *see* ECF Nos. 36-3 & 36-4, President Trump filed this lawsuit against CBS and CBS Interactive on October 31, 2024, invoking this Court's diversity jurisdiction and asserting a single claim under the Texas Deceptive Trade Practices Act ("DTPA") based on CBS News' editing of the Interview. *See* ECF No. 1. On December 6, 2024,

CBS and CBS Interactive moved to dismiss the complaint, including for lack of personal jurisdiction and improper venue. *See* ECF No. 23.

On February 7, 2025, Plaintiffs filed an amended complaint, now invoking this Court's federal question jurisdiction, asserting a Lanham Act claim on behalf of President Trump and a DTPA claim on behalf of President Trump and the newly added plaintiff, Rep. Jackson. *See* ECF No. 36. Plaintiffs also added Paramount as a defendant. *Id.* As to the Lanham Act claim, the Amended Complaint alleges that Defendants' purported "false advertising" and alleged "tampering with the entirety of the Interview" diverted attention away from President Trump's "media brands" and fueled misconceptions by "the American public" on "hot-button issues" like "foreign policy." ECF No. 36 ¶ 136, 140-41. As to the DTPA claim, Plaintiffs allege that Defendants "deceive[d] and misle[]d tens of millions of consumers," including Plaintiffs. *Id.* ¶ 22. In short, both claims revolve around a single nucleus of fact: CBS News' alleged improper editing and broadcasting of the Interview in and from New York, and provision of an excerpt of that Interview to *Face the Nation* in Washington, D.C. Based on this alleged misconduct in editing, producing, and broadcasting the Interview, Plaintiffs allege that "millions of consumers in Texas and across America, including Plaintiffs" were harmed and, separately, that President Trump was harmed in his capacity as a media content creator, as a presidential candidate, and as a shareholder of Trump Media & Technology Group ("TMTG"), the owner of *Truth Social*. *E.g.*, *id.* ¶¶ 22, 143, 148-50, 156-58, 199 n.4. Neither President Trump nor Rep. Jackson alleges that

5

they watched the FTN Broadcast or the 60 Minutes Broadcast at all, much less from Texas specifically.[1]

## **LEGAL STANDARD**

A court must dismiss an action when it lacks personal jurisdiction over the defendant. *See* Fed. R. Civ. P. 12(b)(2). When a nonresident defendant moves to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)). The plaintiff meets his initial "burden by presenting a *prima facie* case that personal jurisdiction is proper." *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343 (5th Cir. 2002), *cert. denied*, 124 S. Ct. 66 (2003). "[T]he prima-facie-case requirement does not require the court to credit conclusory allegations, even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co*., 253 F.3d 865, 869 (5th Cir. 2001) (per curiam). If the plaintiff makes that *prima facie* showing, the burden shifts to the defendant to show that the exercise of jurisdiction would not comply with traditional notions of "fair play" and "substantial justice." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004) (citation omitted). In resolving jurisdictional issues, "the allegations of the complaint are taken as true [only] to the extent they are not contradicted by affidavits." *Wyatt v. Kaplan*, 686

---

[1] In fact, that weekend, on October 5, 2024, President Trump and Rep. Jackson were at a rally in Pennsylvania; on October 6, President Trump was in Wisconsin; and on October 7, President Trump was in New York and Florida. *See President Donald J. Trump to Hold a Rally in Juneau, Wisconsin*, Trump Vance, https://www.donaldjtrump.com/news/955f7f6b-9840-457c-ab61-69864644ebdc (last visited Mar. 3, 2025); *President Trump to be Joined by Special Guests at Butler, Pennsylvania Rally*, Trump Vance, https://www.donaldjtrump.com/news/eb6d1823-9246-4f97-9c4f-98d794e1c528 (last visited Mar. 3, 2025); *Trump Campaign Statement on October 7 Anniversary*, Trump Vance, https://www.donaldjtrump.com/news/5bbc8403-2a92-4370-b0e3-45a9513b7533 (last visited Mar. 3, 2025).

F.2d 276, 283 n.13 (5th Cir. 1982) (citation omitted). Where defendants submit "affidavits to the effect that their contacts with Texas have been extremely limited and do not relate to the present cause of action," and plaintiffs "introduce[] no evidence to the contrary," the exercise of personal jurisdiction is not permitted. *Id.*

Rule 12(b)(3) allows a case to be dismissed for improper venue. When a defendant raises improper venue, the plaintiff bears the burden of establishing that the chosen venue is proper. *See, e.g.*, *Clemons v. WPRJ, LLC*, 928 F. Supp. 2d 885, 897 (S.D. Tex. 2013).

