# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# AMARILLO DIVISION

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, an individual, and REPRESENTATIVE RONNY JACKSON, an individual, | |
| Plaintiffs, | Case No. 2:24-cv-00236-Z |
| v. | |
| PARAMOUNT GLOBAL d/b/a PARAMOUNT, a Delaware corporation, CBS BROADCASTING INC., a New York corporation, and CBS INTERACTIVE INC., a Delaware corporation, | |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

BACKGROUND ................................................................................................................. 1

ARGUMENT ..................................................................................................................... 4

I.      PLAINTIFFS' REFUSAL TO TIMELY PRODUCE DOCUMENTS RELATED TO DAMAGES THEY ALLEGEDLY SUFFERED IS UNJUSTIFIED................................. 5

      A.      Plaintiffs Cannot Wait Until Expert Discovery To Produce Documents Relating To Their Claimed Damages .................................................................... 6

      B.      President Trump Must Produce Documents Identifying His "Other Media Holdings" .................................................................................................................. 9

      C.      President Trump Must Produce Documents Concerning TMTG and the Donald J. Trump Revocable Trust ........................................................................ 11

II.     PLAINTIFFS' REPEATED INVOCATION OF THE EXECUTIVE AND CONGRESSIONAL PRIVILEGES LACKS MERIT .................................................... 12

III.    PLAINTIFFS' REFUSAL TO DISCLOSE THEIR LOCATIONS ON THE DATES OF THE BROADCASTS IS UNJUSTIFIED .................................................................... 16

CONCLUSION ................................................................................................................ 17

i

# TABLE OF CONTENTS

**Page**

**Cases**

*Am. Realty Trust, Inc. v. Matisse Partners, L.L.C.*,
2002 WL 1489543 (N.D. Tex. 2002) ........................................................................7

*Ancor Holdings, L.P. v. Landon Capital Partners, L.L.C.*,
114 F.4th 382 (5th Cir. 2024) ...........................................................................7, 10

*Brewster v. United States*,
408 U.S. 501 (1972) ...........................................................................................15

*CQ, Inc. v. TXU Min. Co., LP*,
565 F.3d 268 (5th Cir. 2009) ...........................................................................7, 10

*Favors v. Cuomo*,
2013 WL 11319831 (E.D.N.Y. Feb. 8, 2013) .......................................................15

*Gravel v. United States*,
408 U.S. 606 (1972) ...........................................................................................15

*Heller v. City of Dallas*,
303 F.R.D. 466 (N.D. Tex. 2014) ..........................................................................8

*In re Sealed Case*,
121 F.3d 729 (D.C. Cir. 1997) .......................................................................13, 14

*In re XTO Energy Inc.*,
471 S.W.3d 126 (Tex. App. Dallas 2015, no pet.) ................................................12

*Lundy Enterprises, L.L.C. v. Wausau Underwriters Ins. Co.*,
2010 WL 11538545 (E.D. La. Jan. 21, 2010) .......................................................6

*Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*,
2025 WL 592484 (N.D. Tex. Feb. 24, 2025) .........................................................4

*Pace v. Cirrus Design Corp.*,
93 F.4th 879 (5th Cir. 2024) ...............................................................................17

*People v. Trump*,
224 N.Y.S.3d 832 (Sup. Ct. N.Y. Cnty. 2024) .....................................................13

*Samsung Electronics America, Inc. v. Yang Kun Chung*,
321 F.R.D. 250 (N.D. Tex. 2017) ......................................................................2, 7

*Slide Fire Solutions, LP v. Bump Fire Systems, LLC,*
  2016 WL 3352006 (N.D. Tex. Feb. 4, 2016) ........................................................................6

*Trump v. Thompson,*
  20 F.4th 10 (D.C. Cir. 2021) ............................................................................................13

*United States v. Planned Parenthood Federation of Am., Inc.,*
  2022 WL 19010334 (N.D. Tex. Aug. 25, 2022) .................................................................4

*Vaughn v. Solera Holdings, LLC,*
  2025 WL 790954 (N.D. Tex. Mar. 12, 2025) .....................................................................4

*Williams v. Brooks,*
  945 F.2d 1322 (5th Cir. 1991) ..........................................................................................15

**Rules**

Federal Rules of Civil Procedure
  Rule 26 ...........................................................................................................................4, 8
  Rule 34 ...........................................................................................................................2, 8
  Rule 37 ...........................................................................................................................1, 4

**Constitutional Provisions**

United States Constitution
  Article I, § 6 .....................................................................................................................14

iii

**DEFENDANTS' MOTION TO COMPEL AND BRIEF IN SUPPORT OF**
**THE PRODUCTION OF DOCUMENTS BY PLAINTIFFS**

Under the Court's scheduling order, "[a]ny motion to compel discovery or for a protective order must be filed no later than **fifteen days** after the discovery response at issue was served or due to be served." *See* ECF No. 45 at 5. Since Defendants received Plaintiffs' Responses and Objections to Defendants' First Requests for Production of Documents ("Requests"), the parties have engaged in two productive meet-and-confers in an effort to narrow the number and scope of disputes and to ensure that any disputes that come before the Court are ripe. Plaintiffs expressed some willingness to drop certain objections upon further legal and factual investigation. However, in view of the Court's order and so as not to waive any rights, Defendants now move to compel the production of documents under Rule 37(a)(3)(B)(iv) of the Federal Rules of Civil Procedure.[1]

