**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, an individual, and REPRESENTATIVE RONNY JACKSON, an individual,<br><br>               Plaintiffs,<br><br>    v.<br><br>PARAMOUNT GLOBAL d/b/a PARAMOUNT, a Delaware corporation, CBS BROADCASTING INC., a New York corporation, and CBS INTERACTIVE INC., a Delaware corporation,<br><br>               Defendants. | Case No.: 2:24-cv-00236-Z |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT FOR**
**LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE**

## Table of Contents

I.    INTRODUCTION ................................................................................................ 1

II.   RELEVANT ALLEGATIONS OF THE COMPLAINT AND PROCEDURAL
HISTORY .............................................................................................................. 2

    A.   The Parties ....................................................................................................... 2

    B.   The Interview and Defendants' Distortion Thereof .................................... 3

    C.   Defendants' Actions Directed Towards Texas Viewers ............................. 3

    D.   Defendants' Successive Rule 12 Motions .................................................... 5

III.  STANDARD OF REVIEW .................................................................................. 5

    A.   Rule 12(b)(2) .................................................................................................... 5

    B.   Rule 12(b)(3) .................................................................................................... 5

IV.   ARGUMENT ........................................................................................................ 6

    A.   The Instant Motion Must be Denied as Violative of Rule 12(g)(2)'s Proscription
Against Successive Rule 12 Motions in an Attempt to Skirt Local Rule 7.2(c) .............. 6

    B.   Defendants' Motion Must be Denied Because a *Prima Facie* Case of Personal
Jurisdiction Over Defendants is Sufficiently Pleaded in the Complaint ........................ 9

        *1. Sufficient Minimum Contacts Exist Between Defendants and the State of Texas* ......... 10

        *2. The Case at Bar Arises from Defendants' Contacts with Texas* ................................. 12

        *3. Exercising Personal Jurisdiction Over Defendants in Texas is Fair and Reasonable*. 13

        *4. In the Alternative, Further Jurisdictional Discovery is Required to Establish Personal
Jurisdiction* ................................................................................................................. 13

    C.   Defendants' Motion with Respect to Venue Must be Denied Because Venue is
Proper in the Northern District of Texas ........................................................................ 15

    D.   The Instant Action Should Remain in the Northern District of Texas ................. 17

V.    CONCLUSION ................................................................................................... 21

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A-7 Austin, LLC v. Bridgestone Hosepower, LLC*,
 2024 WL 3851596 (N.D. Tex. Aug. 15, 2024) .......................................................... 12, 14, 15

*Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty., Colo.*,
 771 F.3d 697 (10th Cir. 2014) ............................................................................................... 7

*Alexander v. City Police of Lafayette*,
 2021 WL 4396016 (W.D. La. Sept. 24, 2021) ...................................................................... 8

*Braspetro Oil Servs. Co. v. Modec (USA)*, Inc.,
 240 F. App'x 612 (5th Cir. 2007) ......................................................................................... 5

*Bulkley & Assocs., L.L.C. v. Dep't of Indus. Rels., Div. of Occupational Safety & Health of the
 State of California*,
 1 F.4th 346 (5th Cir. 2021) .................................................................................................. 10

*Burnett & Sons, Inc. v. Hall Cattle Feeders, LLC*,
 2024 WL 3823537 (N.D. Tex. Apr. 30, 2024) ..................................................................... 7

*Cent. Freight Lines Inc. v. APA Transp. Corp.*,
 322 F.3d 376 (5th Cir. 2003) .............................................................................................. 12

*Children's Health Def. v. WP Co., LLC*,
 2023 WL 3940446 (N.D. Tex. May 12, 2023) ........................................................... 19, 20, 21

*Compass Tech. Servs., Inc. v. GM Networks, Ltd.*,
 2014 WL 12585667 (N.D. Tex. Mar. 13, 2014) .................................................................. 15

*Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
 571 U.S. 49 (2013) ......................................................................................................... 14, 17

*D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*,
 754 F.2d 542 (5th Cir. 1985) ............................................................................................... 5

*Distributed v. Bruck*,
 30 F.4th 414 (5th Cir. 2022) ............................................................................................... 18

*Doe v. Columbia-Brazoria Indep. Sch. Dist. by & through Bd. of Trs.*,
 855 F.3d 681 (5th Cir. 2017) ............................................................................................ 7, 8

*Ethridge v. Samsung SDI Co., Ltd.*,
 2025 WL 1389341 (5th Cir. May 14, 2025) ........................................................................ 13

*First Metro. Church of Hous. v. Genesis Grp.*,
 616 F. App'x 148 (5th Cir. 2015) .................................................................... 14

*Freedom Coal. of Drs. for Choice v. Centers for Disease Control & Prevention*,
 2023 WL 9105435 (N.D. Tex. Nov. 3, 2023) .................................................. 17

*In re Planned Parenthood Fed'n of Am., Inc.*,
 52 F.4th 625 (5th Cir. 2022) .......................................................................... 20

*In re Volkswagen AG*,
 371 F.3d 201 (5th Cir. 2004) .................................................................... 18, 19

*In re Volkswagen of Am., Inc.*,
 545 F.3d 304 (5th Cir. 2008) ............................................................ 17, 18, 19

*Int'l Shoe Co. v. Washington*,
 326 U.S. 310 (1945) ...................................................................................... 10

*Johnson v. TheHuffingtonPost.com, Inc.*,
 21 F.4th 314 (5th Cir. 2021) .......................................................................... 10

*Kinsey v. New York Times Co.*,
 991 F.3d 171 (2d Cir. 2021) ........................................................................... 19

*Kopin v. Wells Fargo Bank, N.A.*,
 2011 WL 13130489 (N.D. Tex. Nov. 14. 2011) .............................................. 15

*Leyse v. Bank of Am. Nat. Ass'n*,
 804 F.3d 316 (3d Cir. 2015) ............................................................................. 6

*Macklin v. City of New Orleans*,
 293 F.3d 237 (5th Cir. 2002) ........................................................................... 8

