IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, an individual, and REPRESENTATIVE RONNY JACKSON, an individual,<br><br>*Plaintiffs*,<br><br>v.<br><br>PARAMOUNT GLOBAL, d/b/a PARAMOUNT, a Delaware corporation, CBS BROADCASTING INC., a New York corporation, and CBS INTERACTIVE INC., a Delaware corporation,<br><br>*Defendants*. | Case No. 2:24-cv-00236-Z |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS'
MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION
AND FAILURE TO STATE A CLAIM**

**TABLE OF CONTENTS**

**Page**

ARGUMENT ................................................................................................................................ 2

    I.    The Challenged Broadcasts Are Editorial Speech Maximally Protected By The First Amendment And Not Subject To Lanham Act Or DTPA Liability ................................... 2

    II.    Plaintiffs Lack Article III Standing ................................................................................... 5

    III.    President Trump Fails To Plead A Lanham Act Claim ...................................................... 7

    IV.    Plaintiffs Fail To Plead A DTPA Claim ............................................................................ 9

CONCLUSION ............................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. First Policy Inst. v. Biden*,
   2024 WL 4920765 (N.D. Tex. Sept. 15, 2024) ..................................................................... 6

*Bd. of Trs. of State Univ. of N.Y. v. Fox*,
   492 U.S. 469 (1989) .............................................................................................................. 3

*Bolger v. Youngs Drug Products Corp.*,
   463 U.S. 60 (1983) ................................................................................................................ 3

*Boltex Mfg. Co., L.P. v. Ulma Piping USA Corp.*,
   389 F. Supp. 3d 507 (S.D. Tex. 2019) ................................................................................ 10

*Carson v. Simon*,
   978 F.3d 1051 (8th Cir. 2020) .............................................................................................. 7

*Citizens United v. FEC*,
   558 U.S. 310 (2010) ......................................................................................................... 2, 4

*Clearline Techs. Ltd. v. Cooper B-Line Inc.*,
   2012 WL 43366 (S.D. Tex. Jan. 9, 2012) ............................................................................. 7

*Cook, Perkiss & Liehe, Inc. v. Northern California Collection Service, Inc.*,
   911 F.2d 242 (9th Cir. 1990) ................................................................................................ 8

*Corsi v. Infowars, LLC*,
   2021 WL 2115272 (W.D. Tex. May 25, 2021), *report and recommendation adopted*,
   2021 WL 4955914 (W.D. Tex. June 25, 2021) .................................................................... 4

*Cranor v. 5 Star Nutrition, L.L.C.*,
   998 F.3d 686 (5th Cir. 2021) ................................................................................................ 5

*Daly v. Viacom, Inc.*,
   238 F. Supp. 2d 1118 (N.D. Cal. 2002) ................................................................................ 4

*Dickinson v. Ryan Seacrest Enters., Inc.*,
   2019 WL 3035090 (C.D. Cal. Mar. 26, 2019), *aff'd*, 839 F. App'x 110 (9th Cir. 2020) .......... 4

*Esch v. Universal Pictures Co., Inc.*,
   2010 WL 5600989 (N.D. Ala. Nov. 2, 2010) .................................................................... 4, 5

*FDA v. Alliance for Hippocratic Medicine*,
   602 U.S. 367 (2024) .............................................................................................................. 6

*Franklin v. Apple Inc.*,
    569 F. Supp. 3d 465 (E.D. Tex. 2021) ..................................................................................10

*Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*,
    859 F. Supp. 1521 (S.D.N.Y. 1994) .......................................................................................5

*Gutmann v. Campbell*,
    1998 WL 36030923 (D.N.M. Jan. 30, 1998) .........................................................................7

*Huffman v. Comm'r of Internal Revenue*,
    T.C.M. (RIA) 2024-012 (T.C. 2024) ......................................................................................6

*IQ Prods. Co. v. Pennzoil Prods. Co.*,
    305 F.3d 368 (5th Cir. 2002) ..................................................................................................8

*Jordan v. Jewel Food Stores, Inc.*,
    743 F.3d 509 (7th Cir. 2014) ..................................................................................................3

*Kersh v. UnitedHealthcare Ins. Co.*,
    946 F. Supp. 2d 621 (W.D. Tex. 2013) ..................................................................................9