## <u>ARGUMENT</u>

### I.    The Amended Complaint Fails To Plead Personal Jurisdiction.

Due process requires that a defendant haled into court have such "contacts" with the forum that "the maintenance of the suit" is "reasonable, in the context of our federal system of government," and "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316-17 (1945) (citation omitted). Here, Plaintiffs have not alleged facts to support the exercise of jurisdiction over any Defendant.[2]

Contrary to Plaintiffs' conclusory assertion, Defendants are not "subject to general personal jurisdiction in Texas." ECF No. 36 ¶ 44. Courts may exercise general jurisdiction over a defendant corporation that has not consented to suit in the forum only where that defendant "is fairly regarded as at home," *i.e.*, in its "place of incorporation" or "principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (citation omitted); *accord, e.g.*, *Monkton Ins.*

---

[2] Specific jurisdiction is a claim-specific inquiry. *See, e.g.*, *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 (5th Cir. 2006). However, where, as here, "all claims arise from the same forum contacts" (or lack thereof), "the Court need not assess contacts on a claim-by-claim basis." *Bavikatte v. Polar Latitudes, Inc.*, 2015 WL 8489997, at *3 (W.D. Tex. Dec. 8, 2015) (citation omitted).

*Servs., Ltd. v. Ritter*, 768 F.3d 429, 432-33 (5th Cir. 2014). Plaintiffs rightly plead that CBS is a New York corporation, CBS Interactive and Paramount are Delaware corporations, and all three have their principal place of business in New York. ECF No. 36 ¶¶ 25, 28, 30. The presence of in-state subsidiaries or affiliates does not give rise to general jurisdiction. *See Daimler*, 571 U.S. at 136 (rejecting theory that would "subject foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate"); *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983) ("[A] foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there."). As such, none of the Defendants is subject to general jurisdiction in Texas.

Defendants also are not subject to specific jurisdiction in Texas. Plaintiffs cite Texas' long-arm statute, ECF No. 36 ¶¶ 50-51, which extends only "to the limits of federal due process." *Bulkley & Assocs., LLC v. Dep't of Indus. Rels., Div. of Occupational Safety & Health of the State of Cal.*, 1 F.4th 346, 351 (5th Cir. 2021) (citation omitted). Whether the exercise of jurisdiction comports with federal due process involves three questions, all of which must be answered "in the affirmative" to "satisf[y] due process." *Id.*

***First***, the defendant must have "purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there." *Id.* (citation omitted). Defendants purposefully avail themselves of Texas if they "target Texas specifically and knowingly"—that is, their suit-related conduct must be "aimed at Texans . . . *more than at residents of other states*." *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 318 (5th Cir. 2021) (emphasis added); *see also*, *e.g.*, *Nunes v. NBCUniversal Media, LLC*, 582 F. Supp. 3d 387, 400, 402 (E.D. Tex. 2022) (finding no specific jurisdiction where plaintiff "presented no evidence" that the media defendant's challenged news report "was directed at Texas viewers as

distinguished from viewers in other states") (quoting *Revell v. Lidov*, 317 F.3d 467, 473 (5th Cir. 2002)). ***Second***, the case must "arise[] out of or result[] from the defendant's forum-related contacts." *Bulkley*, 1 F.4th at 351. Put differently, "there must be an affiliation between the forum and the underlying controversy, principally, an activity or occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017) (internal quotation marks, citation, and alterations omitted); *see Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014) (noting that specific jurisdiction is also referred to as "case-linked jurisdiction"). Not just "*any* 'commercial activities in a state' support specific jurisdiction over a defendant there"—only those that "relate to the plaintiff's suit." *Johnson*, 21 F.4th at 325 (emphasis in original) (citation omitted). ***Finally***, the exercise of personal jurisdiction must be "fair and reasonable." *Bulkley*, 1 F.4th at 351.

While Plaintiffs seek to muddle the inquiry by alleging that "Defendants" generally are subject to specific jurisdiction, ECF No. 36 ¶¶ 46-51, jurisdiction must be established as to each defendant individually. *See, e.g.*, *Bristol-Myers Squibb*, 585 U.S. at 268. Here, the requirements for specific jurisdiction are not satisfied with respect to any Defendant.

### a. CBS Broadcasting Inc. and CBS Interactive Inc.

CBS broadcasts a wide variety of programming, including the news shows *Face the Nation* and *60 Minutes*.[3] CBS Interactive operates Paramount's digital content services,

---

[3] President Trump alleges that Paramount and CBS Interactive have a registered agent for service in Texas, through which they were served, and that all Defendants may be served through the Texas Secretary of State. (CBS' registered agent for service is in New York, where it was in fact served). *See* ECF No. 1 ¶¶ 19, 21; ECF Nos. 6 & 7. The ability to serve Defendants in Texas has no bearing on the jurisdiction analysis. *See Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 182 (5th Cir. 1992) (holding that "the appointment of an agent for process and the registration to do business within the state" is insufficient to establish jurisdiction).

including *Paramount+*, through which the FTN and 60 Minutes Broadcasts (together, "Broadcasts") were made available for streaming online. ECF No. 36 ¶¶ 34, 77.