## BACKGROUND

Plaintiffs President Donald J. Trump and Representative Ronny Jackson filed suit against Defendants Paramount Global, CBS Broadcasting Inc., and CBS Interactive Inc., requesting at least $20 billion in damages. Defendants have moved to dismiss the amended complaint in full on multiple grounds. Before filing their motions to dismiss, Defendants suggested the parties jointly move the Court to stay discovery during the pendency of the motions, but Plaintiffs refused. *See* ECF No. 44 at 4. In doing so, Plaintiffs assured Defendants and the Court that they recognized "discovery is a reciprocal process." *Id.*

---

[1] Defendants' compliance with the Court's scheduling order governing the timing of motions to compel is not intended to waive and should not be construed as a waiver of its objections to litigating in the U.S. District Court for the Northern District of Texas. For the reasons stated in Defendants' Motion to Dismiss for Lack of Jurisdiction and Improper Venue, Defendants maintain that this matter should be dismissed or, in the alternative, transferred to the U.S. District Court for the Southern District of New York. *See* ECF No. 50.

1

On February 17, 2025, Defendants served requests for production on President Trump and Representative Jackson. Plaintiffs' responses to those Requests were due on March 19, 2025. *See* Fed. R. Civ. P. 34(b)(2)(A). Late on March 19, Plaintiffs requested an extension of time to respond to the Requests, citing the number of Requests. In reality, the 130 Requests that Defendants served on Plaintiffs were far fewer and less burdensome than the 332 Requests that Plaintiffs served on Defendants, to which Defendants had timely responded two days prior, on March 17, 2025.[2] Nevertheless, Defendants granted Plaintiffs' request to have until March 21, 2025 to respond to the Requests. Defendants received Plaintiffs' responses to their Requests on March 21, 2025.[3]

The Responses contained a number of inappropriate and inapplicable objections. In particular:

- In response to thirty Requests related to statements about damages in the Amended Complaint, President Trump responded that the Requests were "untimely" and that he would "not provide a response unless or until expert discovery is over."[4] Representative Jackson offered the same answer in response to ten Requests.[5]

- In response to several Requests related to President Trump's "other media holdings," identified as a source of alleged damages in the Amended Complaint, and to the Donald J. Trump Revocable Trust, which Defendants understand

---

[2] Pursuant to the Court's scheduling order, Plaintiffs' motion to compel the production of documents in response to any of their requests to which Defendants objected was due on April 1, 2025. As Plaintiffs have not moved, they have waived any objections to Defendants' responses. *See*, *e.g.*, *Samsung Electronics America, Inc. v. Yang Kun Chung*, 321 F.R.D. 250 (N.D. Tex. 2017) (party that objects to a discovery request must "urge and argue in support of its objection to an interrogatory or request, and, if it does not, it waives the objection").

[3] Plaintiff President Trump served supplemental responses to Defendants on April 4, 2025. The supplemental responses corrected a transcription error that Plaintiff made while transcribing Defendants' requests, but did not change any substantive portion of Plaintiff's responses. As there were no substantive changes to the Responses, Defendants do not believe that this stays their deadline to move to compel under the Court's Scheduling Order.

[4] *See* Appendix to Defendant's Motion to Compel the Production of Documents by Plaintiffs and Memorandum of Law in Support ("Appendix") at p. 18, 23-25, 29-36, 38-51 (Ex. A, Request Nos. 23, 29-30, 38-47, 50, 52-56, 58-62, 65-67, 71-73).

[5] *See* Appendix at p. 64-65, 71-73, 76-78, 81-83 (Ex. B, Request Nos. 15-16, 31-33, 37-38, 45-46, 48).

2

holds President Trump's assets during his Presidency, President Trump objected to the Requests on relevance grounds and indicated that he will not produce responsive documents.[6]

- Both President Trump and Representative Jackson cited executive privilege as a basis not to produce documents even though the Requests do not relate to events when President Trump was in office or even after he was re-elected.[7]

- Both President Trump and Representative Jackson cited the "congressional privilege" as a basis not to produce documents even though the Requests do not relate to Representative Jackson's activities as a legislator.[8]

- President Trump and Representative Jackson object to disclosure of their locations on the dates of the Broadcasts in October 2024 – or whether they were in Texas – citing that such information would "breach the preservation of national security."[9]

Mindful of the fifteen day deadline in the scheduling order, Defendants raised these issues with Plaintiffs' counsel in a meet-and-confer on March 24, 2025.  During the meet-and-confer, Plaintiffs' counsel indicated that they would work to hopefully resolve these issues and observed that he wanted to preserve objections because Plaintiffs' counsel had not yet reviewed his clients' documents.  Defendants sent a letter to Plaintiffs' counsel memorializing the meet-and-confer on March 27, 2025 and in particular asked Plaintiffs to confirm, for example, whether they "will be invoking Executive Privilege to withhold relevant documents."  *See* Appendix at p. 90-96 (Ex. D.)