*Mist-On Sys., Inc. v. Nouveau Body & Tan, L.L.C.*,
 2004 WL 7335080 (N.D. Tex. June 15, 2004) ............................................... 16

*Nationwide Bi-Wkly. Admin., Inc. v. Belo Corp.*,
 512 F.3d 137 (5th Cir. 2007) ........................................................................... 7

*Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*,
 2024 WL 1218573 (N.D. Tex. Mar. 21, 2024) ................................................ 11

*Pearson v. Shriners Hosps. for Child., Inc.*,
 133 F.4th 433 (5th Cir. 2025) ............................................................... 5, 9, 10

*Primoris T&D Servs., LLC v. MasTec, Inc.*,
   2023 WL 3400525 (N.D. Tex. May 11, 2023) .......................................................... 6

*Qualls v. Prewett Enters., Inc.*,
   594 F. Supp. 3d 813 (S.D. Tex. 2022) .................................................................. 20

*Riddley v. CooperSurgical, Inc.*,
   2024 WL 4557340 (N.D. Tex. Oct. 23, 2024) ......................................................... 16

*Russo v. Barnard*,
   2021 WL 5567380 (S.D. Tex. Nov. 29, 2021) ......................................................... 15

*Sangha v. Navig8 ShipManagement Pvt. Ltd.*,
   882 F.3d 96 (5th Cir. 2018) ................................................................................ 9

*Seariver Mar. Fin. Holdings, Inc. v. Pena*,
   952 F. Supp. 455 (S.D. Tex. 1996) ....................................................................... 15

*SGS-Thomson Micro-Elecs., Inc. v. Ferris*,
   55 F.3d 632 (5th Cir. 1995) ............................................................................... 11

*Suter v. United States*,
   2020 WL 874812 (N.D. Tex. Jan. 28, 2020) ............................................................ 5

*Thompson v. Watson*,
   1998 WL 249214 (N.D. Tex. May 8, 1998) ............................................................. 15

*Umphress v. Hall*,
   479 F. Supp. 3d 344 (N.D. Tex. 2020) .................................................................. 16

*United States v. Planned Parenthood Fed'n of Am., Inc.*,
   2022 WL 19006361 (N.D. Tex. Sept. 20, 2022) ............................................. 17, 18, 21

*Walk Haydel & Assocs., Inc v. Coastal Power Prod. Co.*,
   517 F.3d 235 (5th Cir. 2008) ...................................................................... 12, 13, 14

**Statutes**

28 U.S.C. § 1391 ............................................................................................ 14, 15, 16

**Rules**

Fed. R. Civ. P. 12(b) .......................................................................................... *passim*

Fed. R. Civ. P. 12(c) ............................................................................................. 6, 7

Fed. R. Civ. P. 12(e) ............................................................................................... 8

Fed. R. Civ. P. 12(g)(2)................................................................................................ 6, 7, 8

Fed. R. Civ. P. 12(h) ........................................................................................................ 6, 7

Plaintiffs, President Donald J. Trump ("President Trump") and Representative Ronny Jackson ("Representative Jackson"; together, "Plaintiffs"), by and through their undersigned counsel, respectfully submit the following Memorandum of Law in Opposition to Defendants Paramount Global's ("Paramount"), CBS Broadcasting Inc.'s ("CBS"), and CBS Interactive Inc.'s ("CBS Interactive"; collectively, "Defendants") Motion to Dismiss (the "Motion") [ECF 50] Plaintiffs' Amended Complaint (the "Complaint") For Lack of Personal Jurisdiction and Improper Venue. For the reasons discussed in detail *infra*, Defendants' Motion should be denied.

## I.    <u>INTRODUCTION</u>

In their Motion, Defendants accuse Plaintiffs of engaging in "naked forum-shopping" by initiating the instant action in this district. ECF No. 50 at 9. To support their shallow argument against Plaintiffs' legitimate choice of forum for this action, Defendants unconvincingly attempt to argue, in sum and substance, that Defendants "did not aim" the Broadcasts "at Texas residents," ECF No. 50 at 8, and further, that "none of the events relevant to the claims took place in Texas, much less the necessary substantial part of the events . . . giving rise to the claims." *Id.* For the reasons discussed *infra*, Defendants' conclusions regarding personal jurisdiction and venue in this action do not comport with well-established law at all levels of jurisprudence.

Ultimately, Defendants' Motion must fail because (1) Plaintiffs have established a *prima facie* case of personal jurisdiction over Defendants where Defendants have sufficient minimum contacts with Texas and Plaintiffs' causes of action asserted arise out those contacts; (2) Plaintiffs' pleadings are sufficient to establish that venue is proper in the Northen District of Texas where it is the judicial district in which a substantial part of the events or omissions giving rise to Plaintiffs' claim occurred; and (3) because transfer of venue to the Southern District of New York, which defendants seek in the alternative to dismissal, does not represent a more convenient forum for

1

litigating the instant action. As such, Defendants' motion should be denied in its entirety. This is particularly the case where the instant motion, coupled with the other motion filed by Defendants on the same day, is violative of the Federal Rule of Civil Procedure and this Court's local rules, warranting denial of the motions until Defendants come into compliance with both sets of rules.

## II.  RELEVANT ALLEGATIONS OF THE COMPLAINT AND PROCEDURAL HISTORY

### A.  The Parties

Defendant Paramount is a media company and owns CBS Broadcasting and CBS Interactive. It has substantial control over CBS's commercial decisions and broadcast content. ECF No. 36 ¶ 25. Defendants' media portfolio includes *Face the Nation* and *60 Minutes*, the long-running and well-known programs at issue here, as well as countless other CBS programs, *Paramount+,* and a myriad of content on *YouTube. Id.* ¶ 32. *Paramount+* is a subscription video on-demand over-the-top streaming service owned by Paramount. Among the *Paramount+* offerings are live streams of local CBS broadcast stations and CBS News content, including *Face the Nation* and *60 Minutes. Id.* ¶ 34.