*Kickflip, Inc. v. Facebook, Inc.*,
    2015 WL 1517237 (D. Del. Mar. 31, 2015) ...........................................................................4

*Lewis v. Google LLC*,
    461 F. Supp. 3d 938 (N.D. Cal. 2020) ...................................................................................4

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ...............................................................................................................9

*Little v. KMPG LLP*,
    575 F.3d 533 (5th Cir. 2009) ..................................................................................................7

*Mass. v. Davis*,
    140 Tex. 398 (1942) ...............................................................................................................6

*Miami Herald Publishing Co. v. Tornillo*,
    418 U.S. 241 (1974) ...............................................................................................................2

*N.Y. Times v. Sullivan*,
    376 U.S. 254 (1964) ...............................................................................................................2

*Perez v. McCreary, Veselka, Bragg & Allen, P.C.*,
    45 F.4th 816 (5th Cir. 2022) ...............................................................................................5, 6

*Phi Theta Kappa Honor Soc'y v. HonorSociety.org, Inc.*,
    2025 WL 1030240 (5th Cir. Apr. 7, 2025) .............................................................................3

*Pizza Hut, Inc. v. Papa John's International, Inc.*,
    227 F.3d 489 (5th Cir. 2000) ...................................................................................................8

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*,
    487 U.S. 781 (1988).................................................................................................................3

*Ritchie v. Rupe*,
    443 S.W.3d 856 (Tex. 2014)....................................................................................................6

*Sanchez v. Liggett & Myers, Inc.*,
    187 F.3d 486 (5th Cir. 1999) ...................................................................................................9

*Seven-Up Co. v. Coca-Cola Co.*,
    86 F.3d 1379 (5th Cir. 1996) ...................................................................................................7

*Smith v. Lucent Techs., Inc.*,
    2004 WL 515769 (E.D. La. Mar. 16, 2004) ............................................................................9

*Strauss v. Strauss*,
    101 Md. App. 490 (1994) ........................................................................................................6

*Taquino v. Teledyne Monarch Rubber*,
    893 F.2d 1488 (5th Cir. 1990) .................................................................................................8

*Thoroughbred Legends, LLC v. The Walt Disney Co.*,
    2008 WL 616253 (N.D. Ga. Feb. 12, 2008) ............................................................................4

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021).................................................................................................................5

*Whitehurst v. Showtime Networks, Inc.*,
    2009 WL 3052663 (E.D. Tex. Sept. 22, 2009) ........................................................................4

*Yumilicious Franchise L.L.C. v. Barrie*,
    2015 WL 1822877 (N.D. Tex. Apr. 22, 2015) ......................................................................10

**Statutes**

15 U.S.C. § 1125.............................................................................................................................7

Tex. Bus. & Com. Code
    § 17.45......................................................................................................................................9
    § 17.46....................................................................................................................................10
    § 17.50....................................................................................................................................10

**Rules**

Federal Rules of Civil Procedure
  Rule 9 .................................................................................................................................9
  Rule 12 ..............................................................................................................................10

**Constitutional Provisions**

United States Constitution
  First Amendment ......................................................................................................... *passim*

This is a meritless lawsuit that, as Plaintiffs' opposition admits, takes "aim[] at a news organization," ECF No. 62 at 2, for editorial decisions Plaintiffs dislike. President Trump and Representative Jackson attempt to evade bedrock First Amendment principles establishing that public officials like themselves cannot hold news organizations like CBS liable for the exercise of editorial judgment. Effectively conceding that their claims cannot survive if the Broadcasts are editorial speech subject to full First Amendment protections, Plaintiffs argue that the Broadcasts somehow became "commercial speech" via a simple promotion for the Interview. But they provide this Court with nothing that would support the conclusion that the Face the Nation and 60 Minutes Broadcasts[1]—involving an interview of a presidential candidate about issues of utmost public concern—are anything but fully protected editorial speech, and they cite *not a single case* holding that news broadcasts (or promotions for such broadcasts) are commercial speech. Indeed, the Supreme Court has repeatedly rejected that argument. The First Amendment applies fully to the news reporting at issue and bars Plaintiffs' claims.