As to the purposeful availment requirement, simply broadcasting in Texas—as CBS does across the United States, *see* Sproul Decl. ¶¶ 9, 11—is not sufficient. *See Nunes*, 582 F. Supp. 3d at 398; *Immanuel v. Cable News Network, Inc.*, 2022 WL 1748252, at *4 (E.D. Tex. May 31, 2022); *Butowsky v. Gottlieb*, 2020 WL 5757223, at *4 (E.D. Tex. Sept. 28, 2020).[4] Plaintiffs conspicuously do not and cannot allege that either CBS or CBS Interactive directed the challenged Broadcasts at Texans "more than at residents of other states." *Johnson*, 21 F.4th at 318. They allege that Dallas/Ft. Worth is "[b]y at least some metrics," "the fourth largest media market in the United States," ECF No. 36 ¶ 52, tacitly conceding that CBS' audience is principally *outside* Texas.[5] And they affirmatively allege the "global reach" of CBS and CBS Interactive's services. ECF No. 36 ¶ 32. In particular, they allege that "Defendants' news media . . . is available nationwide," that the Face the Nation and 60 Minutes Broadcasts, like other CBS News programs, were broadcast to "[m]illions of Americans"—not just to Texans—and that Defendants deceived "the American public" writ large. ECF No. 36 ¶¶ 1, 78, 141, 144, 152. As courts in this Circuit have routinely held, making a product or service available nationwide does not establish the minimum contacts necessary for personal jurisdiction. *See Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 374 (5th Cir. 2024) (rejecting a

---

[4] With regard to the jurisdiction analysis, this Court is bound by Fifth Circuit precedent, not Texas Supreme Court decisions. *Butowsky*, 2020 WL 5757223, at *4; *see also Kuykendall v. Amazon Studios LLC*, 2022 WL 19337992, at *8 (S.D. Tex. Mar. 18, 2022).

[5] Indeed, according to that same ranking cited in the Amended Complaint, New York, where this case should have been brought (if anywhere), represents the largest television market in the country. *See* ECF No. 36 ¶ 52, Nexstar Media Group, Inc., https://www.nexstar.tv/stations/ (last visited Mar. 3, 2025).

theory of specific jurisdiction that "would allow for specific personal jurisdiction . . . virtually anywhere" over entities that provide "nationwide coverage"); *Baird v. Shagdarsuren*, 426 F. Supp. 3d 284, 290 (N.D. Tex. 2019) (similar); *Mink v. AAAA Dev. L.L.C.*, 190 F.3d 333, 336-37 (5th Cir. 1999) (promotion nationally and on the Internet insufficient for specific jurisdiction); *Singletary v. B.R.X., Inc.*, 828 F.2d 1135, 1136-37 (5th Cir. 1987) (advertising nationally including in the forum does not "r[i]se to the level of a 'purposeful availment' of [the forum's] law") (citing *Growden v. Ed Bowlin & Assocs.*, 733 F.2d 1149, 1152 (5th Cir. 1984)).

The second requirement for specific jurisdiction is also not met here and confirms the lack of relationship between Plaintiffs' lawsuit and Texas: In assessing specific jurisdiction, "a court looks *only* to 'the contact out of which the cause of action arises.'" *Kuykendall*, 2022 WL 19337992, at *2 (quoting *Revell*, 317 F.3d at 472) (emphasis added). For that reason, allegations that Defendants conduct "substantial business operations" in Texas, ECF No. 36 ¶ 44; that CBS programs are "broadcast daily in Texas and to Texas residents," just as they are in the other 49 states, and "remain accessible to the public in Texas" and elsewhere, *id.* ¶¶ 35, 48; or that CBS Interactive's "*Paramount+* has a significant number of subscribers in Texas," *id.* ¶ 34, are of no moment. *See, e.g.*, *Revell*, 371 F.3d at 471 (no personal jurisdiction even though there were subscribers to the publication in the forum state); *Pontchartrain Mortg. Corp. v. Mortg. Asset Rsch. Inst., Inc.*, 2004 WL 137590, at *2 (E.D. La. Jan. 20, 2004) (no personal jurisdiction even though there were subscribers to defendant's services in the forum state). Rather, the critical question is where the allegedly actionable conduct occurred.