---

[6] *See* Appendix at p.16-21 (Ex. A, Request Nos. 16-17, 19-23).  As discussed *infra*, President Trump's response to Request 20 indicates that he will produce documents "upon receiving a sufficient Request for specific documents."

[7] *See* Appendix at p. 4-15, 30-32, 43-46, 62 (Ex. A, Request Nos. 1, 5, 6, 7, 8, 9, 11, 12, 13, 14, 39, 40, 60, 61, 62, 77).  *See* Appendix at p. 57-58, 62-63, 66-78, 80-84 (Ex. B Request Nos. 5, 11, 25, 27, 28, 29, 30, 31, 34, 35, 36, 37, 38, 39, 44, 46, 49).  As discussed *infra*, while President Trump and Representative Jackson have indicated that they will produce documents responsive to the majority of these Requests, this does not cure their erroneous claims of privilege.  Defendants are not moving to compel Responses to Exhibit A Requests 48, 57, and 77 and Responses to Exhibit B Request 44.  *See* Appendix at p. 36-37, 41-42, 52, and 80-81.

[8] *See* Appendix at p. 8 (Ex. A, Request No. 6.)  *See also* Appendix at p. 55, 57-60, 61 (Ex. B, Request Nos. 1, 5, 6, 9).

[9] *See* Appendix at p. 46  (Ex. A, Request Nos. 63, 64).  *See also* Appendix at 79-80 (Ex. B, Request Nos. 41, 42.)

3

Plaintiffs' counsel did not respond to that letter. Defendants had a follow-up meet-and-confer on April 4, 2025. Defendants stressed to Plaintiffs that Defendants were seeking to preserve their rights. Plaintiffs' counsel indicated that he had not conducted further review in response to Defendants' letter and, as such, he could not provide any further information on Plaintiffs' positions. Defendants anticipate that many, if not all, of these serious concerns with Plaintiffs' objections may be resolved with further negotiations. However, we file this motion to compel in accordance with the Court's scheduling order and to preserve Defendants' rights.[10] At the Court's discretion, the motion may be held in abeyance pending further negotiations between the parties.

## ARGUMENT

Parties are permitted to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "[T]he scope of discovery is broad." *United States v. Planned Parenthood Federation of Am., Inc.*, 2022 WL 19010334, at *2 (N.D. Tex. Aug. 25, 2022) (Kacsmaryk, J.). "Courts construe relevance broadly, as a document need not, by itself, prove or disprove a claim or defense or have strong probative force to be relevant." *Vaughn v. Solera Holdings, LLC*, 2025 WL 790954, at *1 (N.D. Tex. Mar. 12, 2025). The threshold for relevance at the discovery stage is "distinctly lower than the threshold for admissibility." *Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*, 2025 WL 592484, at *1 (N.D. Tex. Feb. 24, 2025) (Kacsmaryk, J.). When a party fails to comply with its discovery obligations, the party seeking discovery may move to compel the production of documents. *See* Fed. R. Civ. P. 37(a).

---

[10] The parties are engaged in good faith discussions regarding the scope of Plaintiffs' objections, and Defendants do not request fees under Rule 37(b)(C).

# I.    PLAINTIFFS' REFUSAL TO TIMELY PRODUCE DOCUMENTS RELATED TO DAMAGES THEY ALLEGEDLY SUFFERED IS UNJUSTIFIED

Plaintiffs claim that they suffered at least $20 billion in damages on the theories that Defendants' alleged conduct injured President Trump as a "direct[] compet[itor]" of CBS News and damaged his "fundraising and support values by several billions of dollars, including in Texas." *See* ECF No. 36 ¶¶ 153, 161, 164, 199 & n.4.  Representative Jackson has not even attempted to offer a cognizable theory of harm, alleging only that his "substantial damages" will be "determined upon trial of this action." *Id.* ¶ 199.  Despite the size of their requested damages award, both President Trump and Representative Jackson have refused to produce evidence substantiating their damages during fact discovery.  In particular, President Trump refuses to produce information about the holdings of the Donald J. Trump Revocable Trust, the vehicle which received 114,750,000 shares of Trump Media & Technology Group ("TMTG") stock, which forms the basis of President Trump's alleged damages.  *See* Statement of Change of Beneficial Ownership, Dec. 17, 2024, available at https://s3.amazonaws.com/sec.irpass.cc/2660/0001474506-24-000291.pdf; *see also* ECF No. 36 at ¶ 149 ("President Trump owns a significant percentage of TMTG, fluctuations of which significantly impact his on-paper net worth.").  In addition, he has refused to provide information sufficient for Defendants even to identify the "other media holdings" that he alleges suffered competitive injury.  *See id.* ¶ 156 ("This increased Defendants' engagement, viewership, and advertising revenue, and decreased the value of President Trump's ownership in TMTG and other media holdings.").  If Plaintiffs continue to refuse to produce these obviously relevant documents, Defendants will be significantly prejudiced in their ability to rebut Plaintiffs' claims.