Aside from his role as a two-term President of the United States of America, President Trump is a prolific content creator who directly communicates with his tens of millions of followers on social media, a media brand that competes with Defendants. ECF No. 36 ¶ 23. At the relevant time of the acts discussed herein, President Trump was the majority owner of Trump Media & Technology Group Corp. ("TMTG"), a media company which directly competes with Defendants. *Id.* ¶ 16. Representative Jackson is a citizen of the United States and the State of Texas, represents Texas's 13th Congressional District in the House of Representatives, and was a

consumer of the broadcast and digital news media content from Defendants at issue in this action. *Id.* ¶ 24.

### B.     The Interview and Defendants' Distortion Thereof

In the lead-up to the 2024 Presidential Election, an interview with Harris (the "Interview") was conducted by CBS's Bill Whitaker ("Whitaker") and recorded in two sessions to be aired on *60 Minutes*. ECF No. 36 ¶ 5. On October 6, 2024, Defendants broadcast a brief promotional excerpt of the Interview (the "Preview") for the commercial and pecuniary purpose of advertising and previewing a special episode of *60 Minutes* to air the next night (the "Election Special"; together with the Preview, the "Broadcasts"). This occurred during CBS's *Face the Nation,* when host Margaret Brennan advertised the Election Special by introducing the Preview, describing it as being from a "special election edition of *60 Minutes*." *Id.* ¶ 6. Ultimately, as detailed in Plaintiffs' Complaint, consumers who purchased or otherwise acquired Defendants' broadcast or digital content services to watch the Election Special and other Paramount or CBS content— including Plaintiffs—were confused, deceived, and misled by the Preview and Defendants' other advertising of the Election Special. *Id.* ¶ 11.

### C.     Defendants' Actions Directed Towards Texas Viewers

*Paramount+* is a subscription video on-demand over-the-top streaming service owned by Paramount. Available among the *Paramount+* offerings are live streams of local CBS broadcast stations and CBS News content including *Face the Nation* and *60 Minutes*. ECF No. 36 ¶ 34. Notably, *Paramount+* has a significant number of subscribers in Texas who receive this and other media content through the streaming service. *Id.* In furtherance of building and maintaining their Texas presence, Defendants engage in extensive advertising in Texas generally and in this District

specifically, and Defendants' CBS programs, including *Face the Nation* and *60 Minutes*, are broadcast daily in Texas and to Texas residents, including Representative Jackson. *Id.* ¶ 35.

Beyond *Paramount+*, *YouTube*, and other digital media platforms, Defendants also reach much of their Texas audience, including Representative Jackson, through numerous local CBS affiliates in Texas that employ Texas citizens at both the corporate and local levels. One such affiliate in this District is television station KTVT in Dallas/Fort Worth, owned by Paramount through its wholly owned subsidiary, CBS Stations Group of Texas LLC. KTVT has a license with the FCC. *Id.* ¶¶ 36–37. Defendants' efforts to target Texas viewership with their programming is evident, as Defendants even brand KTVT as "CBS News Texas" to facilitate this engagement with their Texas audience, and to further build CBS brand recognition in Texas. *Id.* ¶ 38. In the Texas Panhandle, Defendants engage with another affiliate to ensure that their broadcasts are disseminated in Amarillo and the surrounding area. Station KFDA, which also has an FCC license, has been a long-time CBS affiliate and at all relevant times was the CBS affiliate in Amarillo. *Id.* ¶ 39.

Defendants purposefully directed the broadcasts and online postings of the Preview and Interview into Texas for viewing by Texans. Defendants maintain a network of directly and indirectly owned broadcast stations, and/or contract with broadcast affiliates, as well as websites, to ensure that every citizen of Texas had access to the Interview, including Representative Jackson. *Id.* ¶ 39. The Preview and the Interview were aired in Texas, were posted online in Texas, remain accessible to the public in Texas, and have been viewed by individuals in Texas, including Representative Jackson. The Interview was aired in Texas through KTVT, KTXA, KFDA, and other local affiliates that are owned, operated, or licensed by Defendants. *Id.* ¶¶ 48–49. In sum, as discussed in further detail *infra*, by broadcasting the Preview and Election Special to Texas

4

viewers, Defendants misled Plaintiffs and millions of other consumers in Texas and this District. *Id.* ¶ 192.

### D.    Defendants' Successive Rule 12 Motions

Plaintiffs filed their Amended Complaint on February 7, 2025. ECF No. 37. On March 6, 2025, Defendants filed a pair of motions, both seeking relief pursuant to Rule 12(b). The first-filed motion, the brief for which is 24 pages long, seeks to dismiss this action for lack of jurisdiction and improper venue. ECF No. 50. The second-filed motion, which is 25 pages long, seeks dismissal for lack of subject matter jurisdiction and for failure to state a claim. ECF No. 52. Defendants did not file a request for permission to file a motion in excess of 25 pages, the page limit imposed by Local Civil Rule 7.2(c).

## III.    <u>STANDARD OF REVIEW</u>

### A.    Rule 12(b)(2)

Where personal jurisdiction is challenged on a motion to dismiss under FED. R. CIV. P. 12(b)(2), "the plaintiff bears the burden of establishing the district court's jurisdiction over the defendant." *Pearson v. Shriners Hosps. for Child., Inc.*, 133 F.4th 433, 441 (5th Cir. 2025) (internal quotation marks omitted). Notably, when a district court considers whether plaintiff has met this burden, in the absence of an evidentiary hearing, the "'uncontroverted allegations in the plaintiff's complaint must be taken as true and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor.'" *Id.* (quoting *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985)).

### B.    Rule 12(b)(3)

When ruling on a Rule 12(b)(3) motion, a court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Suter v. United States*, 2020 WL

874812, at *2 (N.D. Tex. Jan. 28, 2020), report and recommendation adopted, 2020 WL 870225 (N.D. Tex. Feb. 21, 2020) (citing *Braspetro Oil Servs. Co. v. Modec (USA)*, Inc., 240 F. App'x 612, 615 (5th Cir. 2007)). Contrary to Defendants' naked assertion that "the plaintiff bears the burden of establishing that the chosen venue is proper," ECF 50 at 7, it is well known that the "Fifth Circuit has not addressed who bears the burden when a defendant raises improper venue—creating a split among district courts." *Primoris T&D Servs., LLC v. MasTec, Inc.*, 2023 WL 3400525, at *1 (N.D. Tex. May 11, 2023). The district court in *Primoris* specifically recognized that historically, "judges in this district usually put the burden exclusively on a *defendant*." *Id.* (emphasis added). Under the rule espoused in *Primoris*, it is Defendants who are tasked with demonstrating that the Northern District of Texas is *not* the proper venue for the instant action. Nevertheless, to the extent that Plaintiffs must carry this burden—which, as discussed *supra*, they do not—they succeed in doing so.