Even if it did not, Plaintiffs also fail to show how they have standing or how they have pleaded *prima facie* Lanham Act or DTPA claims. Accepting Plaintiffs' standing arguments would amount to greenlighting thousands of consumer claims brought by individuals who merely disagree with a news organizations' editorial choices. And President Trump does not even attempt to fill the pleading gaps on his Lanham Act claim by identifying any actionable misrepresentation or how he or any other alleged purchaser materially relied on any purported misrepresentation. Plaintiffs also fail to state a DTPA claim because they do not allege (a) that they are consumers within the meaning of the law, (b) any false, misleading, or deceptive act, (c)

---

[1] All capitalized terms are defined in Defendants' opening briefs. *See* ECF Nos. 50 & 52.

detrimental reliance on any such act, or (d) lack of capacity to evaluate for themselves whether Vice President Harris is "coherent and decisive." ECF No. 36 ¶ 13. Plaintiffs' Amended Complaint should be dismissed.

## ARGUMENT

### I. The Challenged Broadcasts Are Editorial Speech Maximally Protected By The First Amendment And Not Subject To Lanham Act Or DTPA Liability

News reporting—including editorial decisions about "the choice of material"—lies at the heart of First Amendment protection. *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241 (1974); *see* ECF No. 52 at 7-10. That is all the more true when the reporting concerns topics of public concern like the Middle East conflict or speech uttered during a presidential campaign, when the First Amendment "has its fullest and most urgent application." *Citizens United v. FEC*, 558 U.S. 310, 339 (2010); *see* ECF No. 52 at 8-9. Moreover, as the Supreme Court has routinely recognized, news *remains* fully protected when a news organization has a profit motive, and indeed even when the speech at issue is an advertisement in a newspaper. *See id.* at 14; *N.Y. Times v. Sullivan*, 376 U.S. 254, 266 (1964). Put simply, there is "no support for the view that the First Amendment, as originally understood, would permit the suppression of political speech by media corporations." *Citizen United,* 558 U.S. at 353.

Plaintiffs concede that only commercial speech is actionable under the Lanham Act or the DTPA, and effectively concede that *60 Minutes* is not commercial speech, focusing instead on the FTN Broadcast.[2] But Plaintiffs ignore virtually every one of Defendants' cited cases, making no effort to distinguish the political and editorial speech at issue in cases like *Tornillo* from the speech at issue here. And they do not—and cannot—cite a single case finding a news program

---

[2] This concession alone dooms Plaintiffs' DTPA claim, the gravamen of which is that the 60 Minutes Broadcast was unfairly edited to make Vice President Harris appear coherent, confusing Texas voters into supporting Harris or not donating to President Trump's campaign.

like *Face the Nation* to be commercial speech. Plaintiffs cite *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 66 (1983) and its progeny, *e.g.*, *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 518 (7th Cir. 2014), but those cases address the mailing of unsolicited advertisements for products available at a drugstore and the full-page commercial advertisement in a magazine for a grocery store. The FTN Broadcast, including the excerpt from the Interview of the Vice President and presidential candidate, is self-evidently not a mailer hawking products or a magazine advertisement. *Jordan*, 743 F.3d at 519 ("Jewel's ad is easily distinguishable from the magazine's editorial content."). It is bread and butter news programming[3] entitled to full First Amendment protection.

Recognizing as much, Plaintiffs argue that the FTN Broadcast is commercial speech because of the 60 Minutes logo and a "splash screen" with the text "60 Minutes Tomorrow 8PM ET streaming on: CBS News | Paramount+." ECF No. 62 at 4. That argument fails.

***First***, while Plaintiffs ask this Court to look at the "splash screen" in isolation, courts assessing whether speech is commercial consider "the nature of the speech taken as a whole." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 796 (1988); *accord Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469 (1989).[4] The hour-long FTN Broadcast, including the excerpt of the Interview, plainly did "more than propose a commercial transaction," *Phi Theta Kappa Honor Soc'y v. HonorSociety.org, Inc.*, 2025 WL 1030240, at *2 (5th Cir. Apr. 7, 2025) (citation omitted): it reported in depth on the presidential campaign, the Middle East conflict, and Hurricane Helene recovery.

---

[3] Plaintiffs affirmatively allege that CBS News is a "news division," part of the "legacy media," whose audience—"consumers of news media"—turn to its programs for "accurate and truthful news content." ECF No 52 at 13 (citing ECF No. 36 ¶¶ 3, 4 n.1, 139, 140, 155, 174, 176).