Here, "Texas was not the hub of the [] activities" relevant to either claim. *First Metro. Church of Hous. v. Genesis Grp.*, 616 F. App'x 148, 149 (5th Cir. 2015) (per curiam). The Interview that is the subject of the Amended Complaint was not alleged to have been filmed or

edited in Texas. Nor was Texas in any way the subject of the Interview, which was focused on the *national* presidential election. The challenged portion of the Interview, which discussed U.S. foreign policy related to Israel and Gaza, did not mention Texas (nor did the rest of the Interview). *See Revell*, 317 F.3d at 474 n.48 (personal jurisdiction requires, *inter alia*, "that the forum be the focal point of the publication"). And neither President Trump nor Rep. Jackson even alleges that they watched the Broadcasts from Texas when they aired on October 6 and October 7, respectively, or that they watched the Broadcasts on *Paramount+* using an account registered in Texas. *See Pace v. Cirrus Design Corp.*, 93 F.4th 879, 902 (5th Cir. 2024) (emphasizing that "there must be a strong relationship among the *defendant*, the *forum*, and the *litigation*," which was lacking when defendant's "alleged conduct occurred in other states" and plaintiff's "injury occurred" outside the forum). Accordingly, whether the Lanham Act and DTPA claims allege that CBS misrepresented *Harris'* positions and therefore constituted election interference or that CBS misrepresented its *own* services and somehow induced viewers to enter into a transaction to watch *60 Minutes* instead of reading *Truth Social* posts by airing purportedly "incoherent" "word salad," *e.g.*, ECF No. 36 ¶¶ 78, 83, 119, those alleged misrepresentations were not made in or directed at Texas. *See, e.g.*, *Ecigrusa LLC v. Silver State Trading LLC*, 2022 WL 1321573, at *10 (N.D. Tex. May 3, 2022) (no specific jurisdiction for DTPA claim); *Iwasaki v. P&G Rare Violins, Inc.*, 2025 WL 36164, at *3 (N.D. Tex. Jan. 6, 2025) (same); *ADT, LLC v. Cap. Connect, Inc.*, 2015 WL 7352199, at *5 (N.D. Tex. Nov. 20, 2015) (no specific jurisdiction for Lanham Act claim based on alleged misrepresentations); *AllChem Performance Prods, Inc. v. Aqualine Warehouse, LLC*, 878 F. Supp. 2d 779, 793 (S.D. Tex. 2012) (no specific jurisdiction for Lanham Act claim where complaint did not allege "Defendants committed any acts in the forum state").

Finally, the exercise of personal jurisdiction over CBS or CBS Interactive, which had neither "'fair warning' that [their] activities could furnish jurisdiction in the forum," nor any "chance to limit or avoid [their] exposure" to Texas courts, would be unfair and contrary to our system of federalism. *Johnson*, 21 F.4th at 320, 322 (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 360 (2021)).

Notably, courts in this Circuit have repeatedly rejected arguments that publishing or broadcasting nationally, including in Texas, subjects a defendant to specific jurisdiction for claims arising from those publications or broadcasts. For example, the Fifth Circuit has repeatedly dismissed defamation claims based on lack of personal jurisdiction where "the statements did not concern activity in Texas" and were not "made in Texas or directed to Texas residents any more than residents of any state," *Clemens v. McNamee*, 615 F.3d 374, 380 (5th Cir. 2010); *see Revell*, 317 F.3d at 427 (no specific jurisdiction where Texas was not "the focal point both of the story and of the harm suffered") (citation omitted); *Johnson*, 21 F.4th at 319 (no specific jurisdiction where the story "d[id] not mention Texas" and had "no ties to Texas"); *Herman v. Cataphora, Inc.*, 730 F.3d 460, 465 (5th Cir. 2013) (no specific jurisdiction because online statements did not focus on Texas).[6] And district courts in Texas have found no specific jurisdiction over broadcasters (even when they "own[] property" and "maintain[] . . . offices and agents throughout Texas") when the challenged broadcasts did not "make[] [any] mention of this

_____

[6] Indeed, the Fifth Circuit has found no personal jurisdiction even where the allegedly defamed plaintiff lived in Texas and therefore—unlike here—the brunt of any harm was felt in the state. *Johnson*, 21 F.4th at 319. Here, President Trump—the sole plaintiff on the Lanham Act claim and the sole plaintiff to allege any theory of injury on the DTPA claim—is not a Texas resident. Rep. Jackson does not allege that he viewed the Broadcasts in Texas, subscribed to any CBS services in Texas, or suffered any specific harm on the DTPA claim. *See PPG Indus. v. JMB/Hous. Ctrs. Ltd. P'ship*, 146 S.W.3d 79, 89 (Tex. 2004) (emphasizing the "personal" nature of damages to the individual plaintiff under the DTPA).

forum," were not "specifically curated for an . . . audience" in this forum, and did not otherwise "directly target[] Texas residents." *Nunes*, 582 F. Supp. 3d at 395, 399; *Immanuel*, 2022 WL 1748252, at *5. As the court explained in *Nunes*, another case in which a political figure challenged a New York-based broadcaster:

> [Plaintiff Devin] Nunes asks this Court to hale NBCU into Texas because some of his Texas supporters may have viewed the nationally-broadcast Report. But those views—if they exist—reflect only NBCU's universal accessibility, not its purposeful availment of Texas. Accordingly, forcing NBCU, a non-resident of Texas, to defend a lawsuit brought here by another non-resident would impose an unjustified and unconstitutional burden on NBCU.