A.    **Plaintiffs Cannot Wait Until Expert Discovery To Produce Documents Relating To Their Claimed Damages**

Courts within this District and Circuit have ordered production of financial information when such information is relevant to a party's damages analysis.  *See*, *e.g.*, *Slide Fire Solutions, LP v. Bump Fire Systems, LLC*, 2016 WL 3352006, at *6 (N.D. Tex. Feb. 4, 2016) (granting motion to compel the production of bank statements and account numbers where the business accounts at issue were relevant to plaintiff's "damages analyses"); *Lundy Enterprises, L.L.C. v. Wausau Underwriters Ins. Co.*, 2010 WL 11538545, at *2 (E.D. La. Jan. 21, 2010) (noting that the court ordered production of "information and documents pertaining to the damages plaintiffs purportedly incurred").

As Defendants' motion to dismiss makes clear, President Trump's alleged $20 billion in damages supposedly suffered to his interests in TMTG and his "other media holdings" as a result of the 60 Minutes Interview are inherently incredible.  Nonetheless, President Trump pled such alleged damages and he consequently must be put to the test of substantiating any such alleged losses.  Instead of agreeing to produce the relevant documents, Plaintiffs seek to delay.  In response to a number of Requests for damages-related documents, Plaintiffs responded that the Requests were "untimely" and that they would not respond "unless or until expert discovery is over."  *See* Plaintiff President Donald J. Trump's Objections and Responses to Defendants' First Set of Requests for Production ("Ex. A"), Response Nos. 23, 29, 30, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 50, 52, 53, 54, 55, 56, 58, 59, 60, 61, 62, 65, 66, 67, 71, 72, 73;[11] *see* Plaintiff Representative Ronny Jackson's Objections and Responses to Defendants' First Set of Requests for Production

---

[11] Appendix at p. 18-19, 23-25, 29-36, 38-51.

("Ex. B"), Response Nos. 15, 16, 31, 32, 33, 37, 38, 45, 46, 47, 48.[12] [13]  For example, Plaintiffs said they would not provide documents during fact discovery in response to Requests for (i) documents justifying Plaintiffs' claim that President Trump was damaged in an amount "reasonably believed to be no less than $10,000,000,000" for each of his claims, *see* Appendix at p. 41 (Ex. A at Responses No. 55-56); (ii) documents showing that the challenged *60 Minutes* and *Face the Nation* broadcasts decreased the value of President Trump's stake in TMTG and other media holdings, as alleged in Paragraph 156 of the Amended Complaint, *see id.* at 38 (Ex. A, Request No. 50); and (iii) documents and communications with TMTG officers showing any decline in consumer engagement, loss of revenue, or profits as a result of Defendants' alleged conduct, *see id.* at 30-31 (Ex. A, Request No. 39).

Plaintiffs—who refused Defendants' offer to stay discovery—may not postpone until expert discovery their obligations to produce responsive documents that go to the heart of their claims.  *See*, *e.g.*, *Samsung Electronics Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 293-94 (N.D. Tex. 2017) (granting motion to compel response to interrogatories regarding "the damages allegedly suffered" and "the method of calculating such damages"); *see also Ancor Holdings, L.P. v. Landon Capital Partners, L.L.C.*, 114 F.4th 382, 404-05 (5th Cir. 2024) (holding failure to disclose damages evidence was not substantially justified and not harmless); *CQ, Inc. v. TXU Min. Co., LP*, 565 F.3d 268, 279-80 (5th Cir. 2009) (same); *Am. Realty Trust, Inc. v. Matisse Partners, L.L.C.*, 2002 WL 1489543, at *5 (N.D. Tex. 2002) (granting motion to exclude plaintiffs' evidence

---

[12] Appendix at p. 64-65, 71-73, 76-78, 81-83.
[13] President Trump provided this response to thirty of Defendants' Requests for Production, or 37% of the Requests, while Representative Jackson provided it eleven times, or in response to 22% of the Requests.

of damages when plaintiffs waited until after the close of discovery to disclose "information available at the beginning of the case").