## IV.   ARGUMENT

### A.   The Instant Motion Must be Denied as Violative of Rule 12(g)(2)'s Proscription Against Successive Rule 12 Motions in an Attempt to Skirt Local Rule 7.2(c)

Although the merits of Defendants' motion are addressed *infra*, this Court should decline to consider the merits of this motion, as well as Defendants' other pending motion to dismiss, because the motions violate Rule 12(g)(2) and this Court's Local Civil Rule 7.2(c).

Rule 12(g)(2) states that "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Rule 12(h)(2), in turn, recognizes that although certain defenses are not waived by the failure to make them in a party's first Rule 12 motion, they cannot be asserted in a subsequent Rule 12(b) motion. Instead,

they must be raised "(A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial." Where successive Rule 12(b) motions are made, such motions should not be considered. *See, e.g.*, *Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 320–21 (3d Cir. 2015) (finding district court's consideration of motion error where "second motion to dismiss was plainly neither a Rule 7(a) pleading nor a motion raised at trial. Nor was it a Rule 12(c) motion for judgment on the pleadings, which may be filed only after the pleadings are closed") (internal quotation marks and brackets omitted).

The Fifth Circuit's cases regarding Rule 12(g)(2) have been factually distinct. In *Nationwide Bi-Wkly. Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 141 (5th Cir. 2007), the second Rule 12(b) motion was filed after a venue transfer to Texas made the relevant argument available to the defendant, taking the motion out of the purview of Rule 12(g)(2) which only applies where the defense "was available to the party but omitted from its earlier motion." In *Doe v. Columbia-Brazoria Indep. Sch. Dist. by & through Bd. of Trs.*, the district court did not consider the first Rule 12(b) motion on the merits but instead "summarily denied the motion 'without prejudice to refiling.' At a later status conference, the district court offered the District an opportunity to re-urge its motion within a specified time." 855 F.3d 681, 685 (5th Cir. 2017). In these circumstances, the Fifth Circuit did not find Rule 12(g)(2) precluded a second Rule 12(b) motion where the merits of the second motion were either unavailable or not considered on the first motion. Indeed, assuming that the Fifth Circuit's rule in permitting successive 12(b)(6) motions is unqualified is untenable as a matter of statutory construction, as it would render Rule 12(h)(2) without meaning. *Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty., Colo.*, 771 F.3d 697, 703 (10th Cir. 2014) ("[T]he court's reasoning fails to address the language from Rule 12(h)(2) that arguably limits a party to presenting those arguments in a pleading, a motion for judgment on the pleadings, or at

7

trial. For that reason, we find the Seventh Circuit's approach problematic."). Indeed, **this very Court** has expressed that same skepticism. *Burnett & Sons, Inc. v. Hall Cattle Feeders, LLC*, No. 2:23-CV-148-Z, 2024 WL 3823537, at *1 (N.D. Tex. Apr. 30, 2024) ("Because Defendants previously moved, pursuant to Rule 12(e), for a more definitive statement, the permissibility of their instant Motion is highly suspect — at least insofar as it relies on Rule 12 and not Rule 9.") (internal citation omitted).

But even assuming, *arguendo*, that the rule from *Columbia-Brazoria* is intended to apply generally, the facts of this case are distinguishable because Defendants' filing of the instant 24-page motion, followed by a 25-page motion, was intended to skirt this Court's local rules. Pursuant to Local Civil Rule 7.2(c), "[u]nless another local civil rule provides otherwise, a brief must not exceed 25 pages . . . . Permission to file a brief in excess of these page limitations will be granted by the presiding judge only for extraordinary and compelling reasons." Defendants did not seek such permission and instead split their Rule 12(b) motion into two. In *Alexander v. City Police of Lafayette*, 2021 WL 4396016 (W.D. La. Sept. 24, 2021), a sister court within this Circuit presciently recognized that certain circumstances would warrant courts imposing a remedy even assuming, *arguendo*, the Fifth Circuit's permissive attitude towards Rule 12(g)(2):

> In *Doe v. Columbia-Brazoria Ind. Sch. Dist.*, the Fifth Circuit reasoned that, even if Rule 12(g)(2) required the consolidation of the defendant's failure-to-state-a-claim defenses into a single Rule 12(b)(6) motion, its failure to do so was harmless. This Court notes, however, that **splitting failure-to-state-a-claim arguments into multiple Rule 12(b)(6) motions may, under some circumstances, skirt a court's local rules as far as page limits on briefs**. If so, and the parties have not requested and received leave to file a brief that exceeds these page limits, **the Court may impose an appropriate remedy, including requiring the parties to submit a single, omnibus brief that complies with the local rules**.

*Alexander*, 2021 WL 4396016 at *3 n.30 (emphasis added). The situation contemplated by *Alexander* is squarely on all fours with the gamesmanship undertaken by Defendants. They filed a

successive Rule 12(b) motion to avoid this Court's local rules regarding page limits. It is fully within the scope of this Court's discretion to fashion an appropriate remedy in response to a violation of the local rules. *Macklin v. City of New Orleans*, 293 F.3d 237, 240 (5th Cir. 2002) ("We review the district court's administrative handling of a case, including its enforcement of the local rules and its own scheduling orders for abuse of discretion.").

Neither the Federal Rules of Civil Procedure nor this Court's local rules are mere suggestions. If these rules are to have any meaning then they must be enforced, and there must be consequences for *intentional* violations of those rules. It can hardly be clearer that Defendants' litigation strategy—filing 24- and 25-page motions on the same day—was an intentional end-run around Local Civil Rule 7.2(c). Consequently, this Court should decline to consider the merits of Defendants' pending motions and should instead direct them to file a single omnibus motion that is not violative of this Court's local rules regarding page limits.