[4] Commercial speech "inextricably intertwined with otherwise fully protected speech" does not "retain[] its commercial character" but becomes "fully protected." *Riley*, 487 U.S. at 796.

3

***Second***, even if the Court treated an excerpt of an interview with the sitting Vice President and candidate for President as an advertisement for the 60 Minutes Broadcast, the FTN Broadcast *still* enjoys full First Amendment protection. A promotion for fully protected speech like the 60 Minutes Broadcast is not commercial speech. *See, e.g.*, *Whitehurst v. Showtime Networks, Inc.*, 2009 WL 3052663, at *8 (E.D. Tex. Sept. 22, 2009) ("promotion of the film," including DVD cover, is fully protected); *Esch v. Universal Pictures Co., Inc.*, 2010 WL 5600989, at *6 (N.D. Ala. Nov. 2, 2010) (film trailer); *Thoroughbred Legends, LLC v. The Walt Disney Co.*, 2008 WL 616253, at *12 (N.D. Ga. Feb. 12, 2008) (similar); *Daly v. Viacom, Inc.*, 238 F. Supp. 2d 1118, 1123 (N.D. Cal. 2002) (television "advertisements" that were "an adjunct of the protected work and promote only the protected work") (citations omitted). Indeed, Plaintiffs ignore—because it destroys their argument—that *Citizens United* concerned "two 10-second ads and one 30-second ad for *Hillary*," a documentary that was, itself, "a feature-length negative advertisement" of Secretary Clinton. Nevertheless, the Supreme Court found that those advertisements were fully protected speech, particularly because they concerned "a campaign for political office," the precise subject of the Interview. *Citizens United*, 558 U.S. at 320, 325, 339.

Finally, there is no merit to Plaintiffs' suggestion that discovery is needed on "the motivation of the speaker." ECF No. 62 at 14.[5] Courts routinely decide on the pleadings whether speech is commercial.[6] Plaintiffs cite no case in which a court needed to delve into a publisher's

---

[5] There is also no support for Plaintiffs' argument that the "common-sense distinction" between commercial and editorial speech no longer exists in an era of digital entertainment and e-commerce. Plaintiffs' wholly irrelevant out-of-circuit cases, *Lewis v. Google LLC*, 461 F. Supp. 3d 938 (N.D. Cal. 2020), and *Kickflip, Inc. v. Facebook, Inc.*, 2015 WL 1517237 (D. Del. Mar. 31, 2015), do not even mention commercial speech. *See* ECF No. 62 at 12.

[6] *See, e.g.*, *Corsi v. Infowars, LLC*, 2021 WL 2115272, at *3 (W.D. Tex. May 25, 2021), *report and recommendation adopted*, 2021 WL 4955914 (W.D. Tex. June 25, 2021); *Dickinson v. Ryan Seacrest Enters., Inc.*, 2019 WL 3035090, at *8 (C.D. Cal. Mar. 26, 2019), *aff'd*, 839 F. App'x

motives in making editorial judgments to determine whether a news program was commercial speech. The law is clear that news organizations may have a "profit motive," but such motive in no way divests their reporting of First Amendment protections. *See* ECF No. 52 at 14. The chilling effect of Plaintiffs' meritless assault on the First Amendment compels dismissal now.

## II.    Plaintiffs Lack Article III Standing

Plaintiffs fail to establish that either of them has standing under Article III. Plaintiffs cannot rely on intangible "harms" common to the public at large. As their own case holds, an Article III injury must be "particular to [the plaintiff] and not shared in common by the rest of the public." *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 692 (5th Cir. 2021) (cited in ECF No. 62 at 17). Rep. Jackson makes no effort to identify any injury that he personally suffered from the FTN or 60 Minutes Broadcasts, neither of which had anything to do with him. Plaintiffs try to analogize to "public nuisance" harms, ECF No. 62 at 17, but, unlike the plaintiff in *Cranor* who personally received intrusive robocalls and robotexts, 998 F.3d at 691, Plaintiffs' alleged injury—from television news programs broadcast nationwide—is indistinguishable from that of "the American people" generally. ECF No. 62 at 18; *see also* ECF No. 36 ¶¶ 78, 124. Supreme Court and Fifth Circuit precedent also "foreclose[]" Plaintiffs' theory of standing "solely by virtue" of "the rights vested in them by the DTPA." ECF No. 62 at 17; *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 823 (5th Cir. 2022) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021)). Plaintiffs' claim that they have suffered deception and confusion, *see* ECF No. 62 at 18, likewise does not confer standing. *See Perez*, 45 F.4th at 825.