582 F. Supp. 3d at 401 (internal citations and quotation marks omitted). So too, here, Plaintiffs seek to hale Defendants into this Texas court simply because some potential Trump donors or supporters in Texas, or some readers of *Truth Social*, may have viewed the nationally-broadcast *60 Minutes* election special. Because Plaintiffs cannot show that the challenged broadcasts were "directed at viewers within [this district], as distinguished from viewers in other Texas districts" or "viewers in other states," no specific jurisdiction lies, and forcing Defendants to defend themselves in Texas imposes "an unjustified and unconstitutional burden." *Immanuel*, 2022 WL 1748252, at *5; *Nunes*, 582 F. Supp. 3d at 399, 401.

### b. Paramount Global

This Court also lacks jurisdiction over Paramount, which Plaintiffs concede "conduct[s] business and maintain[s] offices in other jurisdictions," ECF No. 36 ¶ 44, and as to which Plaintiffs make no effort to identify any "suit-related conduct," *Walden*, 571 U.S. at 284. Indeed, Plaintiffs do not allege that Paramount had any involvement whatsoever in the editing or broadcasting of the Interview, and instead seek to premise jurisdiction over Paramount on its relationships with other entities. In particular, Plaintiffs allege that "Paramount owns CBS Broadcasting and CBS Interactive," ECF No. 36 ¶ 25, that Paramount "directly and/or indirectly"

owns Dallas/Fort Worth stations KTVT and KTXA,[7] *id.* ¶¶ 37, 39, 40, and that Defendants "engage with" or "contract with" (but do not own) Amarillo-based affiliate station KFDA, *id.* ¶¶ 41, 46. Yet, Plaintiffs do not allege that any of these Texas stations had anything to do with the creation, editing, or production of the Interview.[8] And Plaintiffs do not name the Texas stations as parties. "Jurisdiction over one corporation" in the Paramount corporate structure does not "confer jurisdiction over all related entities." *Diece-Lisa Indus., Inc. v. Disney Enters., Inc.*, 943 F.3d 239, 252 (5th Cir. 2019). Even a direct "parent-subsidiary relationship" does not in itself "support the assertion of jurisdiction over a foreign parent." *Dalton v. R&W Marine Inc.*, 897 F.2d 1359, 1363 (5th Cir. 1990). And KFDA, which Defendants are alleged only to "affiliate" with, offers even less basis to exercise jurisdiction. *See Freudensprung*, 379 F.3d at 346 ("[T]he proper exercise of personal jurisdiction over a nonresident corporation may not be based solely upon the contacts with the forum state of another corporate entity with which the defendant may be affiliated.").

Because the exercise of jurisdiction "would vitiate the sovereign interests of the states where defendants . . . are 'at home,'" *Johnson*, 21 F.4th at 324, this action should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2).

## II.    This Case Should Be Dismissed On Grounds Of Improper Venue

Separate and apart from jurisdiction, this action is subject to dismissal in full under Federal Rule of Civil Procedure 12(b)(3) because the Northern District of Texas is not a proper

---

[7] KTVT, also known as CBS Stations Group of Texas LLC, has one member, CBS International Inc., in which CBS indirectly owns a minority stake. KTXA is owned by KTXA Inc., in which CBS also indirectly owns a minority stake. Paramount is the ultimate owner of all the entities with an interest in CBS Stations Group of Texas LLC or in KTXA Inc. *See* Sproul Decl. ¶ 10.

[8] In fact, KTXA did not even air either the FTN Broadcast or the 60 Minutes Broadcast. *See* Sproul Decl. ¶ 12.

venue. When a defendant raises improper venue, "the plaintiff has the burden to prove that venue is proper;" "if a plaintiff cannot defend its choice of venue, the case does not belong there in the first place." *Primoris T&D Servs., LLC v. MasTec, Inc.*, 2023 WL 3400525, at *1-2 (N.D. Tex. May 11, 2023) (Pittman, J.). Plaintiffs contend that venue is proper under 28 U.S.C. § 1391(b)(2) and (b)(3). *See* ECF No. 36 ¶ 52. Those provisions state that venue is proper in:

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b)(2)-(3).

Plaintiffs' assertion that venue is proper under Section 1391(b)(3) can be readily disposed of since this action could easily have been brought in the Southern District of New York, where all three Defendants have their principal place of business.