Defendants are entitled to question Plaintiffs about their alleged harm during depositions with the benefit of the documents Plaintiffs intend to rely on, and the parties' experts will need to analyze records produced by the parties during fact discovery for purposes of their expert reports. That is why the Federal Rules require plaintiffs to describe and support their claim for damages with specificity early in the life of the case: even absent any discovery requests relating to damages, the Federal Rules provide that Plaintiffs "*must*" produce a computation of each category of damages and "*must* also make available the documents or other evidentiary material . . . on which each computation is based, *including materials bearing on the nature and extent of injuries suffered*." Fed. R. Civ. P. 26(a)(1)(A)(iii) (emphasis added). Plaintiffs failed to provide the required damages computation in their initial disclosures or the materials bearing on the injuries suffered, simply noting that damages are "to be determined at trial." *See* Appendix at p. 87, Plaintiffs' 26(a) Initial Disclosure Statement ("Ex. C"). Plaintiffs' refusal to timely produce documents supporting their claim for damages in response to Defendants' discovery demands compounds that failure—and the prejudice to Defendants.[14]

In short, if Plaintiffs are seeking damages, they must provide evidentiary support for those claimed damages and must produce responsive records in their possession, custody, or control

---

[14] Counsel's representation during the meet-and-confer that he has not yet reviewed documents in no way justifies delaying the production of responsive documents until after expert discovery. Courts have held that, when "responding to [Rule 34] discovery requests, a reasonable inquiry must be made, and if no responsive documents or tangible things exist, Fed. R. Civ. P. 26(g)(1), the responding party should so state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence." *See Heller v. City of Dallas*, 303 F.R.D. 466, 485 (N.D. Tex. 2014).

during fact discovery. While Defendants are hopeful that Plaintiffs will reconsider their objections, Defendants move to compel in order to preserve all rights.

### B. President Trump Must Produce Documents Identifying His "Other Media Holdings"

Plaintiffs' Amended Complaint is replete with vague references to President Trump's "other media holdings" that were allegedly damaged by Defendants' conduct. *See* ECF No. 36 ¶ 149 ("As a direct and proximate result of Defendants' misconduct, significant viewership was improperly diverted to Defendants' media platforms, resulting in lower consumer engagement, advertising revenues, and profits by TMTG and *President Trump's other media holdings*.") (emphasis added); *see also id.* ¶¶ 150, 153, 154, 156. Despite claiming that his other media holdings were harmed, President Trump has refused to answer Requests seeking to identify these "other media holdings," their owners, and the extent to which they were harmed. *See* Appendix at 18-19 (Ex. A at Response Nos. 20-21).[15]

Request No. 20 seeks "Documents sufficient to identify all of Your 'other media holdings' outside of TMTG as referenced in Paragraphs 149, 150, 153, and 154 of the Amended Complaint." President Trump responded that the Request was "overly broad, unduly burdensome, irrelevant, and not proportional to the needs of the case," and that it was "vague and ambiguous" as the Request "does not describe the information sought or has no clear definition." *Id.* at p. 18, Response No. 20. Plaintiffs agreed to produce documents only "upon receiving a sufficient Request for specific documents." *Id.* There is nothing vague, ambiguous, or disproportionate about Request No. 20. It asks President Trump to provide documents sufficient to identify the

---

[15] Notably, in response to all other Requests concerning President Trump's "other media holdings," *see* Ex. A, Requests Nos. 23, 38, 39, 40, 41, 43, 45, 47, and 50, President Trump stated that he would provide responsive documents only after the completion of expert discovery. That response is improper for the reasons discussed in Part A.

"other media holdings" that *he* referenced in *his* Amended Complaint, even citing to specific paragraphs of the Complaint. Plaintiffs should be required to either identify the "other media holdings" specifically referenced in the Amended Complaint or aver in writing that no "other media holdings" were harmed and be barred from moving for damages on that basis. *See Ancor Holdings*, 114 F.4th at 404-05 (upholding trial court's decision to exclude evidence of damages when the computation of such damages was not provided to defendant); *CQ, Inc. v. TXU Min. Co., LP*, 565 F.3d at 279-80 (excluding plaintiff's alternate theory of damages after it failed to provide a computation of damages for various damages it claimed). Defendants cannot be left to "guess[] at" facts in Plaintiffs' possession relevant to their claims. *Am. Realty Tr.*, 2022 WL 1489543, at *5.

Similarly, Request No. 21 seeks "All Documents and Communications concerning the transfer, gift, or assignment of any ownership shares in the 'other media holdings' outside of TMTG as referenced in Paragraphs 149, 150, 153, and 154 of the Amended Complaint to the Donald J. Trump Revocable Trust or any other third party from January 1, 2024 to the present." Appendix at p. 19, (Ex. A at Request No. 21). President Trump objects to the production of responsive documents on the basis that they are not relevant (including because Plaintiffs' conduct in the "time period prior to October 6" is purportedly not relevant), that the Request seeks "commercially sensitive documents, proprietary information, or confidential financial information," and that the purpose of the Request is to harass, annoy, or cause undue burden. *Id*. None of these objections stands up to scrutiny. President Trump has alleged that his "other media holdings" were harmed, and that the financial injury to those "other media holdings" accounts for at least some of the claimed $20 billion in damages to Plaintiffs personally. Defendants are entitled to probe the financials and ownership structure of those "other media holdings" to test the veracity

10

of those allegations. Moreover, the fact that the Request seeks "commercially sensitive" and "confidential financial information" is not a basis not to produce responsive records. Parties routinely exchange commercially sensitive and confidential financial information during discovery; that is what protective orders and confidentiality designations are for. Should President Trump refuse to provide this information, he should be barred from seeking damages related to his "other media holdings." To the extent that President Trump's objection to Request 21 is based on its reference to the Donald J. Trump Revocable Trust, the objection likewise fails for reasons set forth in Section C. Again, while Defendants are hopeful that President Trump will reconsider his refusal to provide documents responsive to these Requests, Defendants move to compel in order to preserve all rights.