### B. Defendants' Motion Must be Denied Because a *Prima Facie* Case of Personal Jurisdiction Over Defendants is Sufficiently Pleaded in the Complaint

Defendants' Motion must be denied because Plaintiffs have sufficiently pleaded that Defendants are subject to personal jurisdiction in Texas.

It is well-settled that in cases involving out-of-state defendants, "minimum contacts" with the forum state is sufficient for purposes of establishing specific personal jurisdiction when "the cause of action asserted arises out of or is related to those contacts." *Pearson*, 133 F.4th at 442 (quotations omitted). As discussed *supra*, to the extent that courts in this district have determined that the plaintiff "bears the burden of establishing the district court's jurisdiction over the defendant," in the absence of an evidentiary hearing, "the plaintiff must establish a *prima facie* case of personal jurisdiction." *Pearson*, 133 F.4th at 441. Notably, a "plaintiff establishes the

requisite a *prima facie* case by showing that 'the [forum] state's long-arm statute extends to the defendant and exercise of such jurisdiction is consistent with due process.'" *Pearson*, 133 F.4th at 442 (quoting *Sangha v. Navig8 ShipManagement Pvt. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018)). In particular, "'[d]ue process requires that the defendant have minimum contacts with the forum state . . . and that exercising jurisdiction is consistent with traditional notions of fair play and substantial justice.'" *Pearson*, 133 F.4th at 442*; see also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (same). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Pearson*, 133 F.4th at 442. *First*, "to evaluate minimum contacts, we ask if the defendant purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there." *Bulkley & Assocs., L.L.C. v. Dep't of Indus. Rels., Div. of Occupational Safety & Health of the State of California*, 1 F.4th 346, 351 (5th Cir. 2021) (internal quotations omitted). "*Second*, we ask if the case arises out of or results from the defendant's forum-related contacts." *Id.* (emphasis added). "*Third*, we ask if the exercise of personal jurisdiction is fair and reasonable. If we answer all three questions in the affirmative, personal jurisdiction over the out-of-state defendant satisfies due process." *Id.* (emphasis added). As detailed below, all three questions are answered in the affirmative in this case.

       1.     *Sufficient Minimum Contacts Exist Between Defendants and the State of Texas*

As clearly alleged in Complaint, sufficient minimum contacts exist between Defendants and the state of Texas in the case at bar due to Defendants' targeting of Texas viewers. Defendants rely upon the Fifth Circuit's decision in *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314 (5th Cir. 2021) to support their blanket wrong assertion that "Defendants also are not subject to specific jurisdiction in Texas." ECF No. 50 at 8. While the libel allegations at issue in *Johnson* relate to a

story published by a Defendant which "has no ties to Texas," "recounts a meeting that took place outside Texas," and "used no Texan sources," *Johnson*, 21 F.4th at 319 (5th Cir. 2021), Plaintiffs' Complaint details Defendants' intentional, wrongful acts which were directed at the state of Texas. Specifically, the Complaint alleges that "Defendants purposefully directed the broadcasts and online postings of the Preview and Interview into Texas for viewing by Texans," and further, that "Defendants maintain a network of directly and indirectly owned broadcast stations, and/or contract with broadcast affiliates, as well as websites, to ensure that every citizen of Texas had access to the Interview, including Representative Jackson." ECF No. 36 ¶ 46.

Defendants' relationships with their affiliates within Texas are significant, purposeful business contacts with the state. CBS has recently entered into multi-year affiliation agreements to continue distributing their content with affiliates owned by Gray Television, including KFDA, which provides for CBS's broadcasting in Amarillo. *See* RBR-TVBR, *Affiliations Secured in 47 Gray DMAs*, Radio + Television Business Report (November 9, 2021), https://rbr.com/affiliations-secured-in-47-gray-dmas/ (last visited May 28, 2025). These agreements require the affiliates, like KFDA, to compensate Defendants for airing their content— including the Broadcasts at issue in this action.

As this very Court has previously noted, when considering whether minimum contacts between a defendant and the forum state are present, "the Fifth Circuit has already found sufficient — for specific jurisdiction — the mailing of a single letter." *Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*, 2024 WL 1218573, at *4 (N.D. Tex. Mar. 21, 2024); *see also SGS-Thomson Micro-Elecs., Inc. v. Ferris*, 55 F.3d 632 (5th Cir. 1995) (holding that the transmission of a letter to the state of Texas satisfied both the minimum contacts test and substantial justice tests)). This benchmark is even more applicable to the instant case, where

11

Defendants transmitted the Interview "for viewing by Texans," including Representative Jackson, (ECF No. 36 ¶ 46)—which represents millions of viewers and subscribers, rather than a single recipient of one letter.

        2.      *The Case at Bar Arises from Defendants' Contacts with Texas*

Specific jurisdiction exists where a "'nonresident defendant has purposefully directed its activities at the forum state and *the litigation results from alleged injuries that arise out of or relate to those activities.*'"*A-7 Austin, LLC v. Bridgestone Hosepower, LLC*, 2024 WL 3851596, at *3 (N.D. Tex. Aug. 15, 2024) (quoting *Walk Haydel & Assocs., Inc v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008)) (emphasis added). Additionally, as this very Court has unequivocally held: "'it is clear that specific personal jurisdiction may be based on intentionally tortious conduct that is purposefully directed toward the forum state.'" *A-7 Austin*, 2024 WL 3851596, at *4 (quoting *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 383 (5th Cir. 2003)). As in *A-7 Austin*, where the plaintiff alleged that its "business directly suffered from [defendant's] Texas-directed activity, here too, taking the allegations in Plaintiffs' Complaint as true, Defendants are subject to specific personal jurisdiction. Notably, Plaintiffs' Complaint specifically alleges that "citizens of Texas[] were deceived and misled by the astonishing contrast between the two versions of Harris's Reply to Whitaker's assertion about Prime Minister Netanyahu," ECF No. 36 ¶ 78, when the Defendants' misleading edits to the Interview were brought to light. It further alleges that Defendants' Texas viewers, which include "Plaintiff Representative Jackson and third parties, were foreseeably and actually misled by Defendants' advertising of the Interview and Election Special" and that as a result of "Defendants' false advertising and tampering with the entirety of the Interview, viewers withheld attention from President Trump and Truth Social by directing their attention to Defendants' media platforms,"

which "increased Defendants' engagement, viewership, and advertising revenue, and decreased the value of President Trump's ownership in TMTG and other media holdings." ECF No. 36 ¶¶ 155-156.