President Trump's additional theories of injury also fail. ***First***, President Trump argues

---

110 (9th Cir. 2020); *Esch*, 2010 WL 5600989, at *6; *Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1540-42 (S.D.N.Y. 1994).

5

vaguely that he spent unspecified time and money "to correct[] the public record regarding the content of the Interview and Election Special." ECF No. 62 at 15. Without citing any authority, he says "[t]his, standing alone, constitutes an injury in fact." *Id.* The Supreme Court has said otherwise, holding that a plaintiff cannot manufacture Article III injury by spending resources on public advocacy in response to a defendant's actions. *See FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 394 (2024). The Fifth Circuit has similarly held that being forced to spend time addressing the defendant's actions is not a cognizable Article III injury. *Perez*, 45 F.4th at 825. And this Court has held that a political candidate's alleged need to spend resources to counteract the effects of the defendant's actions is insufficient to satisfy Article III. *See Am. First Policy Inst. v. Biden*, 2024 WL 4920765, at *2 (N.D. Tex. Sept. 15, 2024) (Kacsmaryk, J.).

***Second***, President Trump attempts to "establish standing based on damages incurred as a result of TMTG's performance." ECF No. 62 at 15. But, again, "stockholders have no separate and independent right of action for injuries suffered by the corporation which merely result in the depreciation of the value of their stock."[7] *Mass. v. Davis*, 140 Tex. 398, 407 (1942); *accord Ritchie v. Rupe*, 443 S.W.3d 856, 887-88 (Tex. 2014). President Trump tries to carve out an exception to this rule by alleging that TMTG "bears [his] name" and thus its success "reflects upon him and impacts his personal reputation." ECF No. 62 at 15. But no case law supports such an exception. And his allegation that TMTG's "stock price skyrocketed nearly 75%," ECF No. 36 at ¶ 61, belies any suggestion of reputational harm from TMTG's performance. In any event, speculation that TMTG might have performed better absent broadcast of the Interview, ECF No.

---

[7] President Trump cites a Maryland state court decision (*Strauss v. Strauss*, 101 Md. App. 490, 502–03 (1994)), and a Tax Court decision (*Huffman v. Comm'r of Internal Revenue*, T.C.M. (RIA) 2024-012 (T.C. 2024)). ECF No. 62 at 16. Neither involved Article III, and neither recognized a personal cause of action by an investor for the decline in a company's stock price.

6

62 at 16, relies improperly on actions of third parties. *See, e.g.*, *Little v. KMPG LLP*, 575 F.3d 533, 540 (5th Cir. 2009).

***Finally***, President Trump attempts to rely on his former status as a candidate, arguing that he retains a "cognizable interest" in the vote tally even after he won the election.[8] ECF No. 62 at 16-17. No case supports this argument.[9] Any injury he suffered as a candidate is moot after his victory.

### III. President Trump Fails To Plead A Lanham Act Claim

Plaintiffs fail to rehabilitate President Trump's deficient Lanham Act claim. ***First***, the Broadcasts are not "commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B). There can be no plausible allegation that the "purpose" of the FTN Broadcast—a news report related to the Israel/Gaza conflict—was to "influenc[e] consumers to buy [Defendants'] goods or services," *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379 (5th Cir. 1996).

***Second***, President Trump fails to plead any actionable misrepresentation. Even if false representations may be "made by implication or innuendo," ECF No. 62 at 19-20 (citation omitted), the complaint must plead facts about the allegedly false representation. *E.g.*, *Clearline Techs. Ltd. v. Cooper B-Line Inc.*, 2012 WL 43366, at *6 (S.D. Tex. Jan. 9, 2012). Plaintiffs' contention that the *60 Minutes* "watermark" is the misrepresentation, *see* ECF No. 62 at 20, is nowhere in the Amended Complaint and makes no sense. The *60 Minutes* logo truthfully

---

[8] President Trump has abandoned any claim of injury based on alleged shortfalls in campaign fundraising or "support values." Such allegations ignore the legal distinction between the campaign entity and him personally. ECF No. 52 at 16-17.