Venue under Section 1391(b)(2) also fails. To establish venue under this provision, courts look to "the defendant's conduct and where that conduct took place," rather than focusing on the activities of the plaintiff. *Russo v. Barnard*, 2021 WL 5567380, at *2 (S.D. Tex. Nov. 29, 2021) (citation omitted). The effects of the defendant's actions on the plaintiff or others in Texas are "irrelevant to venue determination," as "§ 1391(b)(2) requires courts to focus on the defendant's conduct alone." *Id.* (citation omitted); *accord, e.g.*, *Lalla v. G&H Towing Co.*, 2019 WL 11626516, at *3 (W.D. Tex. July 26, 2019).[9] Only "events directly connected" to the alleged wrong are relevant for purposes of the venue inquiry; the court is "prohibit[ed]" from "look[ing]

---

[9] Even if Plaintiffs' activities were relevant to the venue analysis, which they are not, the Amended Complaint does not allege that either President Trump or Rep. Jackson watched the Broadcasts while in Texas. *See supra* note 1.

outside" those events and considering "tangentially related events." *Jerger v. D&M Leasing Dall.*, 2020 WL 4335733, at *3 (E.D. Tex. July 28, 2020). The fact that Plaintiffs have asserted a claim under Texas law also has no bearing on the venue analysis. *See, e.g.*, *Sanders v. Polaris Indus., Inc.*, 2021 WL 7448731, at *2 (W.D. Tex. July 6, 2021) (whether "Texas law should apply" is "not relevant to determining whether venue is proper").

Plaintiffs do not, and cannot, allege that "a substantial part of the events or omissions giving rise to the claim[s]" occurred in the Northern District of Texas. *See* 28 U.S.C. § 1391(b)(2). The events giving rise to the claims occurred in Washington D.C.—where the Interview with Vice President Harris took place,[10] where *Face the Nation* is largely edited and produced, and from where *Face the Nation* is broadcast—and in New York—where Defendants have their principal place of business, where the *60 Minutes* news report featuring the Interview was edited and produced, and from where *60 Minutes* is broadcast. *See* Owens Decl. ¶¶ 7, 9. The Amended Complaint does not allege that the Interview was filmed in Texas, that any editing decisions with respect to the Interview were made in Texas, or that the Interview concerned or even referenced Texas.

Plaintiffs' threadbare allegations about Texas fall far short of establishing that the Northern District of Texas is the proper venue for this case. For example, Plaintiffs state that venue is proper "by virtue of the Interview being transmitted by Defendants into this District." ECF No. 36 ¶ 52. But the fact that the Interview was "transmitted" "through *Paramount+* and on *YouTube*," both services available throughout the United States and beyond, and through "local Defendant CBS affiliates" across the country, including but not limited to Texas stations KTVT

---

[10] Vice President Harris was also interviewed by Whitaker in Wisconsin on the campaign trail, though Plaintiffs make no allegations about any specific portions of the Interview filmed there.

and KFDA, *id.*, is not sufficient to confer venue. Texas courts have repeatedly held that "nationwide" distribution does not support a finding of proper venue under 28 U.S.C. § 1391. *Munro v. Lucy Activewear, Inc.*, 2016 WL 4257750, at *5 (W.D. Tex. Jan. 14, 2016); *see also, e.g.*, *Nunes*, 582 F. Supp. 3d at 397, 399 (finding venue in Texas improper where challenged statements "were 'accessible to anyone in the world with an [I]nternet connection'") (citation omitted); *Immanuel*, 2022 WL 1748252, at *5-6 (same); *Nuttall v. Juarez*, 984 F. Supp. 2d 637, 646 (N.D. Tex. 2013) (Lynn, J.) ("The existence of Defendants' website, without more, is insufficient to establish venue in the Northern District."). "Were it otherwise, . . . the reach of the internet alone would make venue proper in any district in the United States, or indeed, anywhere in the world, regardless of whether any acts were directed at the forum itself," "stretch[ing] the notion of venue far beyond its accepted bounds." *Francesca's Collections, Inc. v. Medina*, 2011 WL 3925062, at *3 (S.D. Tex. Sept. 7, 2011). Plaintiffs' concession that Texas is not among the top three media markets nationwide, *see* ECF No. 36 ¶ 52, and that Defendants conduct business "in other jurisdictions . . . relevant to this case," *id.* ¶ 44, only underscores that Texas has no particularized relationship to the Broadcasts at issue.

Plaintiffs also assert conclusorily that the local non-party stations "have employees whose knowledge will be relevant to this case within Texas," ECF No. 36 ¶ 44, but tellingly fail to identify a single such employee or what possible knowledge they would have. That is because there are none; the individuals most knowledgeable about the Interview are all located in New York or Washington D.C. Owens Decl. ¶ 13.

President Trump knows well that he cannot simply select his preferred jurisdiction when that jurisdiction bears little or no relationship to the events giving rise to his claim. In *Trump v. Simon & Schuster Inc. et al.*, the Northern District of Florida held that it was not a proper venue

under Section 1391(b)—even though President Trump had asserted a claim under Florida's equivalent to the DTPA—"because none of the Defendants reside[d]" there, "a substantial part of the events giving rise to Mr. Trump's claims did not occur in [that] district, and other viable districts exist in which Trump could have properly filed his claims, such as the United States District Court for the Southern District of New York where two Defendants reside and many relevant decisions regarding *The Trump Tapes* were made." 2023 WL 5000572, at *5 (N.D. Fla. Aug. 4, 2023). There, like here, President Trump argued that venue existed because there were nationwide marketing and sales in the district of the relevant editorial work. But the court rejected that argument, noting that "only the Defendants' activities '*that directly give rise to a claim are relevant*.'" *Id.* at *4 (emphasis in original) (quoting *Robey v. JP Morgan Chase Bank N.A.*, 343 F. Supp. 3d 1304, 1314 (S.D. Fla. 2018)). For the same reasons, venue here is improper.