### C.  President Trump Must Produce Documents Concerning TMTG and the Donald J. Trump Revocable Trust

President Trump objects to a number of Requests concerning (i) the transfer, gift, or assignment of shares in TMTG to the Donald J. Trump Revocable Trust, *see* Appendix at p. 16-17 (Ex. A at Request No. 16); (ii) the holdings of the Donald J. Trump Revocable Trust, *see id.* at p. 19-20,  Request No. 22; and (iii) any other Trust vehicles that were allegedly damaged as a result of Defendants' conduct, *see id.* at p. 20, Request No. 23.  Each of these Requests is relevant to President Trump's alleged damages as they relate to the alleged decrease in the value of his assets and holdings purportedly caused by Defendants.

As to TMTG, President Trump affirmatively put his interest in TMTG at issue when he alleged in Paragraph 149 of the Amended Complaint: "Since leaving office in 2021, President Trump has pursued several business ventures, ranging from social media enterprises to cryptocurrency offerings.  Specifically, President Trump owns a significant percentage of TMTG, fluctuations of which significantly impact his on-paper net worth."  ECF No. 36 ¶ 149.

11

As to the Donald J. Trump Revocable Trust, it has been publicly reported that the Trust has received over $4 billion dollars worth of President Trump's stock in TMTG. *See* Matthew Goldstein, *Trump Puts $4 Billion in Shares of His Media Company in a Trust*, N.Y. TIMES (Dec. 20, 2024), available at https://www.nytimes.com/2024/12/20/business/trump-media-donald-trump-trust.html (last accessed Mar. 30, 2025). President Trump's ownership, or lack thereof, of assets that he claims were injured are relevant to his contention that he was harmed personally. If Plaintiffs refuse to produce information relating to the Donald J. Trump Revocable Trust or other trust vehicles that were allegedly harmed, then they must be barred from seeking damages for any assets currently controlled by those trusts. *See In re XTO Energy Inc.*, 471 S.W.3d 126, 131-132 (Tex. App. Dallas 2015, no pet.).

## II.    PLAINTIFFS' REPEATED INVOCATION OF THE EXECUTIVE AND CONGRESSIONAL PRIVILEGES LACKS MERIT

President Trump and Representative Jackson are pursuing this litigation in their individual capacities. *See* ECF No. 36 (captioning the matter as "PRESIDENT DONALD J. TRUMP, an individual, and REPRESENTATIVE RONNY JACKSON, an individual"). Despite making clear that he brought this suit in his personal and not official capacity—indeed, he filed this lawsuit while still a private citizen—President Trump invoked executive privilege in response to eighteen of Defendants' Requests. Representative Jackson similarly invoked executive privilege seventeen times—including, puzzlingly, in response to six Requests as to which President Trump did not invoke the privilege.[16] President Trump and Representative Jackson also invoked the congressional privilege in response to a number of Requests. Neither the executive privilege nor the congressional privilege applies here.

---

[16] *Compare* Appendix at Exhibit A at Requests 26, 27, 33, 35, and 37 with Exhibit B at Requests 25, 27, 28, 29, 39, and 46. *See* Appendix at p. 22-23, 26-27, 29, 66-70, and 78.

Executive privilege applies to "documents or other materials that reflect presidential decision-making and deliberations and that the President believes should remain confidential." *In re Sealed Case*, 121 F.3d 729, 744 (D.C. Cir. 1997). The privilege is held by the Executive Branch, "not for the benefit of the individuals, but for the benefit of the Republic." *Trump v. Thompson*, 20 F.4th 10, 26 (D.C. Cir. 2021). The privilege does not apply to communications that are unconnected to a person's role as President, including communications in a President's personal capacity and communications made before a person became President. *See People v. Trump*, 224 N.Y.S.3d 832, 849 (Sup. Ct. N.Y. Cnty. 2024) (finding that presidential immunity did not apply to President Trump's communications concerning the falsification of records to "cover up payments," which was "a decidedly unofficial act").