### 3.    *Exercising Personal Jurisdiction Over Defendants in Texas is Fair and Reasonable*

Finally, "[t]he third condition is equally straightforward. Texas has an interest in maintaining a forum for its citizens who are injured within the State." *Ethridge v. Samsung SDI Co., Ltd.*, No. 23-40094, 2025 WL 1389341, at *3 (5th Cir. May 14, 2025). As detailed in the sections above and further *infra*, it is uncontroverted that this case involves allegations of injuries incurred by a Texas citizen with the state of Texas. *See e.g.*, ECF No. 36 ¶¶ 46, 52, 78.

Similar to plaintiff in *Ethridge*, Representative Jackson certainly "has an interest in litigating in his home State." *Ethridge*, 2025 WL 1389341, at *3. And "like [defendant] Samsung," Defendants are "large companies [which] have the ability to litigate in the forum." *Id.* Thus, in view of the harm caused to Plaintiffs—including a resident of this district— and their business interests in Texas due to Defendants' intentional broadcasting of the manipulated Interview and subsequent effort to conceal the Interview transcript—this Court should find that, consistent with its previous decisions in analogous cases, it is fair and reasonable to exercise personal jurisdiction over Defendants in this case, and accordingly, should deny their Motion in its entirety.

### 4.    *In the Alternative, Further Jurisdictional Discovery is Required to Establish Personal Jurisdiction*

Although the foregoing establishes the *prima facie* requirements for personal jurisdiction over Defendants in this action, to the extent this Court finds otherwise—which it should not— Plaintiffs respectfully submit that further discovery should be conducted to resolve any outstanding jurisdictional issues in this case. The Fifth Circuit had long recognized that "[w]hen the defendant

disputes the factual bases for jurisdiction . . . the court may receive interrogatories, depositions, or any combination of the recognized methods of discovery to help it resolve the jurisdictional issue." *Walk.*, 517 F.3d 235, 241. In the Motion currently before the Court, Defendants allege that in this case, "'Texas was not the hub of the activities relevant to either claim.'" ECF No. 50 at 18 (quoting *First Metro. Church of Hous. v. Genesis Grp*., 616 F. App'x 148, 149 (5th Cir. 2015)). However, this factual assertion, among others which Defendants make to advance their argument that they are not subject to personal jurisdiction in Texas, is in direct conflict with the allegations of Plaintiffs' Complaint. Notably, the Complaint alleges, *inter alia*, that "[b]y at least some metrics, Dallas/Fort Worth is the fourth largest media market in the United States. *See, e.g.*, https://www.nexstar.tv/stations/kdaf-d-2/ (last visited Feb. 7, 2025). Similarly, Amarillo is the largest media market in the Texas panhandle. *See, e.g.,* https://www.nexstar.tv/stations/kamr-d-2/ (last visited Feb. 7, 2025)." Yet, Defendants contend that this significant presence in Texas, and in particular in this district, is "of no moment." ECF No. 50 at 18.

Therefore, in view of the above, Plaintiffs respectfully submits that to the extent that the Court is not prepared to find that Defendants are amenable to suit in Texas based on the *prima facie* case detailed above, this Court should enter an order directing the parties to engage in jurisdictional discovery and to appear at a "pretrial evidentiary hearing confined to the jurisdictional issue, where both sides have the opportunity to present their cases fully," and where "the district court can decide whether the plaintiff has established jurisdiction by a preponderance of the evidence." *Walk*, 517 F.3d 235, 241–42 (5th Cir. 2008).

### C.    Defendants' Motion with Respect to Venue Must be Denied Because Venue is Proper in the Northern District of Texas

"A motion to dismiss for improper venue generally requires the Court to determine whether the venue is supported by 28 U.S.C. Section 1391." *A-7 Austin*, 2024 WL 3851596, at *1 (citing *Atl. Marin. Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013)). Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." As detailed below, in this action, venue is proper in the Northern District of Texas under Section 1391(b)(2) and therefore, Defendants' Motion must be denied.

Preliminarily, it must be noted that Defendants' argument that "this action could easily have been brought in the Southern District of New York, where all three Defendants have their principal place of business," ECF No. 50 at 23, is irrelevant to the venue analysis. Courts in this district—**including this very Court**—have routinely held that "venue may be proper in more than one district." *A-7 Austin*, 2024 WL 3851596, at *5; *see also Compass Tech. Servs., Inc. v. GM Networks, Ltd.*, 2014 WL 12585667, at *2 (N.D. Tex. Mar. 13, 2014) (same); *Kopin v. Wells Fargo Bank, N.A.*, 2011 WL 13130489, at *3 (N.D. Tex. Nov. 14, 2011) (same); *Thompson v. Watson*, 1998 WL 249214, at *1 (N.D. Tex. May 8, 1998) ("Venue may be appropriate in more than one district."). When considering a motion to dismiss for improper venue, the "Court is only required to determine the proper venue in the district where the plaintiff filed the lawsuit." *A-7 Austin*, 2024 WL 3851596, at *5. In *A-7 Austin*, this Court quoted *Seariver Mar. Fin. Holdings, Inc. v. Pena* as holding that "[a] court ***is not obliged to determine the best venue*** for a cause of action pending before it, but rather must determine only whether or not its venue is proper." 952 F. Supp. 455, 459 (S.D. Tex. 1996) (emphasis added). Thus, whether this action could have been brought in the

15

Southern District of New York is irrelevant to the Court's analysis, as the Northern District of Texas is a proper venue for this action.