[9] President Trump cites one unpublished decision that did not address Article III standing. ECF No. 62 at 16 (citing *Gutmann v. Campbell*, 1998 WL 36030923 (D.N.M. Jan. 30, 1998)). He also cites a case that considered candidates' Article III standing for a preliminary injunction *before the election*, but not *after*. *Id.* at 16-17 (citing *Carson v. Simon*, 978 F.3d 1051, 1058 (8th Cir. 2020)).

conveys that the Interview was conducted by *60 Minutes* and given to *Face the Nation*.[10]

***Third***, even if the FTN Broadcast had impliedly represented that the same excerpts would air on the following day's 60 Minutes Broadcast—it did not—President Trump has not alleged that any purchaser relied on that purported misrepresentation. A Lanham Act plaintiff must show that "consumers would have bought [Plaintiff's] products instead of [Defendants'] in the absence of the defendants' allegedly false and misleading statements." *IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 376 (5th Cir. 2002); *see Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1500 (5th Cir. 1990). President Trump has pleaded no such facts, choosing instead to rely on argument alone. For example, President Trump speculates that "someone" could conceivably have viewed *Face the Nation* on YouTube or outside their own home.[11] ECF No. 62 at 18-19. But the Amended Complaint fails to allege that *anyone* made a purchasing decision as a result of the FTN Broadcast, much less allege that that was the "purpose" of the news report. It is not remotely plausible that a consumer bought a Paramount+ subscription after watching the FTN Broadcast only to be able to hear the identically edited questions and answers the following day, and would otherwise have purchased a product from TMTG. And while President Trump argues it is enough that the FTN Broadcast influenced consumers who already had access to CBS or Paramount+ to watch *60 Minutes*, even if the FTN Broadcast did not influence any purchasing decisions, *see* ECF No. 62 at 19, he cites no law in support of that proposition.

***Finally***, President Trump has not plausibly alleged that he personally suffered "an injury

---

[10] Plaintiffs cite no case holding the inclusion of a simple logo showing attribution to be actionable innuendo. Both *Pizza Hut, Inc. v. Papa John's International, Inc.*, 227 F.3d 489, 498-99 (5th Cir. 2000), and *Cook, Perkiss & Liehe, Inc. v. Northern California Collection Service, Inc.*, 911 F.2d 242, 246 (9th Cir. 1990), held that the statements at issue were non-actionable puffery.

[11] YouTube viewers of *Face the Nation* could watch *60 Minutes* without needing a Paramount+ subscription.

8

to a commercial interest in reputation or sales," as required to bring a claim under Section 43(a)(1)(B). *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131-32 (2014). The vague and conclusory assertion that "President Trump has plausibly alleged various tranches of damages," "whether . . . monetary or reputational," is plainly inadequate. ECF No. 62 at 21. To the extent the Amended Complaint attempts to allege any injury to a commercial interest, the alleged injury is to TMTG, which is not a party to this lawsuit, and, moreover, President Trump has not plausibly alleged that *60 Minutes* is "engaged in the same . . . market or competed for the same customers" as Truth Social. *Smith v. Lucent Techs., Inc.*, 2004 WL 515769, at *25 (E.D. La. Mar. 16, 2004). Plaintiffs thus fail to plausibly allege any elements of a Lanham Act claim.

## IV. Plaintiffs Fail To Plead A DTPA Claim

Plaintiffs also fail to plead the basic elements of a DTPA claim, much less to satisfy Rule 9(b). ***First***, a "DTPA claim requires an underlying consumer transaction; there must be a nexus between the consumer, the transaction, and the defendant's conduct." *Sanchez v. Liggett & Myers, Inc.*, 187 F.3d 486, 491 (5th Cir. 1999). A consumer must "seek[] or acquire[] by purchase or lease[] any goods or services."[12] Tex. Bus. & Com. Code § 17.45(a)(4). Plaintiffs essentially concede that they never acquired Defendants' services, insisting that "merely seeking [them] out" is enough. ECF No. 62 at 22. But no case recognizes a DTPA claim absent a predicate "transaction," and Plaintiffs do not even allege that they *sought* Defendants' services.[13]