Because venue is improper in this District, dismissal is warranted under Federal Rule of Civil Procedure 12(b)(3). At a minimum, the case should be transferred to the Southern District of New York under 28 U.S.C. § 1406(a).

### III.    In The Alternative, This Case Should Be Transferred To The Southern District Of New York Under 28 U.S.C. § 1404(a)

Even if the Court were to conclude that both the exercise of personal jurisdiction and venue are proper, this case should be transferred to the Southern District of New York. 28 U.S.C. § 1404(a), which codifies "the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system," *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 60 (2013), sets forth "relaxed standards for transfer," *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981). It gives district courts the discretion to "transfer any civil action to any other district or division where it might have been brought" "[f]or the

19

convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Although the plaintiff's choice of venue is ordinarily given some weight, when a "lawsuit has absolutely no connection to this Division or even [this] District," as is the case here, "Plaintiff[s]' choice of forum is entitled to little or no deference." *Miller v. Kevin Gros Marine, Inc.*, 2006 WL 1061919, at *3 (S.D. Tex. Apr. 20, 2006); *see Simon & Schuster*, 2023 WL 5000572, at *7 ("Mr. Trump's choice of forum in [this District] (which is neither his home district nor where the operative events occurred) is given very little weight.").

In deciding whether to transfer a case, the Court first must determine whether the proposed transferee forum is one where the case could have initially been brought. *See In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (per curiam). Here, that threshold requirement is easily satisfied. The case could have been brought in New York, where all Defendants have their principal place of business, and where the editing decisions at issue were made and executed. *See, e.g.*, *Child.'s Health Def. v. WP Co.*, 2023 WL 3940446, at *3 (N.D. Tex. May 12, 2023) (Kacsmaryk, J.) (case could have been brought in the Southern District of New York when media defendants "principally operated out of New York City" or performed "a substantial portion of [their] business functions" there); *Nunes*, 582 F. Supp. 3d at 404 (case could have been brought in the Southern District of New York when "individuals involved in the Report's production, including the show's executive producer, work in New York City," network was "headquartered in New York City," and show was "prepared" and "broadcast" there).

Next, the Court must weigh a series of private interest and public interest factors and order that the case be transferred if the transferee forum is "clearly more convenient" than the current forum. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc). Both the private and public interest factors weigh overwhelmingly in favor of transfer here.

20

The private interest factors include: "(1) ease of access to evidence; (2) the availability of compulsory process for the attendance of unwilling witnesses; (3) the cost of willing witnesses' attendance; (4) if relevant, the possibility of a view of premises; and (5) all other factors that might make the trial quicker or less expensive." *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 798 (5th Cir. 2007) (per curiam). "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen AG*, 371 F.3d at 204-05.

Here, the relevant evidence is in the Southern District of New York.[11] In fact, Plaintiffs have already served 339 document requests on Defendants, none of which mentions Texas. Virtually all of the CBS producers, journalists, and editors who may be expected to be witnesses in this case—including *60 Minutes* executive producer Bill Owens, *60 Minutes* executive editor Tanya Simon, and CBS News correspondent Bill Whitaker, whose records are the focus of Plaintiffs' document requests—are based in New York. *See* Owens Decl. ¶ 13 (identifying specific individuals most knowledgeable about the Interview, all but one of whom work in New York); *cf. Utah v. Walsh*, 2023 WL 2663256, at *4 (N.D. Tex. Mar. 28, 2023) (Kacsmaryk, J.) ("Defendants have not identified any witnesses or physical evidence located outside this district . . . or any other practical problems."). Those witnesses would each testify to their roles in the production and editing of the Interview. Forcing all these witnesses to travel to the Northern

---

[11] The fact that much of the evidence may be electronic "will not preclude a conclusion that the location of the files weighs in favor of transfer," as "the key question is 'relative ease of access, not absolute ease of access'" and "the Fifth Circuit has ruled that technological advancements neither lighten the weight of this factor nor render it 'superfluous.'" *Qualls v. Prewett Enters., Inc.*, 594 F. Supp. 3d 813, 823 (S.D. Tex. 2022) (citations omitted).