President Trump invoked executive privilege in response to several Requests that have no bearing on his official duties as President and, in many cases, that ask for documents created before both his election and inauguration. For example, President Trump objected on the basis of executive privilege to Request No. 12, which seeks "[a]ll Documents and Communications regarding Your October 21, 2024 letter to Defendants referenced in Paragraph 100 of the Amended Complaint and attached as Exhibit B to the Amended Complaint." *See* Appendix at p. 13-14. There is no plausible basis to argue that any communications regarding a letter that predated President Trump's inauguration by almost three months and that was sent by his personal attorney threatening this lawsuit could be subject to executive privilege. Similarly, President Trump has objected to Request No. 39, which seeks "all Documents and Communications between You and TMTG Chief Executive Officer Devin Nunes, TMTG Chief Financial Officer Phillip Juhan, TMTG Chief Operating Officer Andrew Northwall, or any other officer of TMTG relating to the Face The Nation Broadcast, the 60 Minutes Broadcast, this Lawsuit, or any decline in consumer

13

engagement, advertising revenues, and profits by TMTG and President Trump's other media holdings." *See* Appendix at p. 30-31.  That Request seeks communications with TMTG executives about President Trump's commercial businesses that he alleges were adversely affected by Defendants' conduct, all of which took place months before he assumed office.  It has no bearing on his official acts as President.[17]

Representative Jackson's claims of executive privilege are similarly without basis.  For instance, Representative Jackson objected partially on the basis of executive privilege to Request No. 25, which seeks "all Documents and Communications between You and anyone else demonstrating that they were 'confused, deceived, and misled' by the Face The Nation Broadcast as alleged in Paragraph 11 of the Amended Complaint."  *See*  Appendix at p. 66 (Ex. B at Request No. 25).  Documents responsive to this Request, seeking evidence of Plaintiff's alleged confusion at the heart of the claims, cannot plausibly be related to official acts of a President—particularly because President Trump did not invoke executive privilege in *his* response to an identical request. *See* Appendix at p. 26 (Ex. A at Request 33).  Moreover, the privilege simply does not apply to the communications of Representative Jackson, who is not a member of the Executive Branch. *See In re Sealed Case*, 121 F.3d at 752 ("Not every person who plays a role in the development of presidential advice, no matter how remote and removed from the President, can qualify for the privilege. . . [T]he privilege should not extend to staff outside the White House in executive branch agencies.  Instead, the privilege should apply only to communications authored or solicited and received by those members of an immediate White House adviser's staff who have broad and

---

[17] *See also,* Appendix at p. 9-10, (Ex. A, Response to Request No. 8), seeking documents concerning any "public statement" made by President Trump concerning the Face The Nation or 60 Minutes Broadcasts.  Public statements can hardly be subject to executive privilege.

significant responsibility for investigating and formulating the advice to be given the President on the particular matter to which the communications relate.").

Representative Jackson also invoked the congressional privilege in response to four requests, seemingly taking the position that the communications sought should be immune from disclosure based on his position as a member of Congress. That is not what the congressional privilege provides. The congressional privilege, or the "Speech or Debate Clause Privilege," means that "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place." U.S. Const. Art. I, § 6, cl. 1. The clause has been interpreted to protect "only purely legislative activities." *Williams v. Brooks*, 945 F.2d 1322, 1326 (5th Cir. 1991). In determining whether congressional privilege applies, "the touchstone of the inquiry under the Speech or Debate Clause is whether or not the activity in relation to which the protection is claimed is in fact 'legislative.'" *Favors v. Cuomo*, 2013 WL 11319831, at *5 (E.D.N.Y. Feb. 8, 2013) (citing *Brewster v. United States*, 408 U.S. 501 (1972)). Not every communication between a Congressman and the President is covered by the privilege:

> That Senators generally perform certain acts in their official capacity as Senators do not necessarily make all such acts legislative in nature. Members of Congress are constantly in touch with the Executive Branch of the Government and with administrative agencies— they may cajole, and exhort with respect to the administration of a federal statute—but such conduct, though generally done, is not protected legislative activity.

*Gravel v. United States*, 408 U.S. 606, 625 (1972). Representative Jackson invoked the privilege in response to four Requests and President Trump invoked the privilege in response to one Request.[18] These include Requests for "[a]ll Documents relating to the Amended Complaint and/or that You intend to rely on in connection with this Litigation" and "[a]ll Documents and

---

[18] While Representative Jackson ultimately agreed to produce the documents, he did so only with the repeated caveat that "Documents will only be produced to the extent responsive, proper, relevant, and non-privileged," begging the question of what is "proper" and what privilege applies.

Communications from, to, between, or among You and President Donald J. Trump and/or his agents, attorneys, representatives, or other persons or entities acting for, on behalf of, or in concert with President Donald J. Trump concerning or related to the Broadcasts, the Harris Interview, or the Defendants from January 1, 2024 to the present." Appendix at p. 55-56, 57-58 (Ex. B at Requests 1, 5). This private lawsuit that Representative Jackson joined does not touch on his legislative activities. Defendants reserve the right to challenge each invocation of the privilege that Representative Jackson asserts.