Defendants are incorrect in concluding that "venue under Section 1391(b)(2) also fails." ECF No. 50 at 23. Defendants rely on a number of decisions from courts in other districts to support their argument that venue under Section 1391(b)(2) "fails" because the statute "requires courts to focus on defendant's conduct alone" rather than "focusing on the activities of the plaintiff." ECF No. 50 at 23 (quoting *Russo v. Barnard*, 2021 WL 5567380, at *2 (S.D. Tex. Nov. 29, 2021)). However, recent decisions in this district have reached the *opposite* conclusion. *See e.g.*, *Riddley v. CooperSurgical, Inc.*, 2024 WL 4557340, at *2 (N.D. Tex. Oct. 23, 2024) ("[I]f either a substantial part of (1) the relevant acts or omissions of the defendants, or (2) *the events resulting from those acts or omissions* occurred in this judicial district, a motion to dismiss or to transfer for improper venue should generally be denied.") (emphasis added); *see also Umphress v. Hall*, 479 F. Supp. 3d 344, 352 (N.D. Tex. 2020) ("The Court agrees with Plaintiff's reasoning and cases supporting an understanding that the post-1990 amendments to Section 1391(b) *allow the Court to consider more than just Defendants' conduct with regard to the events and omissions at issue* in this case. That is, *the Court may also consider the location of the effects of the alleged conduct, which can include a consideration of a plaintiff's activities*.") (emphasis added); *Mist-On Sys., Inc. v. Nouveau Body & Tan, L.L.C.*, 2004 WL 7335080, at *6 (N.D. Tex. June 15, 2004) (motion denied because the "injurious effects of [conduct alleged] occurred in Texas.").

Nevertheless, setting aside Defendants' incorrect statement of the applicable law, an analysis of Defendants' conduct as alleged in the Complaint ultimately leads to the same conclusion: that venue is proper in the Northern District of Texas. Plaintiffs' Complaint alleges that "a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this

16

District by virtue of the Interview **being transmitted by Defendants into this District** through *Paramount+* and on *YouTube*, and through KTVT, KTXA, KFDA, and other local Defendant CBS affiliates, including to Representative Jackson."[1] ECF No. 36 ¶ 52 (emphasis added). Moreover, the Complaint further alleges that "Defendants deliberately broadcast the programs at issue in these media markets and throughout the Northern District of Texas, which caused harm to President Trump's media brands throughout the District." *Id.* Thus, because Plaintiffs have clearly alleged in detail that a "substantial portion of the events giving rise to this action occurred" within this district–even when considering Defendants' conduct alone—venue is proper and Defendants' Rule 12(b)(3) motion must fail.

### D.    The Instant Action Should Remain in the Northern District of Texas

As discussed *supra*, venue is proper in the Northern District of Texas., Thus, Defendants' argument that in the alternative to dismissal, that the instant action should be transferred to the Southern District of New York, is misguided. As this Court has previously recognized, this conclusion also supports the conclusion that the motion to transfer should be denied. *See e.g.*, *Freedom Coal. of Drs. for Choice v. Centers for Disease Control & Prevention*, 2023 WL 9105435, at *7 (N.D. Tex. Nov. 3, 2023) ("Because the Court finds venue is proper and denies dismissal, the Court declines transfer.").

To the extent that Defendants invoke the doctrine of *forum non conveniens*, which relates to "the subset of cases in which the transferee forum is within the federal court system," *Atl.*

---

[1] Defendants assert that "[e]ven if activities were relevant to the venue analysis . . . the Amended Complaint does not allege that either President Trump or Rep. Jackson watched the Broadcasts while in Texas." ECF No. 50 at 23. This analysis ignores Plaintiffs' allegation that "Representative Jackson's congressional district includes Amarillo and the Texas Panhandle, and the harm that he experienced was incurred in this District." ECF No. 36 ¶ 52.

17

*Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60 (2013), Defendants'

request should also be denied. It is well-settled that in addition to demonstrating that the action

might have been brought in the destination venue, a "party seeking a transfer under Section 1404(a)

must also show 'good cause' by 'clearly demonstrat[ing] that a transfer is '[f]or the convenience

of parties and witnesses, in the interest of justice.'" *United States v. Planned Parenthood Fed'n of

Am., Inc.*, 2022 WL 19006361, at *1 (N.D. Tex. Sept. 20, 2022) (quoting *In re Volkswagen of Am.,

Inc.*, 545 F.3d 304, 315 (5th Cir. 2008)). "When the transferee venue is not clearly more convenient

than the venue chosen by the Plaintiff, the Plaintiff's choice should be respected." *Id*. Moreover,

when "jurisdiction exists and venue is proper," which, as discussed *supra*, is true in the case at bar,

"'the fact that litigating would be more convenient for the defendant elsewhere is not enough to

justify transfer.'" *Id*. (quoting *Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022)). "'In other

words, the standard is not met by showing one forum is more likely than not to be more convenient,

but instead the party must adduce evidence and arguments that clearly establish good cause for

transfer based on convenience and justice.'" *Id*. When considering a motion to transfer, courts will

assess four private-interest factors and four public interest factors:

> The private interest factors are: (1) the relative ease of access to sources of proof;
> (2) the availability of compulsory process to secure the attendance of witnesses; (3)
> the cost of attendance for willing witnesses; and (4) all other practical problems
> that make trial of a case easy, expeditious and inexpensive.
> The public interest factors are: (1) the administrative difficulties flowing from court
> congestion; (2) the local interest in having localized interests decided at home; (3)
> the familiarity of the forum with the law that will govern the case; and (4) the
> avoidance of unnecessary problems of conflict of laws or in the application of
> foreign law.

*Id*. (quoting *Volkswagen*, 545 F.3d at 315 (cleaned up)). While Defendants contend that "[b]oth

the private and public interest factors weigh overwhelmingly in favor of transfer here," ECF No. 50

at 27, their argument is ultimately non-persuasive and thus, the instant action must remain in the Northern District of Texas.