***Second***, the inclusion of the *60 Minutes* logo is not a false, misleading, or deceptive act.

---

[12] The statutory reference to "seek[ing]" appears to apply to consumers who sought to purchase one good or service based on an alleged misrepresentation, but instead ended up with something else. *See, e.g.*, *Kersh v. UnitedHealthcare Ins. Co.*, 946 F. Supp. 2d 621, 635 (W.D. Tex. 2013) (plaintiffs sought to purchase life insurance but did not based on alleged misrepresentation).

[13] Likewise, Plaintiffs state that "[i]t is possible to subscribe to *Paramount+* content" through Amazon, ECF No. 62 at 22, but never say that they did.

9

The logo accurately identifies the source of the footage that aired on *Face the Nation*, and the alleged confusion—about Harris' "qualities as a candidate and as a person," ECF No. 36 ¶ 197—is not confusion about the "characteristics" of the 60 Minutes Broadcast, *see* ECF No. 62 at 23.[14]

***Third***, Plaintiffs essentially concede the lack of detrimental reliance, which is essential to a § 17.50(a)(1) claim. Their brief says nothing more than "Plaintiffs relied . . . on Defendants'" statements, "leading both to pecuniary damages . . . as well as mental anguish and confusion." ECF No. 62 at 25. That alone compels dismissal of Plaintiffs' DTPA claim. *See Yumilicious Franchise L.L.C. v. Barrie*, 2015 WL 1822877, at *4-6 (N.D. Tex. Apr. 22, 2015) (Lindsay, J.).

***Finally***, Plaintiffs do not explain how Defendants "t[ook] advantage" of Plaintiffs' "lack of knowledge, ability, experience, or capacity." Tex. Bus. & Com. Code § 17.50(a). Their failure to plead "any supporting factual contentions regarding the alleged unconscionable acts" compels dismissal of their claim. *Franklin v. Apple Inc.*, 569 F. Supp. 3d 465, 480-81 (E.D. Tex. 2021).[15]

## **CONCLUSION**

For the foregoing reasons, this Court should dismiss Plaintiffs' Amended Complaint under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6).

---

[14] Plaintiffs disagree with Defendants' description of what the DTPA was designed to police (e.g., "Made in the USA" claims, *see* ECF No. 52 at 31; *Boltex Mfg. Co., L.P. v. Ulma Piping USA Corp.*, 389 F. Supp. 3d 507, 513 (S.D. Tex. 2019)), but fail to cite a single case recognizing a claim in similar circumstances. Similarly, Plaintiffs contend § 17.46(b)(9) extends beyond its concededly "primary purpose" of preventing bait advertising, *id.* at 24, but they cite no case applying that provision to facts similar to these.

[15] Defendants incorporate by reference Section IV of their reply brief in support of their motion to dismiss under Rule 12(b)(2) or (b)(3).

Respectfully submitted,

/s/ *Thomas C. Riney*

**UNDERWOOD LAW FIRM, P.C.**

Thomas C. Riney
State Bar No. 16935100
C. Jason Fenton
State Bar No. 24087505
PO Box 9158 (79105-9158)
500 S. Taylor, Suite 1200
Amarillo, TX 79101
Telephone: (806) 376-5613
Facsimile: (806) 379-0316
tom.riney@uwlaw.com
jason.fenton@uwlaw.com

**JACKSON WALKER LLP**

Marc A. Fuller
State Bar No. 24032210
2323 Ross Ave., Ste. 600
Dallas, TX 75201
Telephone: (214) 953-6000
Facsimile: (214) 953-5822
mfuller@jw.com

**DAVIS WRIGHT TREMAINE LLP**

Elizabeth A. McNamara (admitted *pro hac vice*)
Jeremy A. Chase (admitted *pro hac vice*)
Alexandra Perloff-Giles (admitted *pro hac vice*)
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Telephone: (212) 489-8230
elizabethmcnamara@dwt.com
jeremychase@dwt.com
alexandraperloffgiles@dwt.com

*Attorneys for Paramount Global, CBS Broadcasting Inc., and CBS Interactive Inc.*