District of Texas would impose significant and unnecessary costs and other "practical problems." *In re Volkswagen of Am.*, 545 F.3d at 315; *see* Owens Decl. ¶ 14 (forcing key witnesses to travel to Amarillo throughout the litigation "would seriously undermine their ability to gather and report the news in the regular course by pulling them away from shoots, assignments, and other production-related tasks"). President Trump also is not in Texas, and both he and Rep. Jackson reside much of the time in Washington D.C., a short distance from New York. *See Child.'s Health Def.*, 2023 WL 3940446, at *3 (transfer favored where "most Plaintiffs" "are much closer to the districts to which Defendants seek transfer"). Accordingly, the private interest factors heavily favor transfer to the Southern District of New York.

The public interest factors equally favor transfer. Those "factors include: (i) the administrative difficulties flowing from court congestion; (ii) the local interest in having localized controversies resolved at home; (iii) the interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action; (iv) the avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and (v) the unfairness of burdening citizens in an unrelated forum with jury duty." *DTEX*, 508 F.3d at 802.

First, to the extent statistics regarding court congestion matter given that "[d]ifferent interpretations of the statistics can produce different conclusions about the relative workloads of each judicial district," *Coleman v. Brozen*, 2020 WL 2200220, at *7 (E.D. Tex. May 6, 2020), the Southern District of New York has a median time of filing to disposition of 5.9 months, while the Northern District of Texas has a median time of filing to disposition of 30.2 months.[12]

---

[12] *See* Federal Judicial Caseload Statistics 2023 Tables – Median Time From Filing to Disposition of Civil Cases by Action Taken, https://www.uscourts.gov/statistics-reports/federal-judicial-caseload-statistics-2023-tables (last visited Mar. 3, 2025). Of course, the District-wide

New York also "has strong policy interests in regulating the conduct of its citizens and its media," *Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 178 (2d Cir. 2021), while "Amarillo has little interest in the resolution of this case – at least compared to New York," *Child.'s Health Def.*, 2023 WL 3940446, at *3. That President Trump alleges a violation of a Texas statute is of no moment: As many Texas courts have recognized, because "federal courts are experienced in applying the laws of other jurisdictions, transfer is not necessarily favored or disfavored due to the application of another state's law." *Qualls*, 594 F. Supp. 3d at 826; *see also, e.g.*, *ExpressJet Airlines, Inc. v. RBC Cap. Mkts. Corp.*, 2009 WL 2244468, at *13 (S.D. Tex. July 27, 2009) (observing that "federal district courts, particularly when sitting in diversity, often apply foreign law in resolving . . . controversies," and holding that the Southern District of New York "w[ould] have no difficulty applying the Texas law at issue"). Indeed, the Southern District of New York has ample experience adjudicating Texas DTPA claims. *See, e.g.*, *Blake Marine Grp., LLC v. Frenkel & Co.*, 439 F. Supp. 3d 249, 254 (S.D.N.Y. 2020); *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 449 (S.D.N.Y. 2017); *English v. Danone N. Am. Pub. Benefit Corp.*, 678 F. Supp. 3d 529, 537 (S.D.N.Y. 2023). No conflict of law or foreign law issues are present so that factor is neutral. Finally, given the absence of any nexus between the challenged conduct and the Northern District of Texas, it would be unfair to burden the citizens of Amarillo with jury duty in this case.

> For all of these reasons, the public and private factors weigh strongly in favor of transferring this case to the Southern District of New York.

---

median times, as set forth in the Judicial Caseload Statistics, do not reflect median times by Division or by individual judge.

## **<u>CONCLUSION</u>**

For the foregoing reasons, this Court should dismiss Plaintiffs' Amended Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(2) or 12(b)(3) or, in the alternative, transfer this case to the Southern District of New York.

Respectfully submitted,

/s/ *Thomas C. Riney*

**UNDERWOOD LAW FIRM, P.C.**

Thomas C. Riney
State Bar No. 16935100
C. Jason Fenton
State Bar No. 24087505
PO Box 9158 (79105-9158)
500 S. Taylor, Suite 1200
Amarillo, TX 79101
Telephone: (806) 376-5613
Facsimile: (806) 379-0316
tom.riney@uwlaw.com
jason.fenton@uwlaw.com

**JACKSON WALKER LLP**

Marc A. Fuller
State Bar No. 24032210
2323 Ross Ave., Ste. 600
Dallas, TX 75201
Telephone: (214) 953-6000
Facsimile: (214) 953-5822
mfuller@jw.com

**DAVIS WRIGHT TREMAINE LLP**

Elizabeth A. McNamara (admitted *pro hac vice*)
Jeremy A. Chase (admitted *pro hac vice*)
Alexandra Perloff-Giles (admitted *pro hac vice*)
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Telephone: (212) 489-8230
elizabethmcnamara@dwt.com
jeremychase@dwt.com
alexandraperloffgiles@dwt.com

*Attorneys for Paramount Global, CBS Broadcasting Inc., and CBS Interactive Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 6, 2025 a true and correct copy of the foregoing was served via CM/ECF on all counsel of record.

*/s/ Thomas C. Riney*