Defendants do not believe that there is yet a ripe dispute regarding the application of the executive or congressional privilege. During the parties' meet-and-confer, Plaintiffs' counsel agreed to provide a privilege log identifying any relevant documents that are withheld on the basis of any privilege, including executive privilege. He also agreed to perform further research regarding the scope of executive privilege. Because the parties are continuing to engage in productive conversations, Defendants do not believe the Court needs to rule on these issues at this time. Nevertheless, to preserve Defendants' rights, and pursuant to the Court's scheduling order, Defendants hereby move to compel.[19]

## III. PLAINTIFFS' REFUSAL TO DISCLOSE THEIR LOCATIONS ON THE DATES OF THE BROADCASTS IS UNJUSTIFIED

Both President Trump and Representative Jackson have objected to Defendants' Requests seeking information about their location on the day of the Broadcasts partially on the basis that the disclosure would "breach the preservation of national security." *See* Ex. A at Requests 63-64; *see*

---

[19] Plaintiffs may argue that Defendants' objection to their invocation of executive privilege is premature as to 15 out of 18 requests because, while President Trump invoked executive privilege, he also agreed to produce responsive documents. But, again, President Trump's agreement to produce documents "to the extent responsive, proper, relevant, and non-privileged," *e.g.*, Appendix at p. Ex. A at 1-2, Request No. 1, does not resolve the question of what is properly privileged or not.

Ex. B at Requests 41-42.  As noted in Defendants' briefing in support of their motion to dismiss for lack of personal jurisdiction and improper venue, the Amended Complaint is entirely devoid of factual allegations that President Trump or Representative Jackson was injured while in Texas. Where (if at all) the Plaintiffs' viewed the Broadcasts is highly relevant to personal jurisdiction. *See Pace v. Cirrus Design Corp.*, 93 F.4th 879, 902 (5th Cir. 2024) (emphasizing that "there must be a strong relationship among the *defendant*, *the forum, and the litigation*," which was lacking when defendant's "alleged conduct occurred in other states" and plaintiff's "injury occurred" outside of the forum).

President Trump and Representative Jackson's claim that revealing their whereabouts *five months ago*—when President Trump was not even in office—could somehow compromise national security rings hollow.  But even if there were any legitimate basis not to reveal their whereabouts in October 2024, Defendants have offered that Plaintiffs may simply aver whether or not they were in Texas during the dates of the Broadcast.  Plaintiffs have not yet agreed to that compromise.  Defendants, again, are optimistic the issue can be resolved without judicial intervention.  But, to preserve their rights, and pursuant to the Court's scheduling order, Defendants hereby move to compel.

## **<u>CONCLUSION</u>**

Despite their insistence that discovery move forward, Plaintiffs have shown very little desire to produce their own documents, relying on unfounded objections and delay tactics.  While Defendants believe that the Court should hold this motion in abeyance as negotiations between the parties are ongoing, Defendants move to compel production in order to preserve their rights under the Court's scheduling order.

17

Respectfully submitted,

/s/ *Thomas C. Riney*

**UNDERWOOD LAW FIRM, P.C.**

Thomas C. Riney
State Bar No. 16935100
C. Jason Fenton
State Bar No. 24087505
PO Box 9158 (79105-9158)
500 S. Taylor, Suite 1200
Amarillo, TX 79101
Telephone: (806) 376-5613
Facsimile: (806) 379-0316
tom.riney@uwlaw.com
jason.fenton@uwlaw.com

**JACKSON WALKER LLP**

Marc A. Fuller
State Bar No. 24032210
2323 Ross Ave., Ste. 600
Dallas, TX 75201
Telephone: (214) 953-6000
Facsimile: (214) 953-5822
mfuller@jw.com

**DAVIS WRIGHT TREMAINE LLP**

Elizabeth A. McNamara (admitted *pro hac vice*)
Jeremy A. Chase (admitted *pro hac vice*)
Alexandra Perloff-Giles (admitted *pro hac vice*)
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Telephone: (212) 489-8230
elizabethmcnamara@dwt.com
jeremychase@dwt.com
alexandraperloffgiles@dwt.com

*Attorneys for Paramount Global, CBS Broadcasting
Inc., and CBS Interactive Inc.*

18

## CERTIFICATE OF CONFRENCE

Pursuant to Local Rule 7.1(b) I certify that the parties have met and conferred on the issues raised in this position on March 24, 2025 and April 4, 2025.  The conferences were attended by Elizabeth McNamara, Jeremy Chase, Philip Golodetz, and Edward Paltzik.  In addition, on March 27, 2025, Defendants sent a letter detailing their positions on these objections to Plaintiffs, but have not yet received a response Defendants further contacted Plaintiffs' counsel on April 7, 2025, to confirm whether Plaintiffs oppose the motion to compel.  Plaintiffs' counsel concurs in the view that the issues may be resolved, but opposes the motion. As stated in the above-motion, Defendants believe that the Court should hold this motion in abeyance as negotiations between the parties are ongoing.

/s/ *Elizabeth A. McNamara*

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2025 a true and correct copy of the foregoing was served via CM/ECF on all counsel of record.

/s/ *Thomas C. Riney*

19