First, Defendants turn to the private interest factors in attempt to "clearly establish good cause," *Distributed*, 30 F.4th at 433, for transfer to the Southern District of New York. Here, Defendants claim that "'when the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be travelled.'" ECF No. 50 at 28 (quoting *In re Volkswagen AG*, 371 F.3d 201, 204-05 (5th Cir. 2004)). However, Defendants argue that in view of *In re Volkswagen AG*, because "[v]irtually all of the CBS producers, journalists, and editors who may be expected to be witnesses in this case . . . are based in New York," ECF No. 50 at 28, while failing to consider that the alleged inconvenience would also be incurred by Plaintiffs, should transfer to the Southern District of New York be granted. At best, this factor represents a stalemate, which cuts in favor of denying the request to transfer. In reality, Plaintiffs' witnesses—in particular Plaintiff Representative Jackson, who is a public servant—stands to endure considerably more inconvenience if forced to travel compared to executives in a multi-billion-dollar corporations such as Paramount and CBS. For the same reasons, Defendants contention that forcing its witnesses to "travel to the Northern District of Texas would impose significant and unnecessary costs and other 'practical problems,'" ECF 50 at 22 (quoting *In re Volkswagen of Am.*, 545 F.3d at 315), fails to assist in establishing its burden of proving that transfer of venue to the Southern District of New York "is clearly more convenient" than maintaining venue in this district. Rather, under Defendants' proposal, the burden of travel and costs is simply shifted to Plaintiffs—who, in the case of Representative Jackson and other Texas citizens, have considerably less resources—and ultimately represents a shift that weighs *against*

19

transfer. Thus, contrary to Defendants' assessment, the private factors fail to favor transfer to the Southern District of New York.

Similarly, the public interest factors also fail to weigh in favor of transfer. While New York may have "'strong policy interests in regulating the conduct of its citizens and its media," ECF 50 at 23, (quoting *Kinsey v. New York Times Co.*, 991 F.3d 171, 178 (2d Cir. 2021)), these interests do not outweigh Texas' interests in the instant litigation in seeing injury to its citizens recompensed. Ironically, Defendants cite to this Court's decision in *Children's Health Def. v. WP Co., LLC*, 2023 WL 3940446 (N.D. Tex. May 12, 2023) to insinuate that "'Amarillo has little interest in the resolution of this case—at least compared to New York.'" ECF No. 50 at 30 (quoting *Children's Health* at *3). There, the Court considered a case where "no Plaintiff lives within Texas" and where "none of the operative facts occurred within this District." *Id.* Conversely, as discussed at length throughout this brief, the opposite is true in the instant case; Representative Jackson resides within this district, and further, "a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District by virtue of the Interview being transmitted by Defendants into this District through *Paramount+* and on *YouTube*, and through KTVT, KTXA, KFDA, and other local Defendant CBS affiliates, including to Representative Jackson." ECF No. 36 ¶ 52.

Defendants also attempt to argue that the familiarity of the forum with the law that will govern this case, the third of the *Volkswagen* public factors, actually weigh in favor of transfer from Texas to New York, despite the fact that the one of the two causes of action in this case— Count II for violation of the DTPA— is brought pursuant to *Texas* law. "In federal court, familiarity with the governing law is generally given little weight when considering transfer of venue." *Children's Health Def.*, 2023 WL 3940446, at *3 (quotations omitted). However, "'this

20

factor more commonly applies where the destination venue is in a different State—in which case that State's familiarity with the applicable law would be especially probative to the transfer analysis.'" *Id.* (quoting *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 632 (5th Cir. 2022). Thus, this factor certainly weighs against transfer. Even if *arguendo*, Defendants are correct in arguing that "because 'federal courts are experienced in applying the laws of other jurisdictions, transfer is not necessarily favored or disfavored due to the applications of another state's law,'" ECF 50 at 23 (quoting *Qualls v. Prewett Enters., Inc.*, 594 F. Supp. 3d 813, 826 (S.D. Tex. 2022)), at best this represents a neutral factor which this Court needs not consider, as it does not help Defendants establish their burden of demonstrating that transfer of venue to the Southern District of New York is "clearly more convenient." *Planned Parenthood*, 2022 WL 19006361, at *1; *see also Children's Health Def.,* 2023 WL 3940446, at *3 ("Because Defendants concede that the first, third, and fourth public interest factors are neutral, the Court will not address them.").

In view of Defendants' failure to demonstrate that the private and public interest factors considered by courts on a motion for transfer of venue weigh in favor of transfer of venue, Defendants cannot meet their burden of demonstrating that transfer from this district to the Southern District of New York is "clearly more convenient," *Planned Parenthood*, 2022 WL 19006361, at *1, and thus the appropriate course of action. Accordingly, because the "transferee venue is not clearly more convenient than the venue chosen by [Plaintiffs], the[ir] choice should be respected." *Children's Health Def.*, 2023 WL 3940446, at *1 (quotations omitted).

## V.    CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court deny the instant motion to dismiss in its entirety, and grant such other and further relief as this Court deems just and proper.

Dated: May 28, 2025
      New York, New York

                          Respectfully submitted,

                          EDWARD ANDREW PALTZIK
                          Texas Bar No. 24140402
                          Bochner PLLC
                          1040 Avenue of the Americas
                          15th Floor
                          New York, NY 10018
                          (516) 526-0341
                          edward@bochner.law

                          */s/ Edward Andrew Paltzik*
                          Edward Andrew Paltzik

                          DANIEL Z. EPSTEIN
                          Texas Bar No. 24110713
                          16401 NW 37th Ave.
                          Suite No. 209
                          Miami Gardens, FL 33054
                          (202) 240-2398
                          dan@epsteinco.co

                          */s/ Daniel Z. Epstein*
                          Daniel Z. Epstein
                          ***(pro hac vice)***

                          CHRIS D. PARKER
                          Texas Bar No. 15479100
                          Farris Parker & Hubbard
                          A Professional Corporation
                          P. O. Box 9620
                          Amarillo, TX 79105-9620
                          (806) 374-5317 (T)
                          (806) 372-2107 (F)
                          cparker@pf-lawfirm.com

                          */s/ Chris D. Parker*
                          Chris D. Parker